SENTENCE BY A PERSON IN FEDERAL CUSTODY

| UNITED STATES DISTRICT COURT | District Southern District of **CIV-FERGUSON** |
|---|---|

| Name of Movant | Prisoner No. | | Case No. |
|---|---|---|---|
| Mitchell Hammer | 48828-004 | ✔ | 95-367-CR-Ferguson |

Place of Confinement
Federal Prison Camp-Miami     P.O. Box 779800     Miami, Fl.     33177
MAGISTRATE JUDGE

UNITED STATES OF AMERICA          V.          MITCHELL HAMMER, ET AL.
SORRENTINO

(name under which convicted)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack **United States**

   **District Court, Southern District of Florida, Ft. Lauderdale, FL.**

2. Date of judgment of conviction **February 28, 1997**

3. Length of sentence **One Hundred Eight (108) months as to Count 71, to run concurrently with Sixty (60) months as to Counts 1 and 83.**

4. Nature of offense involved (all counts)

   **Count 1-Conspiracy to Commit Bank Fraud, Securities Fraud, Money Laundering and Making**

   **False Statements in a Bankruptcy Proceeding in violation of 18 U.S.C.§371**

   **Count 71-Money Laundering in violation of 18 U.S.C.§1956**

   *Count 83-Making False Statements in a Bankruptcy Proceeding in violation of 18 U.S.C§152*

5. What was your plea? (Check one)
   (a) Not guilty ☐
   (b) Guilty ☒
   (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and not a guilty plea to another count or indictment, give details:

   **Guilty plea as to counts 1s, 71s, and 83s detailed in item #4 above.  Cts. 2s-33s-Bank**

   **Fraud dismissed; Cts. 34s-48s-Securities Fraud dismissed; Cts. 49s-54s-Securities  and**

   **Exchange-False Statements dismissed; 55s-69s-Monetary Laundering dismissed;Ct.70-Monetary**

   **Laundering dismissed; Cts. 72s-82s-Monetary Laundering dismissed; Ct. 84s-Bankruptcy Falsifying documents relating to financial affairs dismissed.**

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☐
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐     No ☐

   cat / div. _____
   Case # OOCV271
   Judge WDF   Mag CHS
   Motn Ifp _____ Fee pd $ _____
   Receipt # _____

8. Did you appeal from the judgment of conviction?
   Yes ☒     No ☐

(2)

AO 243 (Rev. 2/95)

9. If you did appeal, answer the following: **(see attached addendum for additional appellate history)**

(a) Name of court ___**Eleventh Circuit Court of Appeals**___

(b) Result ___**Convictions affirmed**___

(c) Date of result __**April 26, 1999**__    **(Mandate issued August 5, 1999)**

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any federal court?

Yes ☐      No ☒

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court _____

(2) Nature of proceeding _____

_____

(3) Grounds raised _____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?

Yes ☐      No ☐

(5) Result _____

(6) Date of result _____

(b) As to any second petition, application or motion give the same information:

(1) Name of court _____

(2) Nature of proceeding _____

_____

(3) Grounds raised _____

_____

_____

_____

_____

AO 243 (Rev. 2/95)

(4) Did you receive an evidehtiary hearing on your petition, application or motion?
Yes ☐          No ☐

(5) Result _____

(6) Date of result _____

(c) Did you appeal. to an appellate federal court having jurisdiction. the result of action taken on any petition, application or motion?
(1) First petition, etc.              Yes ☐          No ☐
(2) Second petition, etc.            Yes ☐          No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion. explain briefly why you did not:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting the same.  (See Attached Addendum for Grounds and Facts)

Caution:    If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

AO 243 (Rev. 2/95)

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self–incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(h) Denial of right of appeal.

A.  Ground one: ___See Attached Addendum_____

_____

Supporting FACTS (state *briefly* without citing cases or law)

_____See Attached Addendum_____

_____

_____

_____

_____

B.  Ground two: ___See Attached Addendum_____

_____

Supporting FACTS (state *briefly* without citing cases or law) _____

_____See Attached Addendum_____

_____

_____

_____

_____

C.  Ground three: ___See Attached Addendum_____
                          .

_____

Supporting FACTS (state *briefly* without citing cases or law) _____

_____See Attached Addendum_____

_____

_____

_____

AO 243 (Rev. 2/95)

_____

_____

D.   Ground four: __See Attached Addendum_____

_____

Supporting FACTS (state *briefly* without citing cases or law) _____

_____See Attached Addendum_____

_____

_____

_____

_____

_____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

_____See Attached Addendum_____

_____

_____

_____

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
    Yes ☐     No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of judgment attacked herein:

    (a) At preliminary hearing ____Not Applicable_____

    _____

    (b) At arraignment and plea ____Neal Russell Sonnett_____

    __2 South Biscayne Boulevard, Suite 2600, Miami, Fl.   33131_____

    (c) At trial _____Not Applicable_____

    _____

    (d) At sentencing _____Scott A. Srebnick_____

    _____1899 S. Bayshore Drive_____

    _____Coconut Grove, Fl.   33133_____

AO 243 (Rev. 2/95)

(e) On appeal _____ **Ian S. Seitel** _____

     **633 S.E. 3rd Avenue, Suite 4F, Fort Lauderdale, Fl.   33301** _____

(f) In any post-conviction proceeding _____

     **Not Applicable** _____

(g) On appeal from any adverse ruling in a post-conviction proceeding _____

     **Not Applicable** _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
  Yes ☒     No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
  Yes ☐     No ☒

  (a) If so, give name and location of court which imposed sentence to be served in the future: _____

  (b) Give date and length of the above sentence: _____

  (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
  Yes ☐     No ☐

Wherefore, movant prays that the Court grant petitioner relief to which he or she may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

**July 20, 2000** _____
     (Date)

_____
Signature of Movant

(7)

STATE OF FLORIDA )
                 )   SS:
COUNTY OF DADE   )

On this 20th day of July, 2000 before me personally appeared Mitchell Hammer who produced a Federal Prison I.D. bearing his name and photograph as identification and who executed this Motion, and he acknowledged that he executed the same.

My Commission expires: *May 1, 2004*

NOTARY PUBLIC
State of Florida

```
OFFICIAL NOTARY SEAL
MARGAIL WISE
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC932897
MY COMMISSION EXP. MAY 1,2004
```

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the above
and foregoing was furnished to AUSA Steven Petri, United States
Attorney's Office, Southern District of Florida, 500 East Broward
Boulevard, Suite 700, Fort Lauderdale, Florida   33394, on this
20th day of July, 2000, when I deposited the aforementioned copy
in the Bureau of Prison "mailbox" at the Federal Prison Camp in
Miami, together with the original and two (2) copies of this
Motion, addressed to the Clerk of the Court, Federal Courthouse,
299 East Broward Boulevard, Fort Lauderdale, Florida   33301.

Movant: Mitchell Hammer
Reg. No. 48828-004
Federal Prison Camp-
Miami
P.O. Box 779800
Miami,   Fl.   33177

Mitchell Hammer
Reg. No. 48828-004
Federal Prison Camp-Miami
P.O. Box 779800
Miami, Fl.   33177

ADDENDUM TO

MOTION UNDER 28 U.S.C.§2255
TO VACATE, SET ASIDE OR CORRECT SENTENCE

IN THE MATTER OF
UNITED STATES V. MITCHELL HAMMER, ET. AL.
Case No. 95-367-CR-Ferguson

ADDENDUM TO PETITION UNDER 28 U.S.C. §2255 TO VACATE, SET
ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

9. (d) **Name of Court**          Eleventh Circuit Court of Appeals

   **Result**                    Petition for Rehearing and suggestion for
                                 rehearing en banc DENIED.

   **Date of Result**            July 23, 1999

   **Mandate Issued**            August 5, 1999

12.(A) <u>Ground</u>:   **Movant's Sixth Amendment rights under the United States Constitution were violated when guilty plea counsel denied Movant of effective assistance of counsel.**

**Facts :**   Because of the non-payment of legal fees, guilty plea counsel's acts, omissions and substandard professional performance **improperly induced Movant to plead guilty** at the lowest emotional moment of his life, just days after the suicide of Movant's long time best friend, business partner, and codefendant Michael Mandelblatt.   Specifically, the **totality of the circumstances** which occurred from June, 1993 through Movant's guilty plea hearing on September 12, 1996, prejudiced Movant, who, but for guilty plea counsel's conduct would not have pled guilty and would have proceeded to trial.

The relationship between Movant and guilty plea counsel was **never viable**, because of the **conflict of interest** resulting from the non-payment of legal fees.   During the initial meeting between Movant and guilty plea counsel in June, 1993, shortly after which Movant advanced guilty plea counsel the sum of $25,000 as a retainer, Movant openly explained his financial condition to guilty plea counsel, spelling out that until and unless he was able to sell his $1.3 Million home in Weston, Florida and recover the $400,000 of monies invested, he would not be able to fund guilty plea counsel's projected fees of approximately $200,000.   Despite that disclosure, on June 1, 1995, at the time of Movant's arraignment, guilty plea counsel made a permanent appearance on behalf of Movant, and told Movant "not to worry", that "something would be worked out", and that it was a hassle for guilty plea counsel to return to court at

(9)

a later date to make a permanent appearance. Despite telling Movant not to worry, guilty plea counsel pressured and berated Movant, over time, for not paying additional funds to him, a result of which was the **lack of devotion to Movant's interests**.

From June, 1993 through September 12, 1996, Movant and guilty plea counsel met approximately five times. Guilty plea counsel **rarely returned Movant's telephone calls**, and **did not respond to Movant's written memos**. Early in the case, Movant, on August 24, 1995, wrote to guilty plea counsel:

> It is approaching three months since the indictment and I am wondering what if anything is going on. I am somewhat surprised that I have not heard anything from you at all. I keep hearing brief updates from [codefendant] Mike Mandelblatt and miscellaneous tidbits from others. To date, I have heard that there are at least four people who have signed plea agreements [codefendants Joseph Letzelter, Heidi Fraiser, Steven Merrill, and Joseph Friedman]...I have also heard that there were meetings with the prosecution regarding the discovery information...I am wondering whether there is any other activity or motions in process...
>
> (See Letter from Hammer to Neal Sonnett, "Re: Status", 8/24/95. Ex. "H ").

As was typical, there was no response to this writing.

From the time of the initial indictmen. on May 25, 1995, guilty plea counsel **did not file any motions, even the most fundamental under local practice** on behalf of Movant. In fact, the only motion that he filed was to withdraw as counsel. (See Case Docket. Ex."A ").

There was a significiant amount of discovery material in this case. In a letter dated July 24, 1995 to guilty plea counsel, AUSA Petri stated:

(10)

> you are all free to begin reviewing any of
> the 174 boxes by making ·an appointment with
> me so that I can arrange to have an agent
> present to provide access to the records.
>
> (See Letter to Neal Sonnett from AUSA Petri,
> 7/24/95. Ex. "I").

In addition, AUSA Petri provided copies of two quotations for copying these documents showing the voluminous amount of discovery material, estimated between 406,000-512,000 copies. (See Letter to Neal Sonnett from AUSA Petri, 7/24/95. Ex. "I"). Nonetheless, guilty plea counsel **never asked Movant to review these materials, never reviewed them himself** (which even if he had, would not have been meaningful without the assistance of Movant or an expert), and **did not hire an expert** to do so either.

In addition to not reviewing the voluminous discovery material, guilty plea counsel **did not interview or depose any government witnesses or seek to interview or depose any corroborating witnesses for the defense**. The government's case was significantly aided by the assistance of several of Movant's codefedants, especially Joseph Letzelter. In fact, at Letzelter's sentencing hearing, AUSA Rabinowitz stated:

> I have no doubt that this government could
> **not have prosecuted Mitchell Hammer, but
> for Mr. Letzelter's testimony...**

(See Sentencing Hearing Transcript for Letzelter, pp. 16-17. Ex. "R").

Confusingly, guilty plea counsel never deposed Letzelter.

On September 21, 1995, AUSA Petri provided a Certificate of Trial Attorney which indicated that the Government estimated 50 days to try the case. Guilty plea counsel advised Movant that he believed that the case could actually take up to double that amount of time, i.e. 100 trial days. Movant's intention

from the outset was to proceed to trial, barring a favorable plea agreement. Because of the lengthy projected trial, guilty plea counsel continued presuring Movant for the payment of his fees.

Guilty plea counsel **did not prepare for trial** and never intended to prepare for trail until and unless he received "at least $100,000 more". Guilty plea counsel berated Movant and said that he was "not prepared to go bankrupt for [Movant] and spend months preparing and advocating for Movant in a lengthy trial. Guilty plea counsel told Movant that the Court would not let him withdraw from his responsibility because of the lack of payment of legal fees. He told Movant that he was "good enough to wing it" in the court room, without preparation, making **mere appearance of in court effectiveness,** in order to minimize the time and effort he put forth, rather than representing Movant "zealously", and threatened that the outcome, if this were to occur, would be very negative for Movant. Guilty plea counsel advised moved that he would be returning from a trip on July 8, 1996, at which time, Movant had "better get [him] some money", and if not, "we'd have to do something so that [guilty plea counsel] :ould get out of the case". Movant told guilty plea counsel that he understood.

It appears, however, that guilty plea counsel would not be able to proceed to represent Movant at trial. Though guilty plea counsel never advised Movant of any conflicting trial schedules that he had in other cases, Movant just recently learned that in fact a trial scheduling conflict did exist. In

Movant's case at a status conference on November 22, 1995 (See Case Docket, #163. Ex. "A "), the District Court rescheduled the trial date to begin on September 16, 1996. At that time, guilty plea counsel was a sole practitioner, with only one secretary, which obviously meant that he could only obligate himself to Movant during the scheduled trial period, which was expected to run, according to guilty plea counsel from September 16, 1996 through the end of January, 1997.

However, court records show that in the matter of U.S.A. v. Brandino, et.al., Case No. 95-626-CR-ALL, a matter in which guilty plea counsel represented codefendant Linda Harris Brandino, that on May 30, 1996, the presiding judge scheduled the matter for trial, which was to begin on October 7, 1996, just two weeks following the scheduled commencement date of Movant's trial. (See Brandino Case Docket, #314, p. 47. Ex. "U "). Further examination of the Brandino case docket finds that guilty plea counsel never advised that court nor Movant's court, that a conflict of trial schedules existed. Obviously, either Movant or Linda Harris Brandino would suffer the lack of devotion and commitment by counsel, because of the overlapping trial schedules and the complexity of both cases, let alone the amount of time to prepare.

Meanwhile, guilty plea counsel was due to return on July 8, 1996 and expected funds from Movant. Movant didn't hear from guilty plea counsel, until Movant telephoned him on July 10, 1996, to advise him that, pursuant to a court order, the

(13)

Internal Revenue Service seized the personal property of Movant's family for uncollected income tax, the result of an audit for the years 1985-1989, a matter unrelated to the case at bar. (See Order for Entry in Premises to Effect Levy, 7/10/96. Ex. "N ").

During the IRS seizure, Movant advised lead IRS agent, Janet Fojo, that Movant maintained work product on one of the personal computers, which was in preparation for his criminal trial, of which she was aware. Movant requested adequate time to copy the work product which consisted of approximately 1800 files or that the IRS leave the computers with Movant. Because the IRS refused to give Movant and Movant's son sufficient time to copy these files, Movant's son was instructed by the IRS agent to erase the files before the computers were removed from Movant's home. A "government wipe" was used to erase these files, making it impossible to recover them.

Before the end of that day, Movant was able to finally reach guilty plea counsel to advise him of that which occurred. Guilty plea counsel then spoke directly to IRS agent Fojo and told her that she had interfered with Movant's criminal case, after which she telephoned IRS counsel and her superiors. Following those telephone calls, she advised Movant that she was going to leave the computers, as the IRS didn't want to interfere with the criminal case in any way. However, Movant told Agent Fojo, that the damage had already been done, and that the work product was permanently erased.

(14)

Shortly thereafter, guilty plea counsel advised ovant to prepare a detailed memo summarizing the events that led to the spoilation of Movant's work product, the result of corroboration with codefendant Michael Mandelblatt in preparation for trial. The work product was developed to support the argument that bank fraud was not committed. (See Memo to Neal Sonnett, "re: IRS Seizure on July 10, 1996. Ex. "K "). At a meeting on or about July 24, 1996, at the law offices of Zuckerman, Spaeder, et. al., at which codefendant Michael Mandelblatt, his counsel Michael Pasano, guilty plea counsel and Movant attended, Movant furnished everyone with a copy of this memo. Movant asked that guilty plea counsel seek a continuance of the scheduled trial date on September 16, 1996, so that Movant and codefendant Mandelblatt could have the opportunity to attempt to reconstruct the erased data, though it was expressed that this task seemed impossible. In the alternative, guilty plea counsel was asked to file a motion to dismiss the case because of the IRS interference.

Guilty plea counsel abruptly ended the meeting, and said that he had a haircut appointment, and that he was going out of town for the following week to a lawyers' convention, and that upon his return he'd advise Movant and counsel Pasano of his direction.

From this meeting at the end of July, 1996, until the first days of September, 1996, Movant did not hear from guilty plea counsel at all, nor did guilty plea counsel file any motions with the Court. Then, finally, guilty plea counsel's secretary telephoned Movant, and effectively summoned Movant to a meeting,

saying that guilty plea counsel "needs to see you".

At that meeting, which occurred at guilty plea counsel's office in the first few days of September, and prior to the suicide of codefendant Mandelblatt on September 5, 1996, guilty plea counsel told Movant, and Movant's wife, who attended the meeting, that he "didn't believe [Movant]" that the work product existed, and therefore couldn't be destroyed by the IRS. Moreover, and unethically, guilty plea counsel told Movant's wife, "your husband is a liar". Guilty plea counsel continued saying that the relationship with Movant had deteriorated to such a point where he had to withdraw from the case. He tried to assure Movant and his wife, that it was not due to the non-payment of his fees. But, in the next breath, he showed Movant and his wife a copy of a motion that codefendant Mandelblatt's counsel, Michael Pasano, was going to or already filed with the Court, requesting the Court's approval to allow Pasano to withdraw and to allow Mandelblatt to proceed pro se. This motion was dated August 30, 1996. Guilty plea counsel strongly asserted to Movant that "this is what we need to do". Surely, guilty plea counsel's motivation was to be released from his ethical and professional responsibilities, which to that point had not been fulfilled, and with the trial less than two weeks away, without any preparation, and without any discussion with Movant, whatsoever about trial strategy, he was pressuring Movant to agree to proceed pro se.

Then, confusingly, and in front of Movant's wife, guilty plea counsel said that if Movant decided to plead guilty, rather

(16)

than go to trial, that he could "find it in his heart and conscience to continue representing Movant through the guilty plea phase. Movant was in an imponderable position. Guilty plea counsel manipulated the IRS seizure to conjure an excuse that the relationship had deteriorated to such a point that he had to withdraw, when the fact is that the relationship had deteriorated a long time prior to that, and if professional ethics and conduct necessitate counsel to withdraw, then guilty plea counsel should have withdrawn months and months earlier, at which time, Movant could have sought other counsel, even if court-appointed, whereby counsel would "zealously" represent him, as compared to guilty plea counsel effectively not being present during ciritical stages of the process. This meeting ended, with Movant saying that he needed to think about the situation and further discuss it with his wife.

Movant felt cornered. Guilty plea counsel had done absolutely no preparation for trial. He never discussed any trial strategy whatsoever with Movant. Now, less than two weeks before the scheduled trial date, guilty plea counsel threatens to withdraw, to save himself, again manifesting the conflict of interest, due to the non-payment of his fees, attempting to avoid a lengthy trial and "financial bankruptcy". Movant was to telephone guilty plea counsel following the weekend of September 7-8, 1996.

However, on Friday, September 6, 1996, at approximately 4 P.M., codefendant Mandelblatt's son, Rick Mandelblatt, telephoned Movant to advise him that his father, Movant's long

(17)

time best friend, business partner and corroborating codefendant had committed suicide the night before. Shortly, thereafter, guilty plea counsel telephoned Movant to ascertain if Movant knew of Mandelblatt's death. Guilty plea counsel heard Movant distraught with emotion. Within an hour, guilty plea counsel telephoned again and advised Movant that he spoke to the U.S. Attorney's office and that the prosecutors sent their condolescences, and said that "everyone is concerned for [Movant's] well being". Guilty plea counsel then informed Movant that the government suggested a meeting just after the weekend, to "work out something reasonable in light of Mike [Mandelblatt's] death". At the time, Movant did not question the veracity of guilty plea counsel's representations, because Movant thought that perhaps Mandelblatt considered, among many other factors, that taking his own life might help break the government's inflexible position relative to the nine (9) year plea offer that they postured previously. But, the fact of the matter is that at the meeting which ensued early the following week, there was no indication that the government wanted to "work out something reasonable". Guilty plea counsel manipulated Movant's emotions at the lowest emotional moment of his life, just a few days after the loss of his long time best friend and business partner.

To keep the pressure on Movant to agree to plea, when Movant asked guilty plea counsel to file a motion to continue the scheduled trial date, so that Movant to collect himself emotionally, and to reformulate his trial approach, guilty plea counsel refused to do so. Guilty plea counsel knew that Movant

was significantly reliant on codefendant Mandelblatt's accounting acumen, and the arguments that were developed to content the bank fraud and other charges at trial. Everyone knew that Mandelblatt was the financial engineer of the alleged bank fraud and money laundering transactions. Mandelblatt was the Chief Financial Officer of the company, a CPA by training and profession. Guilty plea counsel had an obligation to file a motion for continuance. But instead, he refused to, increasing the pressure on Movant to enter a plea agreement, so as to let guilty plea counsel off the hook. Guilty plea counsel caused Movant to feel helpless and hopeless, while emotionally spent from the loss of his dear friend.

Guilty plea counsel, during his second telephone call that Friday afternoon, September 6, 1996, told Movant to think about the terms of an acceptable guilty plea, one that he could and would sign, in light of everything that had occurred. Movant did so, through that sorrowful weekend. Then, on Sunday evening, September 8, 1996, Movant sent a fax to guilty plea counsel advising that guilty plea counsel could pursue plea bargaining, but that "nine years...is ridiculous" and that Movant would plea if the agreement "does ot exceed five and a half years or ten percent more than that which [codefendant] Letzelter receives, whichever is less". In that communication, Movant states clearly:

> if I can't make sense of a plea agreement relative to my family surviving through the incarceration period, I most probably want to go to trial, particularly in light of Mike's death. [Emphasis added]

(19)

> (See <u>Memo from Hammer to Sonnett</u>, "re:
> Mandelblatt's death", 9/08/96. <u>Ex.</u> " J ").

Further, Movant addressed guilty plea counsel's threat to withdraw, as discussed at their meeting the previous week by saying:

> Though I don't want to use this memo as the
> time to share my thoughts regarding the
> substance of our meeting last week, but I
> do want to tell you that it was very
> uncomfortable for me.  I have always been
> forthright with you.  **I believe in my heart
> that the issue is money, just as it was for
> Mike Pasano.**  You are entitled to whatever
> feelings you do, but the ones regarding the
> computer are totally off base...TOTALLY!!!!
> **[Emphasis added]** <u>Id.</u>

Movant was reiterating the fact that he and Mandelblatt had developed the work product that was erased during the IRS seizure, despite guilty plea counsel's supposed disbelief. Guilty plea counsel, because of non-payment of his fees, certainly hadn't prepared for trial.  Neither had Pasano on Mandelblatt's behalf.  So, Movant and Mandelblatt developed their own strategy and work product to support their positions.

In addition, to advising guilty plea counsel to pursue plea bargaining, Movant stated:

> In order for me to plea, first of all, <u>I
> would like to know the plea agreements that
> every other person has agreed to.</u>  To date,
> Steve Merrill's is the only one that you
> have shared with me. **[Emphasis added]**. <u>Id.</u>

Movant was very focused on codefendant Letzelter's plea agreement.  In fact, Movant had requested copies of this agreement, and all of the other plea agreements several times before.  But, guilty plea counsel didn't provide them, except for codefendant Merrill's, even though he had them in his possession for more than one year.[1]  Movant points out in the

---

1.See <u>Ex.</u> "W".

(20)

same memo to guilty plea counsel that "Joe Letzelter was at the core of the fraud and the money laundering. He was a vital part of the 'brain trust' with Mike [Mandelblatt]." Movant's point was that Letzelter was highly culpable and totally knowledgeable about all of the alleged criminal conduct. The probation officer confirmed this sentiment in the PSR by stating that Letzelter was "extremely involved" and "regarded as highly culpable". (See PSR, ¶37. Ex. "P ")

Movant had the right to review and understand the plea agreements of his codefendant(s). In fact, guilty plea counsel had an obligation to furnish copies of them to Movant, especially because he had copies since June 15, 1995, which he received from AUSA Petri. Guilty plea counsel withheld critical information from Movant, information that would have caused Movant not to plead guilty and to proceed to trial as Movant stated in his memo to counsel. Movant had no idea that codefendant Letzelter had pled guilty to a count of money laundering in violation of 18 U.S.C.§1957 instead of §1956, and that he was sentenced to one year of home confinement, when Movant was being offered a nine year term of incarceration.

It wasn't until Movant received copies of the plea agreements, copies of transcripts of Letzelter's Change of Plea Hearing and Sentencing Hearing, during the direct appeal phase, did Movant learn of the details. Movant was shocked and appalled. Not only did Letzelter plead guilty to Count 71 of the Indictment as did Movant for issuing check #156846, dated June 22, 1992 in the amount of $350,000 but Letzelter pled guilty to a violation of 18 U.S.C.§1957 for this conduct, while

Movant pled guilty to a violation of 18 U.S.C §1956 "with the intent to promote" for the same conduct. But, because of guilty plea counsel's conflict of interest and his own desperation to escape going to trial for a lengthy period of time, he disregarded Movant's statement that he would plead guilty if the government agreed to a term of five and a half years or no more than ten percent of that which Letzelter received [for the money laundering charge], and if not, Movant would proceed to trial. Certainly, had guilty plea counsel divulged the critical information that he horded, namely that Letzelter received one year of home confinement, and pled guilty to a money laundering statute that has a base offense level of 17, as compared to a base offense level of 23, for a violation of 18 U.S.C.§1956 with the intent to promote, which drove Movant's sentence up to 108 months of incarceration rather than in the range of 57 to 71 months, Movant would have proceeded to trial. This was guilty plea counsel's worst nightmare.

By fabricating that the government wanted to meet early the week following Mandelblatt's death to "work out something reasonable", refusing to file a motion for ⌐ ntinuance of trial date, and withholding critical information to Movant's determination whether or not to plead guilty, without conscience or ethics, guilty plea counsel walked Movant to the judicial gallows, by taking him to a meeting to execute a plea agreement, the final step in wrongfully inducing an involuntary plea agreement, rather than proceeding to trial.

(22)

At the meeting which took place at approximately 6 P.M. at the government's offices in Miami, AUSA Petri and AUSA Rabinowitz began the meeting by telling Movant that they were sorry for Movant's loss of Mandelblatt. This comment alone sent Movant emotionally spinning. Movant felt as thought he had no other options, and fighting to hold himself together emotionally, raw inside from the process and the trauma of Mandelblatt's death, coupled with his own counsel's refusal to file a motion for continuance of trial date. Surrendering to the process, Movant signed the plea agreement for nine years of incarceration, the very same offer that he and codefendant Mandelblatt had rejected out of hand multiple times before, and one that spurred Mandelblatt's decision to end his life. In reality, guilty plea counsel was the doormat for the prosecutor's office.

The government was very anxious to schedule a plea hearing with the Court, obviously to avoid giving Movant time to rethink and pressured Movant to return to Court the next morning. Guilty plea counsel instructed Movant to meet him ten (10) minutes before the hearing, outside the courtroom. The next morning, minutes before the sched.led Change of Plea Hearing, guilty plea counsel instructed Movant that Judge Ferguson would go through a series of questions to which Movant had to answer all affirmatively. Guilty plea counsel told Movant that of the questions, there would be an inquiry into whether the guilty plea was coerced in any way, and whether Movant was satisfied with counsel. Guilty plea counsel warned

(23)

and threatened Movant that if Movant did not convey to the Court that he was satisfied with counsel and that there was no coercion, and the "can of worms opened", that the repurcussions for Movant would be even worse than Movant could possibly anticipate. Movant still distraught from the loss of his dear friend, Michael Mandelblatt, and worried about guilty plea counsel's threat that Movant could be punished for more than 108 months as set forth in the plea agreement, having had no experience in these types of matters in the past, Movant acquiesced and answered the questions as guilty plea counsel instructed.

To further accentuate counsel's ineffectiveness, counsel advised the Court, at the Change of Plea Hearing, that he had intended to withdraw because the relationship with Movant had deteriorated, but didn't because of his "concern" for Movant's "well-being" following Mandelblatt's death, and felt that the differences were reconciled. Of course, they were reconciled. Guilty plea counsel no longer had to face the facts that he shirked his legal and professional responsibilities, disregarded critical facts and issues that should have been investigated and raised, refused to file motions for continuance on two separate occasions which were requested by Movant, and adroitly played off Movant's traumatized emotional state, all in an effort to avoid a lengthy trial for which he was not paid, hadn't prepared, and even had a conflicting trial schedule in the Brandino case.

.

(24)

To add insult to injury, knowing that Movant was emotionally distraught, and despite being "concerned for [Movant's] well-being", guilty plea counsel did not ask the Court to make certain that Movant was competent to render his guilty plea by having Movant psychologically evaluated or holding a competency hearing, in light of the extraordinary trauma only four days before the Court was to accept his plea.

Simply said, guilty plea counsel, an officer of the Court, one who has been well regarded by the legal community, did wrong. A global analysis of the totality of the cirumstances should lead to the Court's finding that Movant's Sixth Amendment rights under the United States Constitution have been violated, and that but for guilty plea counsel's conduct, the obvious financial conflict of interest, that Movant would have proceeded to trial.

12.(B) **Ground:** **Movant's Fifth Amendment rights to due process under the United States Constitution were violated when guilty plea counsel failed to seek a psychological evaluation and/or a competency hearing prior to the Court's acceptance of Movant's guilty plea.**

**Facts :** The facts set forth in **Ground 12.(A)** are hereby reasserted. In addition, the facts are that Movant and codefendant Michael Mandelblatt were business partners, long time best friends, and corroborating codefendants. On September 6, 1996, Movant learned of the suicide of Mandelblatt, the night before. Movant was distraught at the news. Movant was suffering. Movant continues to suffer the loss of Mandelblatt. Movant asked guilty plea counsel to file a motion for continuance of the trial date, September 16, 1996, just ten days later to try to emotionally recoup from this tragedy, as well as to reconfigure his strategy for trial. Guilty plea counsel refused. In addition, Mandelblatt's family asked that Movant not attend Mandelblatt's funeral in Philadelphia that Sunday, September 8, 1996. Mandelblatt's son, Rick, asked Movant to trust and respect his request, and that it would be best for everyone. Mandelblatt's wife, Charlotte, had pinned the blame for Mandelblatt's decision to commit suicide, leaving her and her three children stunned, on Movant. This further intensified Movant's emotional trauma. Nonetheless, guilty plea counsel plowed ahead, pushing for a meeting with the government to "work out something reasonable in light of Mike [Mandelblatt's] death. Movant should have been psychologically evaluated and/or a competency hearing should have been requested by guilty plea counsel to safeguard Movant's Constitutional rights. Because of guilty plea

(26)

counsel's personal financial conflict of interest due to non-payment of his legal fees, he closed his eyes to the fact that Movant should not have been in Court entering a plea for nine years of incarceration, the same plea that he and Mandelblatt had rejected previously, and the one that spurred Mandelblatt's decision to commit suicide.

12( C).  <u>Ground</u>:   **Sentencing counsel was ineffective for his failure to attack the competency of guilty counsel, as requested by Movant in order to seek the withdrawal of his guilty plea.**

**Facts** :   Movant met with prospective sentencing counsel for the first time on February 11, 1997, at which time Movant recounted the events which led to his plea agreement, and the ineffective or lack of assistance from guilty plea counsel. Movant was told to prepare a memo detailing the "Events Leading to Plea Agreement", and return on February 17, 1997 with that memo for a second meeting. At that meeting, Movant presented his memo, which delineated guilty plea counsel's acts and omissions and substandard performance, by stating:

> 1-A foreclose proceeding on our $1,300,000 home in Weston, pursuant to which we lost our equity of approximately $400,000, culminated in October, 1994...
> 2-Neal Sonnett was retained as counsel mid to late 1993...[T]here was an understanding relative to fees: (1) $50,000 for 'pre-indictment' work and (2) $150,000 for trial work. Neal was advised...that 'trial fees' would have to come from the sale of our home. Unfortunately, we were not able to sell it prior to Coral Gables Federal foreclosing...because of our inability to pay the mortgage...Throughout the process, Neal was appraised of my finances, and the low probability of being able to pay... 4-Neal and I spoke early July [1996]. He told me that 'we would have to do something' upon his return [from a trip] on July 8 [1996]. If funds were not available to pay him, he would have to move to withdraw. I told him I understood. 5-On July 10, 1996, the IRS seized all of our personal property. A copy of the memo in which Hammer summarized the events of this traumatic day [is] attached. 6-Meanwhile, Neal and I had not met and to the best of my knowledge, there was <u>little or no preparation done for trial</u>. I was never asked to meet and/or to review the 100,000 documents involved in the case.

I received little or no correspondence from
Neal through the process. My conclusion
was and still is that <u>due to the lack of</u>
<u>payment</u>, he was not able to allocate his
time [as a sole practitioner] to properly
prepare.

7-On July 25, I prepared a memo for Neal
Sonnett to summarize the IRS seizure
activity and the relevant destruction of
[1800] computer files for the criminal
case. Note that this information was
compiled by [codefendant and now deceased]
Michael Mandelblatt and me together.
Michael Mandelblatt and I met with Neal
Sonnett and Michael Pasano [counsel for
Mandelblatt] days later at Pasano's office.
<u>Our request was th[at] Neal file a motion</u>
<u>to continue the trial date</u>, so that
Mandelblatt and I could attempt to
reconfigure all of the data, which we told
Neal and Pasano was most likely an
impossible task. We discussed the
<u>possibility of the case being terminated</u>
<u>because of the government's interference</u>.
Neal left the meeting and said he had to
think about it. Pasano advised Michael
Mandelblatt and me after Neal left, that
Neal should be the one to file the
motion...

9-A month passed from our late July, 1996
meeting. My wife and I met with Neal at
his office at the end of August or very
early September [fairly certain that it
was the 2nd or 3rd of September]. Despite
significant effort from Mandelblatt and
me, <u>Neal advised that he 'didn't believe'</u>
<u>us and **refused to file a motion**</u>. **Further,**
**he said that 'our relationship had**
**deteriorated to a point that he felt that**
**he had to attempt to withdraw from the**
**case'...He told my wife that 'you husband**
**is a liar'. He said that 'credibility had**
**broken down'.** Despite his explanation,
he said that if [Movant] decided to plea,
he could find it in his heart and
conscience to represent [Movant] through
the plea process. This seemed to be a
terrible contradiction, but [Movant felt
he] had little choice, particularly after
Mandelblatt's suicide days later.

10-...on or about September 3, Michael
Pasano filed a motion to withdraw [as
counsel] and stated that Michael
Mandelblatt was going to represent
himself...Sonnett gave [Movant] a copy of
the motion filed by Pasano [at the meeting
in which Movant's wife attended] and said

(29)

that [Movant] and Sonnett should follow the same course.

11-On September 5, [1996] Michael Mandelblatt killed himself.

12-...I was called by Michael Mandelblatt's son, Rick, on Friday afternoon at 4PM, September 6, 1996. I was emotional[ly] distraught. When I spoke to Neal that afternoon, because he called moments after Rick called me, I had emotionally 'cracked'. Neal heard me on the phone in very bad shape, as did Rick Mandelblatt...

15-I had asked Neal to request a meeting for me to convey some of Michael Mandelblatt's thoughts with the U.S. Attorney's office. [According to Neal] they denied the request and said that it would not be appropriate.

16-Later that afternoon, Neal called me back to advise me that the U.S. Attorney's office conveyed their sympathy and regrets to me. **'Everyone expressed their concern for [you] and [your] stability.** Neal asked me if I thought that I needed counseling. Further, Neal conveyed that the U.S. Attorney's office suggested that Neal and I meet with them early the following week [remembering that the trial was slated to begin on September 16, 1996]. **Neal indicated that the U.S. Attorney's office wanted to 'work out something reasonable' in light of the situation. I agreed to meet [on that basis].**

17-We finally met on September 11, late in the day at approximately 6PM at the U.S. Attorney's office. [AUSA] Petri and [AUSA] Rabinowitz began the meeting by telling me that they were very [sorry] about Mandelblatt. **That comment alone sent me emotionally spinning.**

18-The plea agreement which was put forth ...was the same nine (9) year deal that was proferred two years or so earlier. They didn't budge an inch. As I choked and read the final draft at the U.S. Attorney's office, **I concluded that I had no options, and emotionally I couldn't pull myself together to fight anymore. So I surrendered to the process and jst signed the agreement. In a strange way, the plea agreement feels like a less dramatic form of suicide than that which Mandelblatt committed.**

(30)

> The conclusion is obvious. That because of Sonnett's lack of preparation, the terrible relationship between Sonnett and [Movant], [Movant's] inability to pay, [Movant's] emotional state, and Mandelblatt's death and the family's initial reaction of blaming [Movant] for Mandelblatt's suicide, were devastating to the point that [Movant] just gave up. [Emphasis added]

(See Memo to Scott Srebnick, "Events Leading to Plea Agreement", 2/17/97. Ex. "L ").
(See also Memo to Neal Sonnett, IRS Seizure on July 10, 1996, 7/25/95. Ex. "K ").

Then, on February 18, 1997, the next day, sentencing counsel was formally substituted by the Court for guilty plea counsel, with Movant's sentencing hearing scheduled for February 28, 1997, just ten days later. On February 19, 1997, the day following sentencing counsel's substitution, he filed a Motion to Continue Sentencing which stated:

> 2.   On September 12, 1996, four days before the scheduled trial date and less than one week after the suicide of his best friend, codefendant Mandelblatt, [Movant] entered a plea of guilty...pursuant to a plea agreement on September 11, 1996;
> 3.   During the time leading up to the entry of the plea and at the time of the plea, the relationship between [Movant] and his counsel, Neal Sonnett, Esq. had deteriorated signficantly;
> 4.   Ultimately, the deterioration in the relationship led to Mr. Sonnett's withdraw...one day before the scheduled sentencing date...
> 6.   On February 11, 1997, [Movant] with undersigned [sentencing] counsel met for the first time...[and]...for the second time on February 17, 1997, at which time the undersigned agreed to represent [Movant]...
> 7.   On February 18, 1997...Magistrate Judge Brown approved the substitution of counsel... for Mr. Sonnett...

8. However, in light of the relationship between Mr. Sonnett and [Movant], it would have been imprudent· for Mr. Sonnett to represent [Movant] at sentencing. 9. Undersigned [sentencing] · counsel respectfully submits that he is currently **not prepared to effectively represent [Movant] at sentencing, if the sentencing hearing is held on February 28, 1997**...[G]iven the seriousness of the case, the potential deprivation of liberty which [Movant] faces, the volume of evidence and discovery, and complexity of the issues relevant at sentencing (including whether the amounts stipulated in the plea agreement overrepresent the nature of the offense), **no counsel entering an appearance at this stage could be adequately prepared for sentencing on that date.**

10. Undersigned [sentencing] counsel...further represents that he has **serious concerns about whether he can provide [Movant] with the effective assistance of counsel to which [Movant] is entitled under the Sixth Amendment without exploring issues related to the voluntariness of [Movant's] plea, on September 12, 1996.** The factors which raise serious concerns include, but are not limited to, **the death of Michael Mandelblatt and the strained relationship between [Movant] and his counsel before and at the time the plea was entered.** Mandelblatt was [Movant's] best friend and the most knowledgeable person with regard to the affairs of Sheffield Industries. **Mandelblatt's death, including the manner in which he died and its timing, coupled with the wide communication gap between [Movant] and his trial [guilty plea] counsel on_y four days before the scheduled trial date, left [Movant] in a state of utter desperation and hopelessness...**

12. Accordingly, [Movant] respectfully requests a **minimum of a 21 day continuance** of the currently scheduled sentencing hearing, so that undersigned [sentencing] counsel can explore these issues and, at the same time prepare for sentencing.

(See Motion ‚to Continue Sentencing, 2/18/97. Ex. "M ").

On February 21, 1997, just two days after sentencing counsel filed the Motion for Continuance of Sentencing, he met with [Movant] to finalize a Retainer Agreement that he presented to [Movant] that day for the first time.  At that meeting, sentencing counsel told [Movant] that, despite the fact that he believed that everything contained in [Movant's] memo about guilty plea counsel's lack of or poor performance was true, and that he suspected that there was "even more", and that this was not the first case wherein he heard of or directly witnessed substandard and unprofessional performance by [guilty plea counsel], he discussed the situation with Albert Krieger, his mentor and with whom he worked. Sentencing counsel told Movant that Krieger and guilty plea counsel were friends for over 25 years and that sentencing counsel was told by Krieger not to represent [Movant] if the strategy was to attack guilty plea counsel for ineffective assistance of counsel [in order to withdraw Movant's guilty plea].  Sentencing counsel told Movant that he "could not bite the hand that feeds [him]."

Sentencing counsel incorporated the following into a Retainer Agreement and presented it to Movant for immediate review and signing on February 21, 1997, now only seven days before the sentencing hearing:

> This representation includes the anticipated filing of a motion to withdraw [Movant's] plea, an evidentiary hearing on said motion (if ordered by the Court), and a sentencing hearing (if the motion to withdraw is denied by the Court)...
> [Movant] agree[s] and understand[s] that the law firm will assume the responsibility

(33)

for representing [Movant] in this case.
[Movant] agree[s] and understand[s] that
the law firm will use its best efforts and
professional skill to obtain the most
favorable result possible...
[Movant] understand[s] that one possible
strategy for seeking to withdraw a plea is
to challenge the competency of
representation by the attorney who
negotiated the plea agreement and advised
[Movant] to enter the guilty plea. I
understand that **the law firm has deemed it
to be in my best interest not to attack the
competency of representation provided by
my prior attorney, Neal R. Sonnett, Esq.
as a ground for moving to withdraw my plea.
I understand that the law firm has concuded
that attacking Mr. Sonnett's representation
as being violative of the Sixth Amendment
would not be a successful strategy and
would, in all likelihood, prejudice any
other claims raised in a motion to withdraw.**
The law firm has explained the risks and
possible benefits of such a strategy and
I agree with the law firm's assessment of
that strategy.

(See <u>Retainer Agreement</u>, 2/21/97. <u>Ex.</u>"Q ").

Sentencing counsel told Movant, after his review of the
Retainer Agreement, that if [Movant] wasn't comfortable, he
could go back to the Court and seek appointment of another
attorney, despite the fact that sentencing counsel was just
appointed substitute counsel three days earlier, on February
18, 1996, and sentencing was scheduled one week later. Movant
felt that he had no other options at such a late date, though
the situation was another example of the process being unfair
and unjust. Movant, feeling hopeless again, signed the Retainer
Agreement. But the question at hand points to sentencing
counsel's assertion in his Motion for Continuance of Sentencing
that a 21 day continuance, which was denied on February 24,

(34)

1996, was necessary to explore all of the issues surrounding the matter, but just two days following the filing of the motion, sentencing counsel determined that it would not be in Movant's best interest to attack guilty plea counsel's competency. Obviously, it was either the conflict of interest resulting from Albert Krieger's instruction not to represent Movant if the strategy was to attack his long time friend and often co-counsel, Neal Sonnett, or erroneous advice rendered to Movant. In either case, Movant was prejudiced from petitioning the Court to withdraw his plea agreement.

**12. (D) Ground:  Sentencing Counsel was ineffective for failing
                    to object to the District Court's Order of
                    Restitution at Movant's Sentencing Hearing.**

**Facts:**  Despite the undisputed facts set forth in the
Presentence Report ("PSR"), which clearly enumerate Movant's
"Financial Conditions" at the time of sentencing, which were
adopted by the District Court, sentencing counsel **failed to
object to an impossible restitution order,** in the amount of
$250,000 payable prior to the commencement of supervised release.
(See Judgment, pp.1,3. Ex. " C")

The facts underlying Movant's Financial Condition set forth
in the PSR include:    (1) Movant's negative net worth of
approximately $1.6 Million, principally consisting of a $1.2
Million obligation (and lien of record) due to the Internal
Revenue Service (an obligation which continues to accrue interest
and has a payment priority senior to the order of restitution in
the case at bar); (2) Movant's assets totalled $50; and (3)
Movant's  negative  monthly  cash  flow  of  ($1,487),  which
necessitated family members to help Movant "make ends meet". (See
Presentence Report, ¶91, p. 19. Ex. " O")

In addition, the probation officer states in the PSR:

> Given  the  [Movant's]  current  financial
> condition,  it does not  appear he has the
> ability to pay a fine.  However, the court
> may wish to order restitution payable to the
> victims in this case.  Id.

Nonetheless, the probation officer did not find that Movant
had the present or future ability to satisfy an order of
restitution for any amount of loss suffered by the victims, if
ordered **payable prior to the commencement of supervised release.**

Practically, based on the Bureau of Prison's performance pay levels, which range from $.17 to $.40 per hour, Movant could not be expected to earn more than $10,000 in the aggregate during his 108 month term of incarceration, making it impossible to pay the $250,000 restitution ordered prior to the commencement of supervised release.

Beyond the PSR, the District Court made a finding that Movant was unable to pay a fine, but concluded that he could pay some restitution. (See Sentencing Transcript, p.48. Ex. " S") But, the fact is that the District Court did not explain how it concluded that Movant had the ability to pay this amount prior to the commencement of supervised release, by virtue of the court's findings that Movant possesses "obvious abilities and training and education". Id.

The facts are clear that the district court ordered an impossible amount of restitution payable prior to the commencement of supervised release to which sentencing counsel failed to object, causing a procedural bar precluding Movant from arguing the District Court's abuse of discretion on direct appeal, prejudicing Movant to an imponderable obligation of $250,000 due prior to the commencement of supervised release, when his aggregate income during his term of incarceration will be less than $10,000, and then subjecting Movant to any further ramifications as determined by the District Court for Movant's failure to comply with the ordered restitution.

(37)

12.(E)  Ground:  Sentencing counsel was ineffective for his failure to challenge the disparity between the sentences of Movant and codefendant Letzelter, similarly situated codefendants, who both pled guilty to Count 71 of the Indictment, but in violation of different money laundering statutes, and failed to seek a downward departure for Movant as a result thereof.

Facts :  In the Superseding Indictment, dated September 21, 1995, Movant, together with codefendants Michael Mandelblatt, Joseph Letzelter, Steven Merrill, Heidi Frasier, Joseph Friedman and Pasquale Luca were all charged with violation of Title 18, United States Code, Section 1956(a)(1)(A)(i) and (B)(i). However, the government ultimately dismissed these charges against all of the defendants, except for Movant. (See Comparison of Money Laundering Charges, Chart. Ex. "V"). Charges against codefendant Mandelblatt were dismissed upon the government's filing of suggestion of death. Charges against defendants Friedman and Luca were dismissed pursuant to plea negotiations. More importantly, codefendants Frasier, Merrill, and especially Letzelter, all pled guilty to a violation of Title 18, United States Code, Section 1957, while the charges alleged in the Indictment were dismissed, though in violation of only 18 U.S.C. §1956.

Upon careful examination of and comparison between the plea agreements executed by codefendant Letzelter and Movant, one would find that both pled guilty to Count 71 of the Indictment for having issued check#156846, dated June 22, 1992, in the amount of $350,000, yet they were adjudicated guilty under two different money laundering statutes, 18 U.S.C.§1957, and §1956 respectively.

(38)

One of the pertinent differences between 18 U.S.C.§§1956 and 1957, is whether one has knowledge of the underlying specified unlawful activity, in this case, bank fraud, which violated 18 U.S.C.§1344. Letzelter's plea agreement states:

> 1.   The defendant agrees to plea guilty to two felony counts...Specifically...to a charge **conspiring to commit bank fraud, in violation of Title 18, United States Code 1344...[and]...to engaging in money laundering transactions in violation of Title 18, United States Code, Section 1957.**
> 2.   The defendant agrees and understands that...for sentencing purposes [bank fraud and securities fraud] exceeds $20 Million...money laundering transactions...exceeds $4.1 Million.

> (See Letzelter Plea Agreement, 11/10/94. Ex. "F").

Comparatively, Movant, for sentencing purposes pled guilty to bank fraud and securities fraud that exceeds $20 Million and money laundering of approximately $3,980,000 [less than that of codefendant Letzelter].

Letzelter's involvement and culpability are clearly addressed in the Presentence Report:

> 37.   Joseph Letzelter was a certified public accountant and the controller of Sheffield.   He was **extremely involved** in various schemes in the indictment and is **regarded as highly culpable**. Letzelter directed numerous Sheffield employees...in furtherance of the schemes...

> (See Presentence Report,   ¶37. Ex. "P").

AUSA Rabinowitz at Letzelter's Change of Plea Hearing stated:

(39)

> This defendant's role in the conspiracy was
> somewhat **substantial**. He was the controller
> since March of 1991.   He participated in
> preparing the false financial statements that
> went to the bank on a daily basis, and the
> financial statements disseminated to the
> public and filed with the SEC...In addition,
> he participated in several efforts to conceal
> this fraud to both the bank auditors , as
> well as the outside CPA firm...
>
> (See Letzelter Change of Plea Hearing,p.14
> Ex. "D").

Letzelter had complete knowledge of the bank and securities

fraud activities, and corroborated with Michael Mandelblatt in

devising the financial transactions which allegedly were in

violation of the money laundering statutes.

When examining the timing of Letzelter's guilty plea, he

executed his guilty plea on November 10, 1994, prior to the

Indictment being handed down by the grand jury. The government

filed his Information on July 26, 1996. His sentencing hearing

occurred on December 16, 1996.   All of this was public

information.

Sentencing counsel was ineffective because of his failure

to raise this issue, and seek a downward departure because of

this significant disparity.   Both Movant and codefendant

Letzelter were highly culpable and extremely involved in the

alleged money laundering transactions, as well as the alleged

predicate offenses.  Both had knowledge of the facts that the

proceeds for the alleged money laundering transactions, to which

they both pled guilty, namely to Count 71 of the Indictment, were

obtained from the underlying specified unlawful activity, bank

fraud.   However, counsel's ineffectiveness for his failure to

(40)

raise this critical issue, resulted in a sentence for money laundering of 108 months, rather than a range of 57 to 71 months, had Movant also been sentenced under §2S1.2 of the Federal Sentencing Guidelines for a violation of 18 U.S.C.§1957, rather than 18 U.S.C.§1956, where the base offenses were 17 and 23 respectively.

12.( F)   <u>Ground:</u>   **Appellate counsel was ineffective for his failure to argue the District Court's abuse of discretion relative to its denial of Movant's requested downward departure at sentencing.**

**Facts :**   The Superseding Indictment, dated September 21, 1995 charged Movant and six codefendants, including Joseph Letzelter, with violations of 18 U.S.C. §1956(a)(1)(A)(i) and (B)(i). Both Movant and codefendant Letzelter pled guilty to Count 71 of the Indictment, for having issued check #156846, dated June 22, 1992, in the amount of $350,000. However, Letzelter's plea agreement, executed on November 10, 1994, prior to the Indictment being handed down, and in an Information filed on July 26, 1996, included Count 71 of the Indictment, but violative of <u>18 U.S.C. §1957</u>, rather than 18 U.S.C. §1956. Conversely, on September 12, 1996, Movant pled guilty to Count 71 of the Indictment, in violation of 18 U.S.C. §1956 "with the intent to promote".

Reviewing the Presentence Investigation Report, the probation officer concluded that Letzelter was "extremely involved" and "regarded as highly culpable". (See <u>Presentence Report</u>, ¶37. <u>Ex.</u> " P"). In addition, the government, at Letzelter's Change of Plea Hearing, in its proffer to the Court, indicated that:

> This defendant's role in the conspiracy was somewhat **substantial.** He was the controller...He participated in preparing the false financial statements that went to the bank on a daily basis, and the financial statements disseminated to the public and filed with the SEC...In addition, he participated in several efforts to conceal this fraud to both the bank auditors, as well as the outside CPA firm...
>
> (See <u>Letzelter Change of Plea Hearing</u>, p.14. <u>Ex.</u> " D").

(42)

Letzelter had absolute knowledge that the "proceeds" for the alleged money laundering transactions were derived from the underlying unlawful activity of bank fraud.

At the time of Letzelter's sentencing hearing, on December 16, 1996, approximately two and a half months prior to Movant's sentencing hearing, the government requested that the District Court grant a downward departure for Letzelter's substantial assistance , when it said:

> Because of his extraordinary cooperation, the Government is moving pursuant to §5K1 [of the Federal Sentencing Guidelines] to ask this Court for a downward departure of his sentence. Right now, his offense level is 26, which is 63 to 78 month guideline range. **It's the general practice in the United States Attorneys Office when somebody is a good cooperator to seek a one third reduction of his sentence...** One r[are] occasions we come before a Court and ask to go to one half...[W]e are asking this Court to reduce his sentence two-thirds...**Again, the unfortunate situation that we find ourselves in is the case had money laundering aspects to it. The guidelines are extremely high. We are locked into a guildeline recommendation to start with of 63 to 78 months.** [Emphasis added].

(See Letzelter Sentencing Transcript  ,p.20. Ex. "E").

Ultimately, the Court sentenced Josep. Letzelter to one year of home confinement, rather than 63 to 78 months. Certainly, Letzelter was entitled to a downard departure for his assistance to the government. However, the Court made this extraordinary accomodation and downward departure from level 26, determined by the money laundering guideline, to level 10, thus a reduction of 16 .offense levels, a significant portion of which was because the money laundering guidelines overstated

(43)

the seriousness of the offense.

Despite that Movant was sentenced under §2S1.1, offense level 31, with a range of 108 to 135 months, for pleading guilty to the same money laundering count in the Indictment, Count 71, Movant requested a downward departure at his sentencing hearing, on the basis that the money laundering guidelines overstated the seriousness of the crime. In comparison to the Court's determination of Letzelter's sentence, vis-a-vis the "extremely high guidelines" for money laundering, and despite the fact that codefendant Letzelter were both highly culpable and knowledgeable, pleading to the same count, though Movant was incrementally punished for a violation of 18 U.S.C.§1956, unlike Letzelter who was punished for a violation of 18 U.S.C.§1957, the Court denied Movant's request for a downward departure by merely stating:

> On the other point, I disagree that the money laundering characteristics overstate the seriousness of the offense.
>
> (See Sentencing Hearing Transcript for Hammer, p. 50. Ex. "T").

Sentencing counsel's failure to raise this issue at sentencing, in light of the fact that Letzelter's sentencing hearing was approximately two and a half months prior to Movant's sentencing hearing, prejudiced Movant to a sentence of 108 months, rather than one in the range of 57-71 months, had the requested downward departure of six offense levels been granted.

(44)

12.(G) <u>Ground</u>:   Appellate counsel was ineffective for failing
                to raise the issues herein.      pertaining to
                guilty   plea   and/or   sentencing   counsels'
                ineffectiveness,  on  direct  appeal,  <u>including</u>:

   <u>Ground</u> 12.(A)   Movant's Sixth Amendment rights under
                the United States Constitution were violated
                when guilty plea counsel denied Movant of
                effective assistance of counsel.

   <u>Facts</u> :   Reassert facts set forth on pages 9-25.

   <u>Ground</u> 12.(B)   Movant's Fifth Amendment rights to due
                process under the United States Constitution
                were violated when guilty plea counsel failed
                to seek a psychological evaluation and/or a
                competency   hearing   prior   to   the   Court's
                acceptance of Movant's guilty plea.

   <u>Facts</u> :   Reassert facts set forth on pages 26-27.

   <u>Ground</u> 12.(C)   Sentencing counsel was ineffective for
                his failure to attack the competency of guilty
                plea counsel, as requested by Movant in order
                to seek the withdrawal of his guilty plea.

   <u>Facts</u> :   Reassert facts set forth on pages 28-35.

   <u>Ground</u> 12.(D)   Sentencing counsel was ineffective for
                failing to object to the District Court's
                Order of Restitution at Movant's Sentencing
                Hearing.

   <u>Facts</u> :   Reassert facts set forth on pages 36-37.

   <u>Ground</u> 12.(E)   Sentencing counsel was ineffective for
                his failure to challenge the disparity between
                the   sentences   of   Movant   and   codefendant
                Letzelter, similarly situated codefendants, who
                both pled guilty to Count 71 of the Indictment,
                but in violation of different money laundering
                statutes,  and  failed  to  seek  a  downward
                departure for Movant as a result thereof.

   <u>Facts</u> :   Reassert facts set forth on pages 38-41.

   <u>Ground</u> 12.(F)   Appellate counsel was ineffective for his
                failure to argue the District Court's abuse of
                discretion relative to its denial of Movant's
                requested  downward  departure  at  sentencing.

   <u>Facts</u> :   Reassert facts set forth on pages 42-44.

Ground:  12(H) Whether sentencing counsel was ineffective by failing to object to Movant being sentenced pursuant to §2S1.1(a)(1) of the Federal Sentencing Guidelines, rather than §2S1.1(a)(2) because the alleged financial transactions were intended to bring to an end the underlying activity of fraud, rather than having the "intent to promote" that activity.

Facts :  Reassert facts set forth on page 48.

Ground:  12(I) Guilty plea counsel and/or sentencing counsel were ineffective in failing to challenge the sufficiency of the indictment because the proceeds involved in the Art View Transactions (Counts 55-69) were not obtained from a separate and distinct completed predicate offense.

Facts :  Reassert facts set forth on pages 49-50.

Ground:  12(J) Guilty plea counsel and/or sentencing counsel were ineffective in failing to challenge the sufficiency of the indictment because the proceeds involved in the I-95 Transactions (Counts 70-82) were not obtained from a separate and distinct completed predicate offense.

Facts :  Reassert facts set forth on pages 51-52.

(46)

**Facts :**   Prior to filing Movant's direct appeal, Movant wrote a letter to appellate counsel, dated May 26, 1998, and stated:

> Previously, I wrote to you and expressed concern...that we are not raising the "ineffective assistance of counsel" issue in the direct appeal...[d]espite...that...you told me...this was an issue...that should properly be raised under a §2255...it appears to me that if the ineffective assistance of counsel issue is not raised now on direct appeal, then potentially, I will have hurdles to climb over. I am very, very concerned about being procedurally barred for not having raised the issue. I ask that you rethink this issue once again, before filing the direct appeal...Obviously, this is a critical analysis to me and my family.

(See Letter from Hammer to Seitel, 5/26/98. Ex. "G").

In fact, appellate counsel advised Movant that in the Eleventh Circuit, claims of ineffective assistance of counsel are to be raised under 28 U.S.C. §2255, rather than on direct appeal. Appellate counsel's failure to raise the issues above, pertaining to guilty plea and/or sentencing counsels' ineffectiveness, Movant was prejudiced.

(47)

**12.(H)**   Ground:   Whether sentencing counsel was ineffective by failing to object to Movant being sentenced pursuant to §2S1.1(a)(1) of the Federal Sentencing Guidelines, rather than §2S1.1(a)(2) because the alleged financial transactions were intended to bring to an end the underlying activity of fraud, rather than having the "intent to promote" that activity.

Facts : The financial transactions which charged Movant and other codefendants with violations of 18 U.S.C.§1956, were transactions devised with the intend to bring to an end the prebilling scheme, i.e. the alleged bank fraud. Nonetheless, sentencing counsel had an obligation, particularly in light of the fact that Movant explained the motivation behind these transactions was to stop the prebilling. The record shows that the prebilling scheme spanned a period of 32 months, including tens of millions of dollars of "rebilling", and the "I-95 Transactions", Count 71 of which Movant pled guilty to, spanned less than three months, when codefendants Mandelblatt and Letzelter devised these transactions in an effort to cease the prebilling activity.

At sentencing, Movant was sentenced pursuant to §2S1.1(a)(1) of the Federal Sentencing Guidelines, which carries a base offense level of 23, and applies to convictions of money laundering transactions that were conducted with the "intent to promote" the underlying specified unlawful activity. However, sentencing counsel should have objected as sought sentencing pursuant to §2S1.1(a)(2), "otherwise", which carries a base offense level of 20, or sought a downward departure from the guideline of §2S1.1(a)(1).

(48)

12.(I) <u>Ground</u>: **Guilty plea counsel and/or sentencing counsel were ineffective in failing to challenge the sufficiency of the indictment because the proceeds involved in the Art View Transactions (Counts 55-69) were not obtained from a separate and distinct completed predicate offense.**

**Facts :** The government improperly prosecuted as money laundering, financial transactions which were indistinguishable from the underlying activity of bank fraud. Guilty plea and/or sentencing counsel failed to challenge the sufficiency of the indictment relative to the money laundering charges involved in the "Art View Transactions" (Counts 55-69), because the proceeds involved in the financial transactions allegedly in violation of 18 U.S.C. §1956 were **not obtained from a separate and distinct completed predicate offense**, in this case, bank fraud. The bank fraud was not complete until there was a movement or transfer of funds out of the bank, Continental Bank, the company's lender. The indictment states that it was part of the conspiracy for the defendants to create approximately $1.8 Million in false invoices in the names of Art View, Lucky Poly, and Plastica, so that Sheffield could "obtain" additional funds under the credit line. The indictment continues that it was part of the conspiracy for the defendants to "draw money out of Sheffield's operating accounts at Continental Bank and send this money...to Art View..." (See Indictment, p. 13, ¶46). However, the checks which were disbursed to Art View, et. al., executed the bank fraud scheme, and cannot be the same transactions for alleged money laundering violations. The submission of the invoices to Continental Bank, which were submitted together with

(49)

borrowing base certificate were not executions of the scheme, but rather acts in furtherance of the scheme or artifice. The evidence is insufficient to support the alleged "Art View Transactions" (Counts 55-69) of the Indictment, because the movement of the funds from Sheffield's operating account at Continental Bank to Art View, Lucky Poly or Plastica completed the alleged bank fraud, and by definition cannot also be a money laundering transaction.

One other important fact, relative to sentencing counsel, is that he was counsel to one of the defendants, Mr. Maulden, in United States v. Christo, and incorporated in an appellate brief for Maulden, the very same argument being raised in the case at bar, and prevailed. Moreover, sentencing counsel filed his brief in November, 1996, prior to the Sentencing Hearing for Movant, but did not raise the issue on Movant's behalf.

12.(J) <u>Ground</u>:   **Guilty plea counsel and/or sentencing counsel were ineffective ·in failing to challenge the sufficiency of the indictment because the proceeds involved in the I-95 Transactions (Counts 70-82) were not obtained from a separate and distinct completed predicate offense.**

**Facts :**   The government improperly prosecuted as money laundering, financial transactions which were indistinguishable from the underlying activity of bank fraud. Guilty plea and/or sentencing counsel failed to challenge the sufficiency of the indictment relative to the money laundering charges involved in the "I-95 Transactions" (Counts 70-82), because the proceeds involved in the financial transactions allegedly were in violation of 18 U.S.C.§1956 and were **not obtained from a separate and distinct completed predicate offense,** in this case, bank fraud.   The bank fraud was not complete until there was a movement or transfer of funds from the bank, Continental Bank, the company's lender.   The indictment states that it was further part of the conspiracy for the defendants to draw money out of Sheffield's operating account at Continental Bank and send this money totalling approximately $3,300,000 to I-95.   (See Indictment, p. 14, ¶49).   However, the disbursement of these funds merely completed and executed the bank fraud scheme, and cannot be the same transactions for alleged money laundering violations.   The submission of false invoices to Continental Bank, together with the corresponding borrowing base certificate were not executions of the scheme, but rather acts in furtherance of the bank fraud scheme or artifice.   The evidence is insufficient to support the alleged "I-95 Transactions" (Counts

70-82) of the Indictment, because the movement of the funds from Sheffield's operating account at Continental Bank to I-95 completed the alleged bank fraud, and by definition cannot also constitute money laundering transactions.

One other important fact, relative to sentencing counsel, is that he was counsel to one of the defendants, Mr. Maulden, in <u>United States v. Christo</u>, and incorporated in an appellate brief for Maulden, the very same argument being raised in the case at bar, and prevailed. Moreover, sentencing counsel filed his brief in November, 1996, prior to the Sentencing Hearing for Movant, but did not raise the issue on Movant's behalf.

13. Grounds 12(A), 12(B), 12(I) and 12(J) were not previously raised because guilty plea counsel was ineffective.

Grounds 12(C), 12(D), 12(E), 12(H), 12(I) and 12(J) were not previously raised because sentencing counsel was ineffective.

Grounds 12(F) and 12(G) were not previously raised because appellate counsel was ineffective.

IN THE MATTER OF
UNITED STATES V. MITCHELL HAMMER, ET. AL.
Case No. 95-367-CR-Ferguson

EXHIBITS

| | Ex. | ID. |
|---|---|---|
| United States v. Hammer, et. al.  Case Docket............A | | |
| Certificate of Trial Attorney............................B | | |
| Judgment, pp.1,3.........................................C | | |
| Letzelter Change of Plea Hearing, p. 14.................D | | |
| Letzelter Sentencing Transcript,  p. 20.................E | | |
| Letzelter Plea Agreement................................F | | |
| Letter from Hammer to Seitel, 5/26/98...................G | | |
| Letter from Hammer to Neal Sonnett, re:Status, 8/24/95...H | | |
| Letter to Sonnett from AUSA Petri, 7/24/95..............I | | |
| Memo from Hammer to Sonnett, re: Mandelblatt death,9/8/96J | | |
| Memo to Neal Sonnett, re:IRS Seizure on July 10, 1996....K | | |
| Memo to Scott Srebnick, "Events Leading to Plea Agreement | | |
|   2/17/97.............................................L | | |
| Motion to Continue Sentencing, 2/18/97...................M | | |
| Order for Entry in Premises to Effect levy, 7/10/96......N | | |
| Presentence Report ("PSR") ¶91, p.19....................O | | |
| Presentence Report ("PSR") ¶37...........................P | | |
| Retainer Agreement, 2/21/97.............................Q | | |
| Sentencing Transcript for Joseph Letzelter,pp.16-17......R | | |
| Sentencing Transcript for Mitchell Hammer, p. 48.........S | | |
| Sentencing Transcript for Mitchell Hammer, p. 50........T | | |
| U.S.A. v. Brandino Case Docket, pp.6,26, 47-49...........U | | |
| Comparison of Money Laundering Charges, Chart............V | | |
| Letter from AUSA Petri to Sonnett, re: Plea Agreements | | |
|   for Letzelter, Frasier, Merrill and Friedman,6/15/95..W | | |
| Frasier Plea Agreement, 2/14/95..........................X | | |

Mitchell Hammer
Reg. No. 48828-004
Federal Prison Camp-Miami
P.O. Box 779800
Miami, Fl.    33177

EXHIBIT "A"--ONLY

EXHIBIT "A"

<u>United States v. Hammer, et. al.</u> Case Docket

APPEAL CLOSED

U.S. District Court
Southern District of Florida (Miami)

CRIMINAL DOCKET FOR CASE #: 95-CR-367-ALL

USA v. Hammer, et al                                    Filed: 05/25/95
Dkt# in other court: None

Case Assigned to:   Judge Wilkie D. Ferguson, Jr.

MITCHELL A. HAMMER (1) , DOB:        Scott Alan Srebnick
6/19/52  PRISONER #48828-004           [term  02/28/97]
ADDRESS: 3576 Coral Springs           [COR LD NTC ret]
Drive, Coral Springs, FL 33065       Scott A. Srebnick
(954)255-1771                         1899 South Bayshore Drive
     defendant                        Miami, FL 33133-2393
[term  02/28/97]                      305-285-9019

                                     Neal Russell Sonnett
                                       [term  02/19/97]
                                      [COR LD NTC ret]
                                     Sonnett, Sale & Kuehne, P.A.
                                     2 South Biscayne Boulevard
                                     Suite 2600
                                     Miami, FL 33131-1802
                                     305-358-2000

Pending Counts:                              Disposition

18:1956-7477.F MONETARY              $150 special assessment, 60
LAUNDERING                           months BOP as to Counts 1 and
(71s)                                83, and 108 months as to Count
                                     71 to run currently, 3 years
                                     supervised release to run
                                     concurrently
                                     (71s)

18:152.F BANKRUPTCY -                $150 special assessment, 60
Falsifying documents relating       months BOP as to Counts 1 and
to        financial affairs         83, and 108 months as to Count
(83s)                                71 to run currently, 3 years
                                     supervised release to run
                                     concurrently
                                     (83s)

Offense Level (opening): 4

> Certified to be a true and
> correct copy of the original.
> Carlos Juenke, Clerk
> U.S. District Court
> Southern District of Florida
> By _____
>                    Deputy Clerk
> Date _____

:et as of October 6, 1997 2:34 pm                       Page 1

Proceedings include all events.                                          APPE/
1:95cr367-ALL USA v. Hammer, et al                              CLOSED

Terminated Counts:                        Disposition

18:371.F CONSPIRACY TO DEFRAUD     $150 special assessment, 60
THE UNITED STATES                  months BOP as to Counts 1 and
(1s)                               83, and 108 months as to Count
                                   71 to run currently, 3 years
                                   supervised release to run
                                   concurrently
                                   (1s)

18:371.F Conspiracy to commit      DISMISSED
Bank Fraud, Securities Fraud,      (1)
Money Laundering and
Bankruptcy False Statements
(1)

18:1344A.F BANK FRAUD              DISMISSED
(2s - 33s)                         (2s - 33s)

18:1344A.F Scheme and Artifice     DISMISSED
to Commit Bank Fraud               (2 - 33)
(2 - 33)

15:78J.F SECURITIES & EXCHANGE     DISMISSED
- Willfully used                   (34s - 48s)
manipulative and deceptive
devices in connection with the
purchase and sale of
securities
(34s - 48s)

15:78J.F Securities Fraud          DISMISSED
(34 - 48)                          (34 - 48)

15:78M.F SECURITIES & EXCHANGE     DISMISSED
- False statements                 (49s - 54s)
(49s - 54s)

15:78M.F False statements to       DISMISSED
Securities and Exchange            (49 - 54)
Commission
(49 - 54)

18:1956-7477.F MONETARY            DISMISSED
LAUNDERING                         (55s - 69s)
(55s - 69s)

18:1956-7477.F Money               DISMISSED
Laundering                         (55 - 69)
(55 - 69)

18:1956-7477.F MONETARY            DISMISSED
LAUNDERING                         (70s)

   cket as of October 6, 1997 2:34 pm              Page 2

Proceedings include all events.                                                    APPE.
1:95cr367-ALL USA v. Hammer, et al                                        CLOSED

,70s)

| 18:1956-7477.F Money<br>Laundering<br>(70 - 82) | DISMISSED<br>(70 - 82) |
| 18:1956-7477.F MONETARY<br>LAUNDERING<br>(72s - 82s) | DISMISSED<br>(72s - 82s) |
| 18:152.F False Bankruptcy<br>statements<br>(83 - 84) | DISMISSED<br>(83 - 84) |
| 18:152.F BANKRUPTCY -<br>Falsifying documents relating<br>to       financial affairs<br>(84s) | DISMISSED<br>(84s) |

Offense Level (disposition): 4


Complaints:

    NONE

========================

Proceedings include all events.                                                    APPEA
1:95cr367-ALL USA v. Hammer, et al                                    CLOSED

   se Assigned to:  Judge Wilkie D. Ferguson, Jr.

MICHAEL MANDELBLATT (2) , DOB:      Michael S. Pasano
3/16/46 PRISONER #48830-004          [term  12/04/96]
ADDRESS: 6876 Viento Way, Boca      [COR LD NTC ret]
Raton, FL 33433 (407) 487-5588      Zuckerman Spaeder Taylor &
     defendant                      Evans PA
   [term  12/04/96]                 201 South Biscayne Boulevard
                                    Suite 900
                                    Miami, FL 33131
                                    305-358-5000


Pending Counts:

   NONE


Terminated Counts:                          Disposition

18:371.F CONSPIRACY TO DEFRAUD      Dismissed
THE UNITED STATES                   (1s)
(1s)

18:371.F Conspiracy to commit       Dismissed
Bank Fraud, Securities Fraud,       (1)
Money Laundering and
Bankruptcy False Statements
 1)

18:1344A.F BANK FRAUD               Dismissed
(2s - 33s)                          (2s - 33s)

18:1344A.F Scheme and Artifice      Dismissed
to Commit Bank Fraud                (2 - 33)
(2 - 33)

15:78J.F SECURITIES & EXCHANGE      Dismissed
- Willfully used                    (34s - 48s)
manipulative and deceptive
devices in connection with the
purchase and sale of
securities
(34s - 48s)

15:78J.F Securities Fraud           Dismissed
(34 - 48)                           (34 - 48)

15:78M.F SECURITIES & EXCHANGE      Dismissed
- False statements                  (49s - 54s)
(49s - 54s)

15:78M.F False statements to        Dismissed
Securities and Exchange             (49 - 54)

   ocket as of October 6, 1997 2:34 pm               Page 4

Proceedings include all events.                                    APPEA
1:95cr367-ALL USA v. Hammer, et al                       CLOSED

ɔmmission
49 - 54)

18:1956-7477.F MONETARY          Dismissed
LAUNDERING                       (55s - 69s)
(55s - 69s)

18:1956-7477.F Money             Dismissed
Laundering                       (55 - 69)
(55 - 69)

18:1956-7477.F MONETARY          Dismissed
LAUNDERING                       (70s - 82s)
(70s - 82s)

18:1956-7477.F Money             Dismissed
Laundering                       (70 - 82)
(70 - 82)

18:982.P MISC. GENERAL           Dismissed
OFFENSES, OTHER - Forfeiture     (85s)
(85s)

18:982(a)(1) and (a)(2)          Dismissed
Forfeiture                       (85)
(85)

ɹffense Level (disposition): 4


Complaints:

    NONE

=======================

Proceedings include all events.                                              APPEA
1:95cr367-ALL USA v. Hammer, et al                              CLOSED

ase Assigned to: Judge Wilkie D. Ferguson, Jr.

CARL SOLOMON (3) , DOB:              Barry Michael Wax
9/29/54  PRISONER #48842-004          [term  02/28/97]
ADDRESS: 3111 Weldborn, Apt.        305-326-0330
1204, Dallas, TX 75219              [COR LD NTC ret]
    defendant                       Soven & Wax
[term  02/28/97]                    1571 NW 13th Court
                                    Miami, FL 33125-1605
                                    305-326-0330

                                    James Dale McMaster
                                     [term  02/28/97]
                                    [COR LD NTC ret]
                                    James D. McMaster, P.A.
                                    1217 North Flagler Drive
                                    West Palm Beach, FL 33401
                                    407-832-9600


Pending Counts:                          Disposition

15:78J.F SECURITIES & EXCHANGE      $50 special assessment, 21
- Willfully used                    months BOP, 3 years supervised
manipulative and deceptive          release
devices in connection with the      (34s)
purchase and sale of
·ecurities
,34s)


Offense Level (opening): 4


Terminated Counts:                       Disposition

18:371.F CONSPIRACY TO DEFRAUD      DISMISSED
THE UNITED STATES                   (1s)
(1s)

18:371.F Conspiracy to commit       DISMISSED
Bank Fraud, Securities Fraud,       (1)
Money Laundering and
Bankruptcy False Statements
(1)

18:1344A.F BANK FRAUD               DISMISSED
(2s - 33s)                          (2s - 33s)

18:1344A.F Scheme and Artifice      DISMISSED
to Commit Bank Fraud                (2 - 33)
(2 - 33)

15:78J.F Securities Fraud           DISMISSED

Proceedings include all events.                                    APPEA
1:95cr367-ALL USA v. Hammer, et al              CLOSED

 34 - 48)                          (34 - 48)

15:78J.F SECURITIES & EXCHANGE     DISMISSED
- Willfully used                   (35s - 48s)
manipulative and deceptive
devices in connection with the
purchase and sale of
securities
(35s - 48s)

15:78M.F SECURITIES & EXCHANGE     DISMISSED
- False statements                 (49s - 54s)
(49s - 54s)

15:78M.F False statements to       DISMISSED
Securities and Exchange            (49 - 54)
Commission
(49 - 54)

Offense Level (disposition): 4


Complaints:

    NONE

=======================

Proceedings include all events.                                                     APPEA
1:95cr367-ALL USA v. Hammer, et al                                  CLOSED

ase Assigned to:  Judge Wilkie D. Ferguson, Jr.

JOSEPH LETZELTER (4) , DOB:          Donald Fredrick Spain
2/24/56  PRISONER #48839-004          [term  12/31/96]
ADDRESS: 327 Palm Boulevard,          [COR LD NTC ret]
Fort Lauderdale, FL 33326             Donal F. Spain, P.A.
(305)384-0534                         2915 Southwest 27th Avenue
     defendant                        Coconut Grove, FL 33133-3703
[term  12/31/96]                      305-444-5655

                                      Richard H. Bergman
                                       [term  12/31/96]
                                      [COR LD NTC ret]
                                      Bergman & Jacobs, P.A.
                                      777 Brickell Avenue
                                      Suite 1100
                                      Miami, FL 33131
                                      305-577-9733

Pending Counts:                       Disposition

18:371.F CONSPIRACY TO COMMIT        48 months Probation to run
BANK AND SECURITIES FRAUD             concurrent, $100.00 special
(1ss)                                 assessment, and $100,000.00
                                      restitution
                                      (1ss)

18:1957-6800.F MONEY                 48 months Probation to run
LAUNDERING                            concurrent, $100.00 special
(2ss)                                 assessment, and $100,000.00
                                      restitution
                                      (2ss)

Offense Level (opening): 4

Terminated Counts:                    Disposition

18:371.F CONSPIRACY TO DEFRAUD       Dismissed
THE UNITED STATES                     (1s)
(1s)

18:371.F Conspiracy to commit        Dismissed
Bank Fraud, Securities Fraud,         (1)
Money Laundering and
Bankruptcy False Statements
(1)

18:1344A.F BANK FRAUD                Dismissed
(2s - 33s)                            (2s - 33s)

18:1344A.F Scheme and Artifice       Dismissed

   cket as of October 6, 1997 2:34 pm                Page 8

Proceedings include all events.                                                    APPE.
1:95cr367-ALL USA v. Hammer, et al                                      CLOSED

to Commit Bank Fraud                    (2 - 33)
(2 - 33)

15:78J.F SECURITIES & EXCHANGE          Dismissed
- Willfully used                        (34s - 48s)
manipulative and deceptive
devices in connection with the
purchase and sale of
securities
(34s - 48s)

15:78J.F Securities Fraud               Dismissed
(34 - 48)                               (34 - 48)

15:78M.F SECURITIES & EXCHANGE          Dismissed
- False statements                      (49s - 54s)
(49s - 54s)

15:78M.F False statements to            Dismissed
Securities and Exchange                 (49 - 54)
Commission
(49 - 54)

18:1956-7477.F MONETARY                 Dismissed
LAUNDERING                              (55s - 69s)
(55s - 69s)

.8:1956-7477.F Money                    Dismissed
Laundering                              (55 - 69)
(55 - 69)

18:1956-7477.F MONETARY                 Dismissed
LAUNDERING                              (70s - 82s)
(70s - 82s)

18:1956-7477.F Money                    Dismissed
Laundering                              (70 - 82)
(70 - 82)

Offense Level (disposition): 4

Complaints:

    NONE

=======================

    :ket as of October 6, 1997 2:34 pm                    Page 9

Proceedings include all events.                                          APPEA
1:95cr367-ALL USA v. Hammer, et al                          CLOSED

 ase Assigned to:  Judge Wilkie D. Ferguson, Jr.

STEVEN MERRILL (5) , DOB:          David Kalman Tucker
6/17/42  PRISONER #48829-004        [term  01/31/97]
ADDRESS: 3640 Yacht Club Drive,    [COR LD NTC ret]
North Miami Beach, FL 33180        Tucker and Kotler
(305)931-6521                      2600 Douglas Road
     defendant                     Suite 1108 Douglas Centre
  [term  01/31/97]                 Coral Gables, FL 33134-6105
                                   305-461-3627


Pending Counts:                         Disposition

18:1957-9992.F ENGAGING IN         Probation 3 years
MONETARY TRANSACTIONS              (1ss)
affecting    intrerstate
commerce
(1ss)


Offense Level (opening): 4


Terminated Counts:                      Disposition

18:371.F CONSPIRACY TO DEFRAUD     Dismissed
 HE UNITED STATES                  (1s)
 1s)

18:371.F Conspiracy to commit      Dismissed
Bank Fraud, Securities Fraud,      (1)
Money Laundering and
Bankruptcy False Statements
(1)

18:1344A.F BANK FRAUD              Dismissed
(2s - 33s)                         (2s - 33s)

18:1344A.F Scheme and Artifice     Dismissed
to Commit Bank Fraud               (2 - 33)
(2 - 33)

15:78J.F SECURITIES & EXCHANGE     Dismissed
- Willfully used                   (34s - 48s)
manipulative and deceptive
devices in connection with the
purchase and sale of
securities
(34s - 48s)

15:78J.F Securities Fraud          Dismissed
(34 - 48)                          (34 - 48)

Proceedings include all events.
1:95cr367-ALL USA v. Hammer, et al                                         CLOSED        APP

15:78M.F SECURITIES & EXCHANGE        Dismissed
- False statements                    (49s - 54s)
(49s - 54s)

15:78M.F False statements to          Dismissed
Securities and Exchange               (49 - 54)
Commission
(49 - 54)

18:1956-7477.F MONETARY               Dismissed
LAUNDERING                            (55s - 69s)
(55s - 69s)

18:1956-7477.F Money                  Dismissed
Laundering                            (55 - 69)
(55 - 69)

Offense Level (disposition): 4


Complaints:

   NONE

=======================

Proceedings include all events.                                    APPEA
1:95cr367-ALL USA v. Hammer, et al                        CLOSED

_ase Assigned to:  Judge Wilkie D. Ferguson, Jr.

HEIDI FRAZIER (6) , DOB:          Jon Allen May
5/7/60  PRISONER #48832-004        [term  03/26/97]
ADDRESS: 240 N.W. 190th Avenue,   Below Address Terminated on 9/30/96
Pembroke Pines, FL 33029          [COR LD NTC ret]
(305)430-9706                     May & Cohen
     defendant                    3225 Aviation Avenue
  [term  03/26/97]                Suite 600
                                  Coconut Grove, FL 33133
                                  305-285-0043


Pending Counts:

  NONE


Terminated Counts:                    Disposition

18:371.F CONSPIRACY TO DEFRAUD    Order of dismissal filed on the
THE UNITED STATES                 govt's filing of suggestion  of
(1s)                              death, supported by a
                                  Certificate of Death (DE #190)
                                  (1s)

18:371.F Conspiracy to commit     Order of dismissal filed on the
 ank Fraud, Securities Fraud,     govt's filing of suggestion  of
.loney Laundering and             death, supported by a
Bankruptcy False Statements       Certificate of Death (DE #190)
(1)                               (1)

18:1344A.F BANK FRAUD             Order of dismissal filed on the
(2s - 33s)                        govt's filing of suggestion  of
                                  death, supported by a
                                  Certificate of Death (DE #190)
                                  (2s - 33s)

18:1344A.F Scheme and Artifice    Order of dismissal filed on the
to Commit Bank Fraud              govt's filing of suggestion  of
(2 - 33)                          death, supported by a
                                  Certificate of Death (DE #190)
                                  (2 - 33)

15:78J.F SECURITIES & EXCHANGE    Order of dismissal filed on the
- Willfully used                  govt's filing of suggestion  of
manipulative and deceptive        death, supported by a
devices in connection with the    Certificate of Death (DE #190)
purchase and sale of              (34s - 48s)
securities
(34s - 48s)

15:78J.F Securities Fraud         Order of dismissal filed on the
(34 - 48)                         govt's filing of suggestion  of

   :ket as of October 6, 1997 2:34 pm              Page 12

Proceedings include all events.                                                    APPE.
1:95cr367-ALL USA v. Hammer, et al                                    CLOSED

                                          death, supported by a
                                          Certificate of Death (DE #190)
                                          (34 - 48)

15:78M.F SECURITIES & EXCHANGE            Order of dismissal filed on the
- False statements                        govt's filing of suggestion  of
(49s - 54s)                               death, supported by a
                                          Certificate of Death (DE #190)
                                          (49s - 54s)

15:78M.F False statements to              Order of dismissal filed on the
Securities and Exchange                   govt's filing of suggestion  of
Commission                                death, supported by a
(49 - 54)                                 Certificate of Death (DE #190)
                                          (49 - 54)

18:1956-7477.F MONETARY                   Order of dismissal filed on the
LAUNDERING                                govt's filing of suggestion  of
(55s - 69s)                               death, supported by a
                                          Certificate of Death (DE #190)
                                          (55s - 69s)

18:1956-7477.F Money                      Order of dismissal filed on the
Laundering                                govt's filing of suggestion  of
(55 - 69)                                 death, supported by a
                                          Certificate of Death (DE #190)
                                          (55 - 69)

18:1956-7477.F MONETARY                   Order of dismissal filed on the
LAUNDERING                                govt's filing of suggestion  of
(70s - 82s)                               death, supported by a
                                          Certificate of Death (DE #190)
                                          (70s - 82s)

18:1956-7477.F Money                      Order of dismissal filed on the
Laundering                                govt's filing of suggestion  of
(70 - 82)                                 death, supported by a
                                          Certificate of Death (DE #190)
                                          (70 - 82)

Offense Level (disposition): 4

Complaints:

    NONE

=======================

Proceedings include all events.                                          APPEA
'':95cr367-ALL USA v. Hammer, et al                          CLOSED

_ase Assigned to:  Judge Wilkie D. Ferguson, Jr.

ANGEL CASTRO (7) , DOB:              Andrew David Washor
4/24/39  PRISONER #48831-004         [term  01/13/97]
ADDRESS: 10161 N.W. 24th Court,      [COR LD NTC ret]
Sunrise, FL 33322 (305)749-          Washor & Raticoff
3951                                 7 Southeast 13th Street
     defendant                       Ft. Lauderdale, FL 33316
  [term  01/13/97]                   305-523-4330


Pending Counts:                          Disposition

18:371.F CONSPIRACY TO DEFRAUD       3 years probation, $20,000
THE UNITED STATES - Bank             restitution, and $50.00 special
Fraud & Securities Fraud             assessment
(1ss)                                (1ss)


Offense Level (opening): 4


Terminated Counts:                        Disposition

18:371.F CONSPIRACY TO DEFRAUD       Dismissed
THE UNITED STATES                    (1s)
(1s)

18:371.F Conspiracy to commit        Dismissed
Bank Fraud, Securities Fraud,        (1)
Money Laundering and
Bankruptcy False Statements
(1)

18:1344A.F BANK FRAUD                Dismissed
(2s - 33s)                           (2s - 33s)

18:1344A.F Scheme and Artifice       Dismissed
to Commit Bank Fraud                 (2 - 33)
(2 - 33)

15:78J.F SECURITIES & EXCHANGE       Dismissed
- Willfully used                     (34s - 48s)
manipulative and deceptive
devices in connection with the
purchase and sale of
securities
(34s - 48s)

15:78J.F Securities Fraud            Dismissed
(34 - 48)                            (34 - 48)

15:78M.F SECURITIES & EXCHANGE       Dismissed
- False statements                   (49s - 54s)

Proceedings include all events.                                          APPE:
- 1:95cr367-ALL USA v. Hammer, et al                            CLOSED

(49s - 54s)

15:78M.F False statements to        Dismissed
Securities and Exchange             (49 - 54)
Commission
(49 - 54)

Offense Level (disposition): 4


Complaints:

   NONE

======================

Case Assigned to: Judge Wilkie D. Ferguson, Jr.

ESTHER RAMOS (8) , 1836 SW 181      Edward Robert Shohat
Way, Miramar, FL 33129; (305)          [term   12/31/96]
434-4992                               [COR LD NTC ret]
    defendant                       Bierman, Shohat, Loewy & Perry
   [term   12/31/96]                800 Brickell Avenue
                                    Penthouse 2
                                    Miami, FL 33131-2944
                                    305-358-7000


Pending Counts:                             Disposition

18:152.F BANKRUPTCY -               Probation 2 years as to count
Falsifying documents relating       83 of superseding indictment
to       financial affairs          (83s)
(83s)

Offense Level (opening): 4

Terminated Counts:                          Disposition

18:371.F CONSPIRACY TO DEFRAUD      Dismissed
THE UNITED STATES                   (1s)
(1s)

18:371.F Conspiracy to commit       Dismissed
Bank Fraud, Securities Fraud,       (1)
Money Laundering and
Bankruptcy False Statements
(1)

   cket as of October 6, 1997 2:34 pm              Page 15

Proceedings include all events.                                            APPEA
1:95cr367-ALL USA v. Hammer, et al                          CLOSED

18:152.F False Bankruptcy          Dismissed
statements                         (83 - 84)
(83 - 84)

18:152.F BANKRUPTCY -              Dismissed
Falsifying documents relating     (84s)
to       financial affairs
(84s)

Offense Level (disposition): 4

Complaints:

   NONE

=======================

Case Assigned to:  Judge Wilkie D. Ferguson, Jr.

JOSEPH FRIEDMAN (9) , ADDRESS:     Isaac Jaime Mitrani
166 Clymer Street, Brooklyn,         [term  01/13/97]
Y 11211 (718)338-8888              [COR LD NTC ret]
     defendant                     Mitrani Rynor & Adamsky PA
   [term  01/13/97]                1 Southeast 3rd Avenue
                                   Suite 2200
                                   Miami, FL 33131
                                   305-358-0050

Pending Counts:                            Disposition

18:371.F CONSPIRACY TO DEFRAUD     3 years probation, $5,000 fine,
THE UNITED STATES - Band           $25,000 restitution, and
Fraud                              $50.00 special assessment
(1ss)                              (1ss)

Offense Level (opening): 4

Terminated Counts:                         Disposition

18:371.F CONSPIRACY TO DEFRAUD     Dismissed
THE UNITED STATES                  (1s)
(1s)

18:371.F Conspiracy to commit      Dismissed
Bank Fraud, Securities Fraud,      (1)

   -ket as of October 6, 1997 2:34 pm              Page 16

Proceedings include all events.                                    APPEA
.:95cr367-ALL USA v. Hammer, et al                         CLOSED

Money Laundering and
Bankruptcy False Statements
(1)

18:1956-7477.F MONETARY          Dismissed
LAUNDERING                       (55s - 69s)
(55s - 69s)

18:1956-7477.F Money             Dismissed
Laundering                       (55 - 69)
(55 - 69)

Offense Level (disposition): 4

Complaints:

   NONE

========================

Proceedings include all events.                                          APP:
1:95cr367-ALL USA v. Hammer, et al                              CLOSED

Case Assigned to: Judge Wilkie D. Ferguson, Jr.

PASQUALE LUCA (10) , DOB:           Public Defender
7/17/51  PRISONER #48827-004         [term  06/13/95]
     defendant                       305-530-7000
  [term  01/31/97]                   [COR LD NTC pda]
                                     Shereen J. Charlick, AFPD
                                      [term  10/11/95]
                                     ext. 161
                                     [COR LD NTC pda]
                                     Federal Public Defender's
                                     Office
                                     150 W Flagler Street
                                     17th Floor
                                     Miami, FL 33130-1556
                                     305-530-7000

                                     Hugo A. Rodriguez
                                      [term  01/31/97]
                                     Below Address Terminated on 2/8/96
                                     305-536-6900X120
                                     [COR LD NTC pda]
                                     Federal Public Defender's
                                     Office
                                     301 North Miami Avenue
                                     Suite 321
                                     Miami, FL 33128
                                     305-536-6900

Pending Counts:                      Disposition

18:152.F BANKRUPTCY -                Probation 2 years
Falsifying documents relating        (83s)
to       financial affairs
(83s)


Offense Level (opening): 4


Terminated Counts:                   Disposition

18:371.F CONSPIRACY TO DEFRAUD       Dismissed
THE UNITED STATES                    (1s)
(1s)

18:371.F Conspiracy to commit        Dismissed
Bank Fraud, Securities Fraud,        (1)
Money Laundering and
Bankruptcy False Statements
(1)

18:1956-7477.F MONETARY              Dismissed

Proceedings include all events.                                          APPE.
⌐:95cr367-ALL USA v. Hammer, et al                          CLOSED

LAUNDERING                        (70s - 82s)
(70s - 82s)

18:1956-7477.F Money              Dismissed
Laundering                        (70 - 82)
(70 - 82)

18:152.F False Bankruptcy         Dismissed
statements                        (83 - 84)
(83 - 84)

18:152.F BANKRUPTCY -             Dismissed
Falsifying documents relating     (84s)
to       financial affairs
(84s)

Offense Level (disposition): 4


Complaints:

    NONE

Proceedings include all events.                                          APPE:
1:95cr367-ALL USA v. Hammer, et al                              CLOSED

Mitchell A. Hammer, DOB: 6/19/52 PRISONER #48828-004
ADDRESS: 3576 Coral Springs Drive, Coral Springs, FL 33065
(954)255-1771

            defendant

========================

Michael Mandelblatt, DOB: 3/16/46 PRISONER #48830-004
ADDRESS: 6876 Viento Way, Boca Raton, FL 33433 (407)
487-5588

            defendant

========================

Carl Solomon, DOB: 9/29/54 PRISONER #48842-004 ADDRESS: 3111
Weldborn, Apt. 1204, Dallas, TX 75219

            defendant

========================

Joseph Letzelter, DOB: 2/24/56 PRISONER #48839-004 ADDRESS:
;27 Palm Boulevard, Fort Lauderdale, FL 33326 (305)384-0534

            defendant

========================

Steven Merrill, DOB: 6/17/42 PRISONER #48829-004 ADDRESS:
3640 Yacht Club Drive, North Miami Beach, FL 33180
(305)931-6521

            defendant

========================

Heidi Frazier, DOB: 5/7/60 PRISONER #48832-004 ADDRESS: 240
N.W. 190th Avenue, Pembroke Pines, FL 33029 (305)430-9706

            defendant

========================

Angel Castro, DOB: 4/24/39 PRISONER #48831-004 ADDRESS:
10161 N.W. 24th Court, Sunrise, FL 33322 (305)749-3951

( roceedings include all events.                                    APPEA
_:95cr367-ALL USA v. Hammer, et al                          CLOSED

            defendant

========================

Esther Ramos, 1836 SW 181 Way, Miramar, FL 33129; (305)
434-4992

            defendant

========================

Joseph Friedman, ADDRESS: 166 Clymer Street, Brooklyn, NY
11211 (718)338-8888

            defendant

========================

Pasquale Luca, DOB: 7/17/51 PRISONER #48827-004

            defendant

========================

United States of America

            plaintiff

U. S. Attorneys:

   Steven R. Petri
   [COR LD NTC]
   United States Attorney's Office
   99 NE 4th Street
   Miami, FL 33132
   305-536-5266

Proceedings include all events.                                        APPEA
:95cr367-ALL USA v. Hammer, et al                              CLOSED

5/25/95   --    Magistrate identification:  Magistrate Judge Stephen T.
                Brown (sg) [Entry date 05/26/95]

5/25/95   1     MOTION by USA as to Mitchell A. Hammer, Michael
                Mandelblatt, Carl Solomon, Joseph Letzelter, Steven Heidi
                Frazier, Angel Castro, Esther Ramos, Joseph Friedman,
                Pasquale Luca to seal the indictment (sg)
                [Entry date 05/26/95]

5/25/95   2     ORDER as to Mitchell A. Hammer, Michael Mandelblatt, Carl
                Solomon, Joseph Letzelter, Steven Merrill, Heidi Frazier,
                Angel Castro, Esther Ramos, Joseph Friedman, Pasquale Luca
                granting [1-1] motion to seal the indictment as to Mitchell
                A. Hammer (1), Michael Mandelblatt (2), Carl Solomon (3),
                Joseph Letzelter (4), Steven Merrill (5), Heidi Frazier
                Angel Castro (7), Esther Ramos (8), Joseph Friedman (9),
                Pasquale Luca (10) (Signed by Ch. Magistrate Judge William
                C. Turnoff on 5/25/95) CCAP⚮ (sg) [Entry date 05/26/95]

5/25/95   ③     SEALED INDICTMENT as to  Mitchell A. Hammer (1) count(s) 1,
                2-33, 34-48, 49-54, 55-69, 70-82, 83-84, Michael
                Mandelblatt (2) count(s) 1, 2-33, 34-48, 49-54, 55-69,
                70-82, 85, Carl Solomon (3) count(s) 1, 2-33, 34-48, 49-54,
                Joseph Letzelter (4) count(s) 1, 2-33, 34-48, 49-54, 55-69,
                70-82, Steven Merrill (5) count(s) 1, 2-33, 34-48, 49-54,
                55-69, Heidi Frazier (6) count(s) 1, 2-33, 34-48, 49-54,
                55-69, 70-82, Angel Castro (7) count(s) 1, 2-33, 34-48,
                49-54, Esther Ramos (8) count(s) 1, 83-84, Joseph Friedman
                (9) count(s) 1, 55-69, Pasquale Luca (10) count(s) 1,
                70-82, 83-84 (Criminal Category 4) (sg)
                [Entry date 05/26/95]

5/25/95   4     ARREST WARRANT issued as to Pasquale Luca. Warrant issued
                by Ch. Magistrate Judge William C. Turnoff Bail fixed at
                $100,000 (dr) [Entry date 05/30/95]

5/25/95   5     ARREST WARRANT issued as to Joseph Friedman. Warrant issued
                by Ch. Magistrate Judge William C. Turnoff Bail fixed at
                $100,000 (dr) [Entry date 05/30/95]

5/25/95   6     ARREST WARRANT issued as to Esther Ramos. Warrant issued by
                Ch. Magistrate Judge William C. Turnoff Bail fixed at
                $100,000 (dr) [Entry date 05/30/95]

5/25/95   7     ARREST WARRANT issued as to Angel Castro. Warrant issued by
                Ch. Magistrate Judge William C. Turnoff Bail fixed at
                $100,000 Personal Surety (dr) [Entry date 05/30/95]

5/25/95   8     ARREST WARRANT issued as to Heidi Frazier. Warrant issued
                by Ch. Magistrate Judge William C. Turnoff Bail fixed at
                $100,000 Personal Surety (dr) [Entry date 05/30/95]

| 5/25/95 | 9 | ARREST WARRANT issued as to Steven Merrill. Warrant issued by Ch. Magistrate Judge William C. Turnoff Bail fixed at $100,000 Corporate Surety (dr) [Entry date 05/30/95] |
| --- | --- | --- |
| 5/25/95 | 10 | ARREST WARRANT issued as to Joseph Letzelter. Warrant issued by Ch. Magistrate Judge William C. Turnoff Bail fixed at $100,000 Personal Surety (dr) [Entry date 05/30/95] |
| 5/25/95 | 11 | ARREST WARRANT issued as to Carl Solomon. Warrant issued by Ch. Magistrate Judge William C. Turnoff Bail fixed at $75,000 Corporate Surety (dr) [Entry date 05/30/95] |
| 5/25/95 | 12 | ARREST WARRANT issued as to Michael Mandelblatt. Warrant issued by Ch. Magistrate Judge William C. Turnoff Bail fixed at $75,000 Corporate Surety (dr) [Entry date 05/30/95] |
| 5/25/95 | (13) | ARREST WARRANT issued as to Mitchell A. Hammer. Warrant issued by Ch. Magistrate Judge William C. Turnoff Bail fixed at $75,000 Corporate Surety (dr) [Entry date 05/30/95] |
| 5/26/95 | 14 | EX PARTE MOTION by USA as to Michael Mandelblatt for restraining order (dt) [Entry date 06/01/95] |
| 5/30/95 | 15 | ORDER as to Michael Mandelblatt granting [14-1] motion for restraining order as to Michael Mandelblatt (2) ( Signed by Judge Wilkie D. Ferguson Jr. on 5/30/95) CCAP (dt) [Entry date 06/01/95] |
| 6/1/95 | (17) | REPORT Commencing Criminal Action as to Mitchell A. Hammer DOB: 6/19/52  Prisoner # 48828-004 (dr) [Entry date 06/07/95] |
| 6/1/95 | 18 | REPORT Commencing Criminal Action as to Pasquale Luca  DOB: 7/17/51  Prisoner # 48827-004 (dr) [Entry date 06/07/95] |
| 6/1/95 | 19 | REPORT Commencing Criminal Action as to Steven Merrill DOB: 6/17/42  Prisoner # 48829-004 (dr) [Entry date 06/07/95] |
| 6/1/95 | (20) | ORDER on Initial Appearance as to Mitchell A. Hammer. Bond set to $500,000 Personal Surety Co-signed by Wife. Special Conditions: a) Surrender all passports and travel documents, b) Report to PTS 1 time a week by phone and 1 time a week in person, c) May travel within the continental U.S.  (Signed by Magistrate Peter R. Palermo on 6/1/95) Tape # 95FX-71-463 CCAP (dr) [Entry date 06/07/95] |
| 6/1/95 | 21 | ORDER on Initial Appearance as to Pasquale Luca Bond set to $500,000 Personal Surety Bond Co-Signed by Friend. for Appointment of Public Defender.  Special Condition: Surrender all passports and travel documents to PTS. (Signed by Magistrate Peter R. Palermo on 6/1/95) Tape # 95FX-71-463 CCAP (dr) [Entry date 06/08/95] |

6/1/95   22    ORDER on Initial Appearance as to Steven Merrill Bond set
               to $500,000 Personal Surety Bond Co-Signed by Wife. Report
               re counsel set for 10:00 6/6/95; Arraignment set for 10:00
               6/12/95 before Duty Magistrate. Special Conditions: a)
               Surrender all passports and travel documents, and b) Report
               to PTS 1 time a week by phone and 1 time a week in person
               (Signed by Magistrate Peter R. Palermo on 6/1/95) Tape #
               95FX-41-463 CCAP (dr) [Entry date 06/08/95]

6/1/95   23    ORDER as to Esther Ramos, to Unsealing case with the
               arrest of the defendant (Signed by Magistrate Peter R.
               Palermo on 6/1/95) CCAP✖ (dr) [Entry date 06/08/95]

6/1/95   - -   Indictment unsealed as to Mitchell A. Hammer, Michael
               Mandelblatt, Carl Solomon, Joseph Letzelter, Steven
               Merrill, Heidi Frazier, Angel Castro, Esther Ramos, Joseph
               Friedman, Pasquale Luca (dr) [Entry date 06/08/95]

6/1/95   24    NOTICE of Permanent Appearance for Mitchell A. Hammer by
               Attorney Neal Russell Sonnett (dr) [Entry date 06/08/95]

6/1/95   25    ARRAIGNMENT INFORMATION SHEET for Mitchell A. Hammer (1)
               count(s) 1, 2-33, 34-48, 49-54, 55-69, 70-82, 83-84 (dr)
               [Entry date 06/08/95]

6/1/95   - -   PLEA entered by Mitchell A. Hammer . Court accepts plea.
               NOT GUILTY: Mitchell A. Hammer (1) count(s) 1, 2-33,
               34-48, 49-54, 55-69, 70-82, 83-84 (dr) [Entry date 06/08/95]

6/1/95   26    ARRAIGNMENT INFORMATION SHEET for Pasquale Luca (10)
               count(s) 1, 70-82, 83-84 (dr) [Entry date 06/08/95]

6/1/95   - -   PLEA entered by Pasquale Luca . Court accepts plea. NOT
               GUILTY: Pasquale Luca (10) count(s) 1, 70-82, 83-84 (dr)
               [Entry date 06/08/95]

6/1/95   27    NOTICE of Temporary Appearance of David K. Tucker as
               counsel for Steven Merrill (dr) [Entry date 06/08/95]

6/1/95   28    ORDER as to Mitchell A. Hammer granting Defendant's motion
               for bail. Defendant to be released on a Personal Surety
               Bond in the amount of $500,000.00. (Signed by Magistrate
               Peter R. Palermo on 6/1/95) CCAP✖ (dr) [Entry date 06/08/95]

6/1/95   29    APPEARANCE BOND entered by Steven Merrill in Amount
               $500,000 Personal Surety Approved by Magistrate Peter R.
               Palermo (dr) [Entry date 06/08/95]

6/1/95   30    APPEARANCE BOND entered by Mitchell A. Hammer in Amount
               $500,000 Personal Surety Approved by Magistrate Peter R.
               Palermo (dr) [Entry date 06/08/95]

6/1/95  (31)   STANDING DISCOVERY ORDER as to Mitchell A. Hammer, Pasquale
               Luca Motion filing deadline set for 6/29/95 (Signed by
               Magistrate Peter R. Palermo on 6/1/95) CCAP (dr)
               [Entry date 06/08/95]

6/1/95  - -    Surrender of Esther Ramos (cp) [Entry date 06/12/95]

6/1/95  56     NOTICE of Appearance for Esther Ramos by Attorney Edward
               Robert Shohat (cp) [Entry date 06/12/95]

6/1/95  57     ORDER on Initial Appearance as to Esther Ramos Bond set to
               $100K PSB for Esther Ramos. Defendant to surrender all
               passports and travel documents; report to PTS once a week
               by phone. , ( Signed by Magistrate Peter R. Palermo
               on 6/1/95)  Tape # 95FX-70-1483 CCAP (cp)
               [Entry date 06/12/95]

6/1/95  58     BOND entered by Esther Ramos in Amount $ 100K Approved by
               Magistrate Peter R. Palermo (cp) [Entry date 06/12/95]

6/1/95  59     ARRAIGNMENT INFORMATION SHEET for Esther Ramos (8) count(s)
               1, 83-84 (cp) [Entry date 06/12/95]

6/1/95  - -    PLEA entered by Esther Ramos . Court accepts plea. NOT
               GUILTY: Esther Ramos (8) count(s) 1, 83-84 (cp)
               [Entry date 06/12/95]

/1/95   60     STANDING DISCOVERY ORDER as to Esther Ramos Motion filing
               deadline set for 6/29/95 for Esther Ramos ( Signed by
               Magistrate Peter R. Palermo on 6/1/95)  Tape # 95FX-70-1483
               CCAP (cp) [Entry date 06/12/95]

6/2/95  (16)   NOTICE of filing papers related to bond by Mitchell A.
               Hammer (dr) [Entry date 06/06/95]

6/2/95  32     REPORT Commencing Criminal Action as to Michael Mandelblatt
               DOB: 3/16/46  Prisoner # 48830-004 (dr)
               [Entry date 06/08/95]

6/2/95  33     ORDER on Initial Appearance as to Michael Mandelblatt Bond
               set to $500,000 Personal Surety Bond Co-Signed by Wife.
               Special Conditions: a) Surrender all passports and travel
               documents to PTS, b) Report to PTS 1 time a week by phone
               and 1 time a week in person, c) May travel within the U.S.
               but must notify AUSA & PTS before. (Signed by
               Magistrate Peter R. Palermo on 6/2/95) Tape # 95FX-73-247
               CCAP (dr) [Entry date 06/08/95]

6/2/95  34     NOTICE of Permanent Appearance for Michael Mandelblatt by
               Attorney Michael S. Pasano (dr) [Entry date 06/08/95]

6/2/95  35     ARRAIGNMENT INFORMATION SHEET for Michael Mandelblatt (2)
               count(s) 1, 2-33, 34-48, 49-54, 55-69, 70-82, 85 (dr)
               [Entry date 06/08/95]

Proceedings include all events.                                      APPE/
.:95cr367-ALL USA v. Hammer, et al                         CLOSED
                                          Vol. 1 Cont.

| 6/2/95 | -- | PLEA entered by Michael Mandelblatt . Court accepts plea. NOT GUILTY: Michael Mandelblatt (2) count(s) 1, 2-33, 34-48, 49-54, 55-69, 70-82, 85 (dr) [Entry date 06/08/95] |
|---|---|---|
| 6/2/95 | 36 | STANDING DISCOVERY ORDER as to Michael Mandelblatt Motion filing deadline set for 6/30/95 (Signed by Magistrate Peter R. Palermo on 6/2/95) CCAP (dr) [Entry date 06/08/95] |
| 6/5/95 | 37 | NOTICE of Appearance for Michael Mandelblatt by Attorney Michael S. Pasano (dr) [Entry date 06/08/95] |
| 6/5/95 | 38 | REPORT Commencing Criminal Action as to Heidi Frazier DOB: 5/7/60 Prisoner # 48832-004 (dr) [Entry date 06/08/95] |
| 6/5/95 | 39 | REPORT Commencing Criminal Action as to Joseph Letzelter DOB: 2/24/56 Prisoner # 48839-004 (dr) [Entry date 06/08/95] |
| 6/5/95 | 40 | REPORT Commencing Criminal Action as to Angel Castro DOB: 4/24/39 Prisoner # 48831-004 (dr) [Entry date 06/08/95] |
| 6/5/95 | 41 | ORDER on Initial Appearance as to Heidi Frazier Bond set to $100,000 Personal Surety Bond Co-Signed. Special Conditions: a) Surrender all passports and travel documents to PTS, and b) Report to PTS 1 time a week by phone. (Signed by Magistrate Ted E. Bandstra  on 6/5/95) Tape # 95B-88-1218 CCAP (dr) [Entry date 06/08/95] |
| 6/5/95 | 42 | ORDER on Initial Appearance as to Angel Castro Bond set to $100,000 Personal Surety Bond Co-Signed. Special Conditions: a) Surrender all passports and travel documents to PTS, and b) Report to PTS 1 time a week by phone. (Signed by Magistrate Ted E. Bandstra  on 6/5/95) Tape # 95B-88-1218 CCAP (dr) [Entry date 06/08/95] |
| 6/5/95 | 43 | ARRAIGNMENT INFORMATION SHEET for Heidi Frazier (6) count(s) 1, 2-33, 34-48, 49-54, 55-69, 70-82 (dr) [Entry date 06/08/95] |
| 6/5/95 | -- | PLEA entered by Heidi Frazier . Court accepts plea. NOT GUILTY: Heidi Frazier (6) count(s) 1, 2-33, 34-48, 49-54, 55-69, 70-82 (dr) [Entry date 06/08/95] |
| 6/5/95 | 44 | ARRAIGNMENT INFORMATION SHEET for Angel Castro (7) count(s) 1, 2-33, 34-48, 49-54 (dr) [Entry date 06/08/95] |
| 6/5/95 | -- | PLEA entered by Angel Castro . Court accepts plea. NOT GUILTY: Angel Castro (7) count(s) 1, 2-33, 34-48, 49-54 (dr) [Entry date 06/08/95] |
| 6/5/95 | 45 | NOTICE of Permanent Appearance for Heidi Frazier by Attorney Jon Allen May (dr) [Entry date 06/09/95] |

| 6/5/95 | 46 | NOTICE of Permanent Appearance for Joseph Letzelter by Attorney Richard H. Bergman (dr) [Entry date 06/09/95] |
|--------|----|---|
| 6/5/95 | 47 | NOTICE of Permanent Appearance for Angel Castro by Attorney Andrew David Washor (dr) [Entry date 06/09/95] |
| 6/5/95 | 48 | APPEARANCE BOND entered by Pasquale Luca in Amount $500,000 Personal Surety Bond Approved by Magistrate Peter R. Palermo (dr) [Entry date 06/09/95] |
| 6/5/95 | 49 | APPEARANCE BOND entered by Michael Mandelblatt in Amount $500,000 Personal Surety Approved by Magistrate Peter R. Palermo (dr) [Entry date 06/09/95] |
| 6/5/95 | 50 | APPEARANCE BOND entered by Heidi Frazier in Amount $100,000 Personal Surety Approved by Magistrate Ted E. Bandstra (dr) [Entry date 06/09/95] |
| 6/5/95 | 51 | APPEARANCE BOND entered by Angel Castro in Amount $100,000 Personal Surety Approved by Magistrate Ted E. Bandstra (dr) [Entry date 06/09/95] |
| 6/5/95 | 52 | ORDER on Initial Appearance as to Joseph Letzelter. Bond set to $100,000 Personal Surety Bond Co-Signed Special Conditionl: a) Surrender all passports and travel documents to PTS, and b) Report to PTS 1 time a week by phone. (Signed by Magistrate Ted E. Bandstra on 6/5/95) Tape # 95B-88-1218 CCAP (dr) [Entry date 06/12/95] |
| 6/5/95 | 53 | ARRAIGNMENT INFORMATION SHEET for Joseph Letzelter (4) count(s) 1, 2-33, 34-48, 49-54, 55-69, 70-82 (dr) [Entry date 06/12/95] |
| 6/5/95 | -- | PLEA entered by Joseph Letzelter . Court accepts plea. NOT GUILTY: Joseph Letzelter (4) count(s) 1, 2-33, 34-48, 49-54, 55-69, 70-82 (dr) [Entry date 06/12/95] |
| 6/5/95 | 54 | STANDING DISCOVERY ORDER as to Joseph Letzelter, Heidi Frazier, Angel Castro Motion filing deadline set for 7/3/95 (Signed by Magistrate Ted E. Bandstra on 6/5/95) CCAP (dr) [Entry date 06/12/95] |
| 6/5/95 | 55 | APPEARANCE BOND entered by Joseph Letzelter in Amount $100,000 Personal Surety Bond Approved by Magistrate Ted E. Bandstra (dr) [Entry date 06/12/95] |
| 6/6/95 | 61 | ORDER on Hearing to Report Re Counsel as to Steven Merrill reset to 10:00 6/12/95 before Duty Magistrate (Signed by Magistrate Ted E. Bandstra on 6/6/95) CCAP (dr) [Entry date 06/13/95] |

'roceedings include all events.
_:95cr367-ALL USA v. Hammer, et al          $\underline{Vol. 1 Cont.}$          APPEA
CLOSED

| 6/6/95 | 62 | ORDER as to Steven Merrill, resetting Arraignment for 10:00 6/12/95 before Duty Magistrate and resetting Report re counsel for 10:00 6/12/95 before Duty Magistrate (Signed by Magistrate Ted E. Bandstra on 6/6/95) CCAP※ (dr) [Entry date 06/13/95] |
|---|---|---|
| 6/6/95 | 77 | REPORT Commencing Criminal Action as to Carl Solomon DOB: 9/29/54 Prisoner # 48842-004 (dr) [Entry date 06/13/95] |
| 6/6/95 | 78 | ORDER on Initial Appearance as to Carl Solomon Bond set to $500,000 Personal Surety Co-Signed by Mother. Report re counsel set for 10:00 7/7/95; Arraignment set for 10:00 7/7/95 before Duty Magistrate.  Special Conditions: a) Report to PTS 1 time a week by phone and 1 time a week in person, and b) Defendant may travel FU.S. & Mexico for business, 48 hrs itinerary to PTS & US Attorney. May keep gun collection. (Signed by Magistrate Ted E. Bandstra on 6/6/95) Tape # 95B-90-960 CCAP (dr) [Entry date 06/13/95] |
| 6/6/95 | 79 | APPEARANCE BOND entered by Carl Solomon in Amount $500,000 Personal Surety Approved by Magistrate Ted E. Bandstra (dr) [Entry date 06/13/95] |
| 6/7/95 | 63 | ARREST WARRANT Returned Executed as to Carl Solomon on 6/6/95 (dr) [Entry date 06/13/95] |
| /7/95 | 64 | ARREST WARRANT Returned Executed as to Heidi Frazier on 6/5/95 (dr) [Entry date 06/13/95] |
| 6/7/95 | 65 | ARREST WARRANT Returned Executed as to Mitchell A. Hammer on 6/1/95 (dr) [Entry date 06/13/95] |
| 6/7/95 | 66 | ARREST WARRANT Returned Executed as to Steven Merrill on 6/1/95 (dr) [Entry date 06/13/95] |
| 6/7/95 | 67 | ARREST WARRANT Returned Executed as to Esther Ramos on 6/1/95 (dr) [Entry date 06/13/95] |
| 6/7/95 | 68 | ARREST WARRANT Returned Executed as to Michael Mandelblatt on 6/2/95 (dr) [Entry date 06/13/95] |
| 6/7/95 | 69 | ARREST WARRANT Returned Executed as to Pasquale Luca on 6/1/95 (dr) [Entry date 06/13/35] |
| 6/7/95 | 70 | ARREST WARRANT Returned Executed as to Joseph Letzelter on 6/5/95 (dr) [Entry date 06/13/95] |
| 6/7/95 | 71 | ARREST WARRANT Returned Executed as to Angel Castro on 6/5/95 (dr) [Entry date 06/13/95] |
| 6/7/95 | -- | PLEA entered by Joseph Friedman . Court accepts plea. NOT GUILTY: Joseph Friedman (9) count(s) 1, 55-69 (dr) [Entry date 06/13/95] |

Proceedings include all events.                                           APPEA
:95cr367-ALL USA v. Hammer, et al                    Vol. 1 Cont. CLOSED

6/8/95   72   ORDER on Initial Appearance as to Joseph Friedman Bond set
              to $100,000 Personal Surety Bond Co-Signed by Wife.
              Special Conditions: a) Surrendier all passports and travel
              documents to PTS, b) Report to PTS 1 time a week in person,
              and c) Maintain residence in Miami & Brooklyn. (Signed by
              Magistrate Ted E. Bandstra on 6/7/95) Tape # 95B-91-3473
              CCAP (dr) [Entry date 06/13/95]

6/8/95   73   ARRAIGNMENT INFORMATION SHEET for Joseph Friedman (9)
              count(s) 1, 55-69 (dr) [Entry date 06/13/95]

6/8/95   74   ORDER ON TRAVEL CONDITIONS as to Joseph Friedman. Defendant
              may continue to reside and travel within the metropolitan
              New York area, may travel within the contintnetal U.S. upon
              giving 48 hour notice to the U.S. Attorney and PTS,
              surrender passport to PTS in Eastern District of New York
              within 7 days. (Signed by Magistrate Ted E. Bandstra on
              6/7/95) CCAP (dr) [Entry date 06/13/95]

6/8/95   75   APPEARANCE BOND entered by Joseph Friedman in Amount
              $100,000 Personal Surety Approved by Magistrate Ted E.
              Bandstra (dr) [Entry date 06/13/95]

6/8/95   76   STANDING DISCOVERY ORDER as to Joseph Friedman Motion
              filing deadline set for 7/6/95 (Signed by Magistrate Ted E.
              Bandstra on 6/7/95) CCAP (dr) [Entry date 06/13/95]

7/12/95  80   ORDER on Hearing to Report Re Counsel as to Steven Merrill
              reset to 10:00 6/16/95 before Duty Magistrate (Signed by
              Magistrate Barry L. Garber on 6/12/95) Tape # 95C-74-279
              CCAP (dr) [Entry date 06/19/95]

6/13/95  81   NOTICE of Assignment of Assistant Public Defender for
              Pasquale Luca . Terminated attorney Public Defender for
              Pasquale Luca AFPD Shereen J. Charlick assigned. (dt)
              [Entry date 06/21/95]

6/13/95  82   ORDER granting unopposed motion to modify conditions of
              bond as follows: defendant permitted to travel within USA
              upon giving 48 hours notice of US Attorneys Office as to
              Joseph Letzelter ( Signed by Magistrate Ted E. Bandstra on
              6/13/95) CCAP (dt) [Entry date 06/23/95]

6/14/95  83   PERSONAL SURETY BOND entered by Joseph Friedman in Amount $
              100,000 Approved by Magistrate Ted E. Bandstra (dt)
              [Entry date 06/23/95]

6/14/95  84   NOTICE of filing personal surety bond by Joseph Friedman (dt)
              [Entry date 06/23/95]

6/14/95  85   UNOPPOSED MOTION by Esther Ramos to Travel (dt)
              [Entry date 06/23/95]

roceedings include all events.                                                    APPEA
:95cr367-ALL USA v. Hammer, et al              Vol. 1 Cont.    CLOSED

6/15/95  86      UNOPPOSED MOTION by Joseph Letzelter to Modify Conditions
                 of bond (dt) [Entry date 06/23/95]

6/15/95  (87)    RESPONSE to Standing Discovery Order by USA as to Mitchell
                 A. Hammer, Michael Mandelblatt, Carl Solomon, Joseph
                 Letzelter, Steven Merrill, Heidi Frazier, Angel Castro,
                 Esther Ramos, Joseph Friedman, Pasquale Luca (dt)
                 [Entry date 06/23/95]

6/15/95  92      ARREST WARRANT Returned Executed as to Joseph Friedman on
                 6/7/95 (dr) [Entry date 06/28/95]

6/16/95  88      ORDER on Hearing to Report Re Counsel as to Steven Merrill.
                 David Tucker appeared and is noted as permanent counsel of
                 record. (Signed by Magistrate Barry L. Garber on 6/16/95)
                 Tape # 95C-80-986/2864 CCAP (dr) [Entry date 06/27/95]

6/16/95  89      NOTICE of Permanent Appearance for Steven Merrill by
                 Attorney David Kalman Tucker (dr) [Entry date 06/27/95]

6/16/95  90      ARRAIGNMENT INFORMATION SHEET for Steven Merrill (5)
                 count(s) 1, 2-33, 34-48, 49-54, 55-69 (dr)
                 [Entry date 06/27/95]

6/16/95  --      PLEA entered by Steven Merrill. Court accepts plea. NOT
                 GUILTY: Steven Merrill (5) count(s) 1, 2-33, 34-48, 49-54,
                 55-69 (dr) [Entry date 06/27/95]

o/16/95  91      STANDING DISCOVERY ORDER as to Steven Merrill Motion filing
                 deadline set for 7/14/95 (Signed by Magistrate Barry L.
                 Garber on 6/16/95) CCAP (dr) [Entry date 06/27/95]

6/21/95  93      MOTION by Michael Mandelblatt to extend time to file
                 pre-trial motions (dr) [Entry date 06/28/95]

6/23/95  94      ORDER as to Joseph Letzelter, Heidi Frazier granting [86-1]
                 motion to Modify Conditions of bond (Signed by Magistrate
                 Ted E. Bandstra on 6/23/95) CCAP※ (dr) [Entry date 06/30/95]

6/26/95  (95)    First Supplemental RESPONSE to Standing Discovery Order by
                 USA as to Mitchell A. Hammer, Michael Mandelblatt, Carl
                 Solomon, Joseph Letzelter, Steven Merrill, Heidi Frazier,
                 Angel Castro, Esther Ramos, Josep: Friedman, Pasquale Luca
                 (cp) [Entry date 07/08/95]

6/27/95  96      ORDER as to Esther Ramos granting [85-1] motion to Travel
                 as to Esther Ramos (8) ( Signed by Magistrate Peter R.
                 Palermo on 6/27/95) CCAP※ (cp) [Entry date 07/08/95]

6/30/95  100     NOTICE of Appearance for Joseph Letzelter by Attorney
                 Donald Fredrick Spain (cp) [Entry date 07/12/95]

6/30/95  101     MOTION with Memorandum in Support by Michael Mandelblatt
                 to compel return of seized property (cp)

Proceedings include all events.                                    APPE.
1:95cr367-ALL USA v. Hammer, et al        Vol. 1 Cont.      CLOSED

[Entry date 07/12/95]

7/5/95   97    JOINT MOTION by USA as to Mitchell A. Hammer, Michael
               Mandelblatt, Carl Solomon, Steven Merrill, Pasquale Luca
               for status conference (dr) [Entry date 07/12/95]

7/5/95   98    MOTION by Pasquale Luca to extend time to file pre-trial
               motions (dr) [Entry date 07/12/95]

7/5/95   99    MOTION by Pasquale Luca for permission to travel (dr)
               [Entry date 07/12/95]

7/7/95   102   MOTION by Carl Solomon to continue arraignment, for
               appointment of temporary counsel (dr) [Entry date 07/14/95]

7/7/95   103   WAIVER of Speedy Trial by Carl Solomon (dr)
               [Entry date 07/14/95]

7/7/95   103   MAGISTRATE JUDGE'S CERTIFICATE as to Carl Solomon regarding
               waiver of speedy trial (Signed by Magistrate Barry L.
               Garber on 7/7/95) CCAP (dr) [Entry date 07/14/95]

7/7/95   104   ORDER as to Carl Solomon granting [102-1] motion to
               continue arraignment, granting [102-2] motion for
               appointment of temporary counsel, setting Arraignment for
               10:00 7/7/95 before Duty Magistrate, setting Report re
               counsel for 10:00 7/7/95 before Duty Magistrate (Signed
               by Magistrate Barry L. Garber on 7/7/95) CCAP (dr)
               [Entry date 07/14/95]

7/10/95  105   ORDER as to Pasquale Luca granting [99-1] motion for
               permission to travel (Signed by Magistrate Peter R. Palermo
               on 7/10/95) CCAP (dr) [Entry date 07/17/95]

7/11/95  106   MOTION with Memorandum in Support by USA as to Michael
               Mandelblatt to extend time to respond to motion to compel
               return of seized property (dr) [Entry date 07/17/95]

7/18/95  107   RESPONSE by USA as to Pasquale Luca to [98-1] motion to
               extend time to file pre-trial motions (dt)
               [Entry date 07/21/95]

7/19/95  108   MOTION by Esther Ramos to Travel (dr) [Entry date 07/25/95]

7/21/95  109   JOINT MOTION by USA as to Joseph Letzelter, Heidi Frazier,
               Angel Castro, Esther Ramos, Joseph Friedman to toll speedy
               trial for five defendants who have signed plea agreements
               (dr) [Entry date 07/25/95]

7/21/95  110   RESPONSE by USA as to Michael Mandelblatt re [101-1] motion
               to compel return of seized property (dr)
               [Entry date 07/25/95]

7/21/95  111   SUPPLEMENT by Esther Ramos to: [108-1] motion to Travel (dr)

roceedings include all events.                                          APPE/
_:95cr367-ALL USA v. Hammer, et al                              CLOSED

[Entry date 07/25/95]      Vol. 1 Cont.

7/25/95   112    NOTICE of Bankruptcy Trustee's intention to dispose of
                 Sheffield Business Records by USA as to Mitchell A. Hammer,
                 Michael Mandelblatt, Carl Solomon, Joseph Letzelter, Steven
                 Heidi Frazier, Angel Castro, Esther Ramos, Joseph Friedman,
                 Pasquale Luca (dr) [Entry date 07/31/95]

7/27/95   113    REPLY by Michael Mandelblatt to response to [101-1] motion
                 to compel return of seized property (dr)
                 [Entry date 08/02/95]

7/28/95   114    MOTION by Angel Castro to Travel (dr) [Entry date 08/02/95]

8/2/95    115    NOTICE OF OBJECTION by Carl Solomon to [112-1] intention to
                 dispose of Sheffield Business Records (dr)
                 [Entry date 08/07/95]

8/2/95    115    MOTION by Carl Solomon for protective order regarding
                 bankruptcy trustee's intention to dispose of Sheffield
                 business records (dr) [Entry date 08/07/95]

8/2/95    116    ORDER as to Esther Ramos granting [108-1] motion to Travel
                 (Signed by Magistrate Peter R. Palermo on 8/2/95) CCAP※ (dr)
                 [Entry date 08/07/95]

./7/95    117    ORDER as to Carl Solomon, setting Arraignment for 10:00
                 9/6/95 for Carl Solomon before Duty Magistrate, setting
                 Report re counsel for 10:00 9/6/95 for Carl Solomon before
                 Duty Magistrate (Signed by Magistrate Stephen T. Brown on
                 8/7/95) CCAP※ (dr) [Entry date 08/11/95]

8/16/95   118    ORDER as to Angel Castro granting [114-1] motion to Travel
                 (Signed by Magistrate Ted E. Bandstra on 8/8/95) CCAP※ (dr)
                 [Entry date 08/21/95]

8/24/95   119    MOTION by Michael Mandelblatt for clarification of the
                 government's discovery obligations (dr)
                 [Entry date 08/29/95]

8/29/95   120    SECOND SUPPLEMENTAL DISCOVERY RESPONSE by USA as to
                 Mitchell A. Hammer, Michael Mandelblatt, Carl Solomon,
                 Joseph Letzelter, Steven Merrill, Heidi Frazier, Angel
                 Castro, Esther Ramos, Joseph Friedman, Pasquale Luca (dr)
                 [Entry date 09/05/95]

9/1/95    121    MOTION by Mitchell A. Hammer to Adopt Motion of Other
                 Defendant [119-1] motion for clarification of the
                 government's discovery obligations (dr)
                 [Entry date 09/07/95]

9/6/95    122    MOTION by Carl Solomon to Adopt Motion of Other Defendant
                 [119-1] motion for clarification of the government's
                 discovery obligations (dr) [Entry date 09/12/95]

Proceedings include all events.                                          APPEA
:95cr367-ALL USA v. Hammer, et al          Vol. 1 Cont.        CLOSED

| 9/6/95 | 123 | ORDER as to Carl Solomon, resetting Arraignment for 10:00 9/20/95 before Duty Magistrate (Signed by Magistrate Linnea R. Johnson on 9/6/95) CCAP※ (dr) [Entry date 09/12/95] |
|--------|-----|---|
| 9/6/95 | 124 | ORDER on Hearing to Report Re Counsel as to Carl Solomon reset to 10:00 9/20/95 for Carl Solomon before Duty Magistrate (Signed by Magistrate Linnea R. Johnson on 9/6/95)  Tape # 95FX-114-1440  CCAP (dr) [Entry date 09/12/95] |
| 9/14/95 | 125 | RESPONSE by USA as to Michael Mandelblatt re [119-1] motion for clarification of the government's discovery obligations (dr) [Entry date 09/20/95] |
| 9/14/95 | 126 | MOTION by Pasquale Luca to Adopt Motion of Other Defendant [119-1] motion for clarification of the government's discovery obligations (dr) [Entry date 09/20/95] |
| 9/18/95 | 127 | REPLY by Michael Mandelblatt to response to [119-1] motion for clarification of the government's discovery obligations (dr) [Entry date 09/21/95] |
| 9/20/95 | 128 | ORDER as to Carl Solomon resetting Arraignment for 10:00 9/27/95 for Carl Solomon before Duty Magistrate (Signed by Magistrate Stephen T. Brown on 9/20/95) CCAP※ (dr) [Entry date 09/25/95] |
| 9/20/95 | 129 | ORDER on Hearing to Report Re Counsel as to Carl Solomon reset to 10:00 9/27/95 before Duty Magistrate (Signed by Magistrate Stephen T. Brown on 9/20/95) Tape # 95D-123-1704 CCAP (dr) [Entry date 09/25/95] |
| 9/21/95 | 130 | SUPERSEDING INDICTMENT as to Mitchell A. Hammer (1) count(s) 1s, 2s-33s, 34s-48s, 49s-54s, 55s-69s, 70s-82s, 83s-84s, Michael Mandelblatt (2) count(s) 1s, 2s-33s, 34s-48s, 49s-54s, 55s-69s, 70s-82s, 85s, Carl Solomon (3) count(s) 1s, 2s-33s, 34s-48s, 49s-54s, Joseph Letzelter (4) count(s) 1s, 2s-33s, 34s-48s, 49s-54s, 55s-69s, 70s-82s, Steven Merrill (5) count(s) 1s, 2s-33s, 34s-48s, 49s-54s, 55s-69s, Heidi Frazier (6) count(s) 1s, 2s-33s, ·34s-48s, 49s-54s, 55s-69s, 70s-82s, Angel Castro (7) count(s) 1s, 2s-33s, 34s-48s, 49s-54s, Esther Ramos (8) count(s) 1s, 83s-84s, Joseph Friedman (9) count(s) 1s, 55s-69s, Pasquale Luca (10) count(s) 1s, 70s-82s, 83s-84s (Criminal Category 4) (dr) [Entry date 09/28/95] |

roceedings include all events.                                                          APPEA
.:95cr367-ALL USA v. Hammer, et al              Vol. 1 Cont.          CLOSED

9/26/95   (131)   NOTICE OF ARRAIGNMENT ON SUPERSEDING INDICTMENT as to
                  Mitchell A. Hammer, Michael Mandelblatt, Carl Solomon,
                  Joseph Letzelter, Steven Heidi Frazier, Angel Castro,
                  Esther Ramos, Joseph Friedman, Pasquale Luca: setting
                  Arraignment for 10:00 10/2/95 Mitchell A. Hammer, for
                  Michael Mandelblatt, for Carl Solomon, for Joseph
                  Letzelter, for Steven Merrill, for Frazier, for Angel
                  Castro, for Esther Ramos, for Joseph Friedman, for Pasquale
                  Luca before Duty Magistrate (dr) [Entry date 10/02/95]

9/26/95   132     NOTICE of Appearance for Carl Solomon by Attorney James
                  Dale McMaster (dr) [Entry date 10/02/95]

9/27/95   133     ARRAIGNMENT INFORMATION SHEET for Carl Solomon (3) count(s)
                  1s, 2s-33s, 34s-48s, 49s-54s (dr) [Entry date 10/02/95]

9/27/95   --      PLEA entered by Carl Solomon . Court accepts plea. NOT
                  GUILTY: Carl Solomon (3) count(s) 1s, 2s-33s, 34s-48s,
                  49s-54s (dr) [Entry date 10/02/95]

9/27/95   134     STANDING DISCOVERY ORDER as to Carl Solomon Motion filing
                  deadline set for 10/25/95 (Signed by Magistrate Barry L.
                  Garber on 9/27/95) CCAP (dr) [Entry date 10/02/95]

9/27/95   135     MOTION by Michael Mandelblatt to Travel (dr)
                  [Entry date 10/02/95]

0/2/95    136     ARRAIGNMENT INFORMATION SHEET for Heidi Frazier (6)
                  count(s) 1s, 2s-33s, 34s-48s, 49s-54s, 55s-69s, 70s-82s (dr)
                  [Entry date 10/10/95]

10/2/95   --      PLEA entered by Heidi Frazier. Court accepts plea. NOT
                  GUILTY: Heidi Frazier (6) count(s) 1s, 2s-33s, 34s-48s,
                  49s-54s, 55s-69s, 70s-82s (dr) [Entry date 10/10/95]

10/2/95   137     ARRAIGNMENT INFORMATION SHEET for Esther Ramos (8) count(s)
                  1s, 83s-84s (dr) [Entry date 10/10/95]

10/2/95   --      PLEA entered by Esther Ramos. Court accepts plea. NOT
                  GUILTY: Esther Ramos (8) count(s) 1s, 83s-84s (dr)
                  [Entry date 10/10/95]

10/2/95   138     ARRAIGNMENT INFORMATION SHEET for Pasquale Luca (10)
                  count(s) 1s, 70s-82s, 83s-84s (dr) [Entry date 10/10/95]

10/2/95   --      PLEA entered by Pasquale Luca. Court accepts plea. NOT
                  GUILTY: Pasquale Luca (10) count(s) 1s, 70s-82s, 83s-84s (dr)
                  [Entry date 10/10/95]

10/2/95   139     ARRAIGNMENT INFORMATION SHEET for Steven Merrill (5)
                  count(s) 1s, 2s-33s, 34s-48s, 49s-54s, 55s-69s (dr)
                  [Entry date 10/10/95]

Proceedings include all events.                                              APPEA
:95cr367-ALL USA v. Hammer, et al          Vol. 1 Cont.        CLOSED

10/2/95   --    PLEA entered by Steven Merrill . Court accepts plea. NOT
                GUILTY: Steven Merrill (5) count(s) 1s, 2s-33s, 34s-48s,
                49s-54s, 55s-69s (dr) [Entry date 10/10/95]

10/2/95   140   ARRAIGNMENT INFORMATION SHEET for Mitchell A. Hammer (1)
                count(s) 1s, 2s-33s, 34s-48s, 49s-54s, 55s-69s, 70s-82s,
                83s-84s (dr) [Entry date 10/10/95]

10/2/95   --    PLEA entered by Mitchell A. Hammer . Court accepts plea.
                NOT GUILTY: Mitchell A. Hammer (1) count(s) 1s, 2s-33s,
                34s-48s, 49s-54s, 55s-69s, 70s-82s, 83s-84s (dr)
                [Entry date 10/10/95]

10/2/95   141   STANDING DISCOVERY ORDER as to Mitchell A. Hammer, Steven
                Merrill, Esther Ramos, Pasquale Luca Motion filing deadline
                set for 10/30/95 (Signed by Magistrate Peter R. Palermo on
                10/2/95) CCAP (dr) [Entry date 10/10/95]

10/2/95   142   THIRD SUPPLEMENTAL RESPONSE to Standing Discovery Order by
                USA as to Mitchell A. Hammer, Michael Mandelblatt, Carl
                Solomon, Joseph Letzelter, Steven Merrill, Heidi Frazier,
                Angel Castro, Esther Ramos, Joseph Friedman, Pasquale Luca
                (dr) [Entry date 10/10/95]

10/2/95   143   ORDER as to Michael Mandelblatt, Angel Castro, Joseph
                Friedman, resetting Arraignment for 10:00 10/6/95 for
                Michael Mandelblatt, for Angel Castro, for Joseph Friedman
                before Judge Wilkie D. Ferguson Jr. (Signed by Magistrate
                Peter R. Palermo on 10/2/95) CCAP (dr)
                [Entry date 10/10/95]

10/5/95   144   MOTION by Joseph Friedman to continue arraignment date on
                superseding indictment (dr) [Entry date 10/12/95]

10/6/95   145   Agreed ORDER as to Joseph Friedman granting [144-1] motion
                to continue arraignment date on superseding indictment as
                to Joseph Friedman (9),  reset Arraignment for 10:00
                10/26/95 for Joseph Friedman before Duty Magistrate
                Separate notice of arraignment shall issue specifying
                courtroom and magistrate judge. ( Signed by Magistrate
                Peter R. Palermo on 10/6/95) CCAP (cp)
                [Entry date 10/13/95]

10/6/95   146   ARRAIGNMENT INFORMATION SHEET for Angel Castro (7) count(s)
                1s, 2s-33s, 34s-48s, 49s-54s (dr) [Entry date 10/17/95]

10/6/95   --    PLEA entered by Angel Castro . Court accepts plea. NOT
                GUILTY: Angel Castro (7) count(s) 1s, 2s-33s, 34s-48s,
                49s-54s (dr) [Entry date 10/17/95]

10/6/95   147   ARRAIGNMENT INFORMATION SHEET for Michael Mandelblatt (2)
                count(s) 1s, 2s-33s, 34s-48s, 49s-54s, 55s-69s, 70s-82s,
                85s (dr) [Entry date 10/17/95]

'roceedings include all events.                                                    APPF.
1:95cr367-ALL USA v. Hammer, et al                    Vol. 1 Cont.    CLOSED

10/6/95  --     PLEA entered by Michael Mandelblatt . Court accepts plea.
                NOT GUILTY: Michael Mandelblatt (2) count(s) 1s, 2s-33s,
                34s-48s, 49s-54s, 55s-69s, 70s-82s, 85s (dr)
                [Entry date 10/17/95]

10/6/95  148    STANDING DISCOVERY ORDER as to Michael Mandelblatt, Angel
                Castro Motion filing deadline set for 11/3/95 (Signed by
                Magistrate Peter R. Palermo on 10/6/95) CCAP (dr)
                [Entry date 10/17/95]

10/11/95 149    NOTICE of Reassignment of Assistant Public Defender for
                Pasquale Luca . Terminated attorney Shereen J. Charlick for
                Pasquale Luca AFPD Hugo A. Rodriguez assigned. (dr)
                [Entry date 10/18/95]

10/11/95 150    ARRAIGNMENT INFORMATION SHEET for Joseph Letzelter (4)
                count(s) 1s, 2s-33s, 34s-48s, 49s-54s, 55s-69s, 70s-82s (dr)
                [Entry date 10/18/95]

10/11/95 --     PLEA entered by Joseph Letzelter . Court accepts plea. NOT
                GUILTY: Joseph Letzelter (4) count(s) 1s, 2s-33s, 34s-48s,
                49s-54s, 55s-69s, 70s-82s (dr) [Entry date 10/18/95]

10/11/95 151    STANDING DISCOVERY ORDER as to Joseph Letzelter Motion
                filing deadline set for 11/8/95 (Signed by Ch. Magistrate
                Judge William C. Turnoff on 10/11/95)  CCAP (dr)
                [Entry date 10/18/95]

10/11/95 152    ORDER as to Michael Mandelblatt granting [135-1] motion to
                Travel (Signed by Magistrate Peter R. Palermo on 10/11/95)
                CCAP⌘ (dr) [Entry date 10/18/95]

10/18/95 (153)  FOURTH SUPPLEMENTAL RESPONSE to Standing Discovery Order by
                USA as to Mitchell A. Hammer, Michael Mandelblatt, Carl
                Solomon, Joseph Letzelter, Steven Merrill, Heidi Frazier,
                Angel Castro, Esther Ramos, Joseph Friedman, Pasquale Luca
                (dr) [Entry date 10/24/95]

10/19/95 154    MOTION by Joseph Friedman to Travel (dr)
                [Entry date 10/26/95]

10/19/95 155    ORDER as to Joseph Friedman granting [154-1] motion to
                Travel (Signed by Magistrate Ted E. Bandstra on 10/20/95)
                CCAP⌘ (dr) [Entry date 10/26/95]

10/20/95 (156)  MOTION by USA as to Mitchell A. Hammer, Michael
                Mandelblatt, Carl Solomon, Joseph Letzelter, Steven
                Merrill, Heidi Frazier, Angel Castro, Esther Ramos, Joseph
                Friedman, Pasquale Luca for a date certain for trial to
                begin 9/16/96 (dr) [Entry date 10/26/95]
                [Edit date 10/26/95]                 End Vol. 1

10/24/95 157    ORDER as to Michael Mandelblatt, Pasquale Luca granting
                [93-1] motion to extend time to file pre-trial motions as
                to Michael Mandelblatt (2), granting [98-1] motion to
                extend time to file pre-trial motions as to Pasquale Luca
                (10), granting [106-1] motion to extend time to respond to
                motion to compel return of seized property as to Michael
                Mandelblatt (2) ( Signed by Judge Wilkie D. Ferguson Jr. on
                10/25/95) CCAP※ (dr) [Entry date 10/31/95]

10/24/95 158    ORDER as to Mitchell A. Hammer, Michael Mandelblatt, Carl
                Solomon, Joseph Letzelter, Steven Merrill, Heidi Frazier,
                Angel Castro, Esther Ramos, Joseph Friedman, Pasquale Luca,
                resetting Jury Trial for 10/30/95; Calendar Call for 8:30
                10/30/95, to Continue in Interest of Justice (Signed by
                Judge Wilkie D. Ferguson Jr. on 10/24/95) CCAP※ (dr)
                [Entry date 10/31/95]

10/24/95 159    ORDER as to Mitchell A. Hammer, Carl Solomon, Pasquale Luca
                granting [121-1] motion to Adopt Motion of Other Defendant
                [119-1] motion for clarification of the government's
                discovery obligations as to Mitchell A. Hammer (1),
                granting [122-1] motion to Adopt Motion of Other Defendant
                [119-1] motion for clarification of the government's
                discovery obligations as to Carl Solomon (3), granting
                [126-1] motion to Adopt Motion of Other Defendant [119-1]
                motion for clarification of the government's discovery
                obligations as to Pasquale Luca (10) ( Signed by Judge
                Wilkie D. Ferguson Jr. on 10/24/95) CCAP※ (dr)
                [Entry date 10/31/95]

10/24/95 160    ORDER as to Joseph Letzelter, Heidi Frazier, Angel Castro,
                Esther Ramos, Joseph Friedman granting [109-1] motion to
                toll speedy trial for five defendants who have signed plea
                agreements as to Joseph Letzelter (4), Heidi Frazier (6),
                Angel Castro (7), Esther Ramos (8), Joseph Friedman (9),
                to Continue in Interest of Justice ( Signed by Judge
                Wilkie D. Ferguson Jr. on 10/24/95) CCAP※ (dr)
                [Entry date 10/31/95]

10/26/95 161    ARRAIGNMENT INFORMATION SHEET for Joseph Friedman (9)
                count(s) 1s, 55s-69s (dr) [Entry date 11/01/95]

10/26/95 --     PLEA entered by Joseph Friedman   Court accepts plea. NOT
                GUILTY: Joseph Friedman (9) count(s) 1s, 55s-69s (dr)
                [Entry date 11/01/95]

10/26/95 162    STANDING DISCOVERY ORDER as to Joseph Friedman Motion
                filing deadline set for 11/24/95 (Signed by Magistrate Ted
                E. Bandstra on 10/26/95) CCAP (dr) [Entry date 11/01/95]

Proceedings include all events.                                           APPE/
1:95cr367-ALL USA v. Hammer, et al        Vol. 2 Cont.        CLOSED

11/22/95  163   OMNIBUS ORDER as to Mitchell A. Hammer, Michael
                Mandelblatt, Carl Solomon, Joseph Letzelter, Steven
                Merrill, Heidi Frazier, Angel Castro, Esther Ramos, Joseph
                Friedman, Pasquale Luca granting [115-1] motion for
                protective order regarding bankruptcy trustee's intention
                to dispose of Sheffield business records as to Carl Solomon
                (3), granting [101-1] motion to compel return of seized
                property as to Michael Mandelblatt (2), granting [156-1]
                motion for a date certain for trial to begin 9/16/96, and
                resetting Jury trial for 6/10/96 Wilkie D. Ferguson Jr.
                (Signed by Judge Wilkie D. Ferguson Jr. on 11/22/95) CCAP※
                (dr) [Entry date 11/30/95]

11/24/95  164   MOTION by Heidi Frazier to permit travel (dr)
                [Entry date 11/30/95]

12/7/95   165   ORDER as to Heidi Frazier granting [164-1] motion to permit
                travel (Signed by Magistrate Ted E. Bandstra on 12/7/95)
                CCAP※ (dr) [Entry date 12/18/95]

12/12/95  166   MOTION by Pasquale Luca to extend time for execution of
                Court's order of 11/22/95 (dr) [Entry date 12/19/95]

12/18/95  167   ORDER as to Angel Castro granting [114-1] motion to Travel
                (Signed by Magistrate Ted E. Bandstra on 12/18/95) CCAP※ (dr)
                [Entry date 12/27/95]

12/28/95  168   MOTION by Michael Mandelblatt to Modify Bcnd Conditions (dr)
                [Entry date 01/05/96]

12/29/95  169   MOTION by Joseph Friedman for permission to travel (dr)
                [Entry date 01/05/96]

1/2/96    170   OBJECTION by USA as to Michael Mandelblatt to [168-1]
                motion to Modify Bond Conditions (dr) [Entry date 01/09/96]

1/2/96    171   NOTICE of vacation by Joseph Letzelter (dr)
                [Entry date 01/09/96]

1/4/96    172   ORDER as to Joseph Friedman granting [169-1] motion for
                permission to travel (Signed by Magistrate Ted E. Bandstra
                on 1/3/96) CCAP※ (dr) [Entry date 01/09/96]

1/20/96   275   Plea Agreement as to Carl Solomon (dr) [Entry date 12/04/96]

2/20/96   - -   ARREST of Michael Mandelblatt in Southern District of New
                York (dr) [Entry date 03/15/96]

2/22/96   173   MOTION by Michael Mandelblatt to reinstate bond and for
                sanctions (dr) [Entry date 02/27/96]

2/22/96   174   SEALED DOCUMENT as to Michael Mandelblatt (dr)
                [Entry date 02/27/96]

'roceedings include all events.                                                    APPEA
1:95cr367-ALL USA v. Hammer, et al          Vol. 2 Cont.        CLOSED

2/23/96  175    ORDER as to Michael Mandelblatt, revoking Bond, and for
                expedited psychiatric exam. Defendant is remanded to the
                custody of the Bureau of Prisons. Matter is scheduled for
                2/26/96 at 9:00 for a determination whether the defendant's
                bond should be reinstated. (Signed by Judge Wilkie D.
                Ferguson Jr. on 2/23/96) CCAP¾ (dr) [Entry date 02/29/96]

2/26/96  176    MOTION by Pasquale Luca for conditions of bond (dr)
                [Entry date 02/29/96]

2/26/96  178    ORDER REINSTATING BOND as to Michael Mandelblatt granting
                [173-1] motion to reinstate bond. Bond reset to $500,000
                Personal Surety Co-Signed by Wife. Additional Conditions:
                1) Prohibited from any communication with Mr. Perelman, Mr.
                Slovin, their family members, or any director, officer or
                employee of Revlon, 2) Travel restricted to the Southern
                District of Florida, 3) Confined to place of residence, 4)
                Shall be electronically monitored at his expense, 5)
                Maintain a telephone at place of residence without "call
                forwarding", or "call waiting" or "callback/callblock"
                services. (Signed by Judge Wilkie D. Ferguson Jr. on
                2/26/96) CCAP¾ (dr) [Entry date 03/11/96]

2/27/96  177    MOTION by Esther Ramos for permission to travel (dr)
                [Entry date 03/01/96]

3/6/96   180    SEALED DOCUMENT as to Mitchell A. Hammer, Michael
                Mandelblatt, Carl Solomon, Joseph Letzelter, Steven
                Merrill, Heidi Frazier, Angel Castro, Esther Ramos, Joseph
                Friedman, Pasquale Luca (dr) [Entry date 03/14/96]

3/7/96   179    ORDER as to Esther Ramos granting [177-1] motion for
                permission to travel (Signed by Magistrate Peter R. Palermo
                on 3/7/96) CCAP¾ (dr) [Entry date 03/14/96]

3/8/96   182    Rule 40 Documents as to Michael Mandelblatt received from
                Southern District of New York (dr) [Entry date 03/15/96]

3/8/96   183    OBJECTION by USA as to Pasquale Luca to [176-1] motion for
                conditions of bond (dr) [Entry date 03/15/96]

3/12/96  184    ORDER as to Pasquale Luca granting [176-1] motion for
                conditions of bond. Bond is modified as follows: Report to
                Pretrial Services 3 times a week by phone and 2 times a
                month in person. (Signed by Magistrate Peter R. Palermo on
                3/12/96) CCAP¾ (dr) [Entry date 03/20/96]

3/13/96  181    SEALED DOCUMENT as to Mitchell A. Hammer, Michael
                Mandelblatt, Carl Solomon, Joseph Letzelter, Steven
                Merrill, Heidi Frazier, Angel Castro, Esther Ramos, Joseph
                Friedman, Pasquale Luca (dr) [Entry date 03/14/96]

4/26/96  185    NOTICE of unavailability by Michael Mandelblatt (dr)
                [Entry date 05/01/96]

| 5/8/96 | -.- | Status conference as to Mitchell A. Hammer, Michael Mandelblatt, Carl Solomon, Joseph Letzelter, Steven Merrill, Heidi Frazier, Angel Castro, Esther Ramos, Joseph Friedman, Pasquale Luca held (dr) [Entry date 05/16/96] |
|---|---|---|
| 5/8/96 | 186 | Minute of Status Conference held on 5/8/96 before Judge Wilkie D. Ferguson Jr. as to Mitchell A. Hammer, Michael Mandelblatt, Carl Solomon, Joseph Letzelter, Steven Merrill, Heidi Frazier, Angel Castro, Esther Ramos, Joseph Friedman, Pasquale Luca; Court Reporter Name or Tape #: Paul Haferling (dr) [Entry date 05/16/96] |
| 5/8/96 | 187 | ORDER as to Angel Castro granting [114-1] motion to Travel. defendant shall be allowed to travel to Colombia. (Signed by Magistrate Ted E. Bandstra on 5/8/96) CCAP❀ (dr) [Entry date 05/16/96] |
| 5/8/96 | 188 | MOTION by Michael Mandelblatt to modify conditions of release (dr) [Entry date 05/16/96] |
| 5/9/96 | 189 | OMNIBUS ORDER as to Mitchell A. Hammer, Michael Mandelblatt, Carl Solomon, Joseph Letzelter, Steven Merrill, Heidi Frazier, Angel Castro, Esther Ramos, Joseph Friedman, Pasquale Luca dismissing as moot: [97-1] motion for status conference, [119-1] motion for clarification of the government's discovery obligations, [166-1] motion to extend time for execution of Court's order of 11/22/95, [168-1] motion to Modify Bond Conditions, and [173-2] motion for sanctions, (Signed by Judge Wilkie D. Ferguson Jr. on 5/9/96) CCAP❀ (dr) [Entry date 05/16/96] |
| 5/9/96 | 190 | NOTICE of Death by Heidi Frazier (dr) [Entry date 05/16/96] |
| 6/28/96 | 191 | THIRD MOTION by Joseph Friedman for permission to travel (dr) [Entry date 07/08/96] |
| 7/2/96 | 253 | ORDER as to Joseph Friedman granting [191-1] motion for permission to travel (Signed by Magistrate Ted E. Bandstra on 7/1/96) CCAP❀ (dr) [Entry date 10/18/96] |
| 7/17/96 | 192 | MOTION with Memorandum in Support by Michael Mandelblatt for discovery and for production of information disclosable under Brady (dr) [Entry date 07/23/96] |
| 7/17/96 | 193 | MOTION with Memorandum in Support by Michael Mandelblatt to dismiss counts 1 and counts 55-82 of indictment on grounds of duplicity (dr) [Entry date 07/23/96] |
| 7/17/96 | 194 | MOTION with Memorandum in Support by Michael Mandelblatt to dismiss counts 2-33 of indictment on multiplicity grounds (dr) [Entry date 07/23/96] |

roceedings include all events.                                                          APPEAI
t:95cr367-ALL USA v. Hammer, et al          Vol. 2 Cont.          CLOSED

1/17/96   195    MOTION with Memorandum in Support by Michael Mandelblatt
                 to dismiss counts 49-54 of indictment (dr)
                 [Entry date 07/23/96]

7/17/96   196    MOTION by Michael Mandelblatt for severance (dr)
                 [Entry date 07/23/96]

7/17/96   197    CERTIFICATE OF SERVICE by Michael Mandelblatt  Service Re:
                 [192-1] motion for discovery, [192-2] motion for production
                 of information disclosable under Brady, [196-1] motion for
                 severance, [195-1] motion to dismiss counts 49-54 of
                 indictment, [194-1] motion to dismiss counts 2-33 of
                 indictment on multiplicity grounds, [193-1] motion to
                 dismiss counts 1 and counts 55-82 of indictment on grounds
                 of duplicity (dr) [Entry date 07/23/96]

7/17/96   198    MOTION with Memorandum in Support by Michael Mandelblatt
                 for limited individual voir dire (dr) [Entry date 07/23/96]

7/23/96   --     Change of Plea Hearing as to Esther Ramos  held (dr)
                 [Entry date 08/06/96]

7/23/96   --     PLEA entered by Esther Ramos . Court accepts plea. GUILTY:
                 Esther Ramos (8) count(s) 83s (dr) [Entry date 08/06/96]

/25/96    199    SUPERSEDING INFORMATION as to  Joseph Letzelter (4)
                 count(s) 1ss, 2ss (Criminal Category 1) (dt)
                 [Entry date 07/31/96]

7/26/96   200    FIFTH SUPPLEMENTAL RESPONSE to Standing Discovery Order by
                 USA as to Mitchell A. Hammer, Michael Mandelblatt, Carl
                 Solomon, Joseph Letzelter, Steven Merrill, Heidi Frazier,
                 Angel Castro, Esther Ramos, Joseph Friedman, Pasquale Luca
                 (dr) [Entry date 08/01/96]

7/26/96   201    NOTICE of unavailability by Pasquale Luca (dr)
                 [Entry date 08/01/96]

7/26/96   202    NOTICE of Hearing as to Joseph Letzelter: setting
                 Arraignment for 10:00 8/6/96 for Joseph Letzelter before
                 Duty Magistrate (dr) [Entry date 08/01/96]

7/26/96   203    WAIVER OF INDICTMENT by Joseph Letzelter (md)
                 [Entry date 08/01/96]

7/26/96   204    Minute of Change of Plea held on 7/26/96  before Judge
                 Wilkie D. Ferguson Jr. as to Joseph Letzelter ;   Court
                 Reporter Name or Tape #: Paul Haferling (md)
                 [Entry date 08/01/96]

7/26/96   205    Plea Agreement as to Joseph Letzelter (md)
                 [Entry date 08/01/96]

Proceedings include all events.                                          APPEA
1:95cr367-ALL USA v. Hammer, et al      Vol. 2 Cont.        CLOSED

| 7/26/96 | 206 | NOTICE of Hearing as to Joseph Letzelter :, Set Sentencing for 9:00 12/16/96 for Joseph Letzelter before Judge Wilkie D. Ferguson Jr. (md) [Entry date 08/01/96] |

7/26/96  - -    PLEA entered by Joseph Letzelter . Court accepts plea.
                GUILTY: Joseph Letzelter (4) count(s) 1ss, 2ss (dt)
                [Entry date 01/02/97]

7/29/96  207    OMNIBUS ORDER as to Michael Mandelblatt denying [196-1]
                motion for severance, denying [198-1] motion for limited
                individual voir dire, granting [192-1] motion for
                discovery, and granting [192-2] motion for production of
                information disclosable under Brady (Signed by Judge Wilkie
                D. Ferguson Jr. on 7/29/96) CCAP₩ (dr) [Entry date 08/02/96]

7/29/96  208    Notice of compliance: by USA with order to segregate
                documents (dr) [Entry date 08/06/96]

7/31/96  209    Minute of Change of Plea Hearing held on 7/23/96 before
                Judge Wilkie D. Ferguson Jr. as to Esther Ramos; Defendant
                entered plea of guilty as to count 83. Court Reporter Name
                or Tape #: Paul Haferling (dr) [Entry date 08/06/96]

7/31/96  210    Plea Agreement as to Esther Ramos (dr) [Entry date 08/06/96]

7/31/96  211    NOTICE OF SENTENCING DATE as to Esther Ramos: setting
                Sentencing for 9:00 12/16/96 before Judge Wilkie D.
                Ferguson Jr. (dr) [Entry date 08/06/96]

8/1/96   212    NOTICE of potential trial conflict by Carl Solomon (dr)
                [Entry date 08/08/96]

8/1/96   213    MOTION by Carl Solomon to join or adopt certain motions of
                filed by Defendant Mandelblatt: [198-1] motion for limited
                individual voir dire, [192-1] motion for discovery, [192-2]
                motion for production of information disclosable under
                Brady, [193-1] motion to dismiss counts 1 and counts 55-82
                of indictment on grounds of duplicity, [194-1] motion to
                dismiss counts 2-33 of indictment on multiplicity grounds,
                [195-1] motion to dismiss counts 49-54 of indictment (dr)
                [Entry date 08/08/96]

8/14/96  214    ORDER as to Mitchell A. Hammer, Michael Mandelblatt, Carl
                Solomon, Joseph Letzelter, Steven Merrill, Heidi Frazier,
                Angel Castro, Esther Ramos, Joseph Friedman, Pasquale Luca,
                setting Jury Trial for 3:00 9/16/96; Motion Filing to
                6/17/96 (Signed by Judge Wilkie D. Ferguson Jr. on
                8/14/96) CCAP₩ (dr) [Entry date 08/20/96]

8/15/96  215    SIXTH SUPPLEMENTAL RESPONSE to Standing Discovery Order by
                USA as to Mitchell A. Hammer, Michael Mandelblatt, Carl
                Solomon, Joseph Letzelter, Steven Merrill, Heidi Frazier,
                Angel Castro, Esther Ramos, Joseph Friedman, Pasquale Luca
                (dr) [Entry date 08/22/96]

| 8/16/96 | 216 | MOTION by Pasquale Luca to suppress statement and REQUEST for hearing (dr) [Entry date 08/22/96] |
|---|---|---|
| 8/19/96 | 217 | ORDER as to Pasquale Luca denying [216-1] motion to suppress statement (Signed by Judge Wilkie D. Ferguson Jr. on 8/19/96) CCAP§ (dg) [Entry date 08/27/96] |
| 8/20/96 | 219 | MOTION by Pasquale Luca to Adopt Motion of Other Defendant [198-1] motion for limited individual voir dire, [192-1] motion for discovery, [192-2] motion for production of information disclosable under Brady, [193-1] motion to dismiss counts 1 and counts 55-82 of indictment on grounds of duplicity (dr) [Entry date 08/27/96] |
| 8/21/96 | 218 | MOTION with Memorandum in Support by Pasquale Luca to compel Government to produce summary of any expert opinion (dg) [Entry date 08/27/96] |
| 8/23/96 | 220 | SUPERSEDING INFORMATION as to Steven Merrill (5) count(s) 1ss (Criminal Category 1) (dr) [Entry date 08/29/96] |
| 8/23/96 | 221 | SUPERSEDING INFORMATION as to Angel Castro (7) count(s) 1ss (Criminal Category 1) (dr) [Entry date 08/29/96] |
| 8/23/96 | 222 | SUPERSEDING INFORMATION as to Joseph Friedman (9) count(s) 1ss (Criminal Category 1) (dr) [Entry date 08/29/96] |
| 8/26/96 | 223 | RESPONSE by USA as to Pasquale Luca re [218-1] motion to compel Government to produce summary of any expert opinion (dr) [Entry date 08/30/96] |
| 8/27/96 | 224 | WAIVER OF INDICTMENT by Steven Merrill (dr) [Entry date 09/03/96] |
| 8/27/96 | -- | Change of Plea Hearing as to Steven Merrill  held (dr) [Entry date 09/03/96] |
| 8/27/96 | -- | PLEA entered by Steven Merrill . Court accepts plea. GUILTY: Steven Merrill (5) count(s) 1ss (dr) [Entry date 09/03/96] |
| 8/27/96 | 225 | Minute of Change of Plea Hearing held on 8/27/96 before Judge Wilkie D. Ferguson Jr. as to Steven Merrill; Defendant entered plea of guilty as to count 1. Court Reporter Name or Tape #: Paul Haferling (dr) [Entry date 09/03/96] |
| 8/27/96 | 226 | Plea Agreement as to Steven Merrill (dr) [Entry date 09/03/96] |
| 8/27/96 | 227 | NOTICE OF SENTENCING DATE as to Steven Merrill: setting Sentencing for 9:00 1/10/97 before Judge Wilkie D. Ferguson Jr. (dr) [Entry date 09/03/96] |

roceedings ·include all events.                                                    APPEA
1:95cr367-ALL USA v. Hammer, et al                              CLOSED

Vol. 2 (cont)

| 8/27/96 | 228 | WAIVER OF INDICTMENT by Joseph Friedman (dr) [Entry date 09/03/96] |
|---------|-----|---|
| 8/27/96 | - - | Change of Plea Hearing as to Joseph Friedman  held (dr) [Entry date 09/03/96] |
| 8/27/96 | - - | PLEA entered by Joseph Friedman . Court accepts plea. GUILTY: Joseph Friedman (9) count(s) 1ss (dr) [Entry date 09/03/96] |
| 8/27/96 | 229 | Minute of Change of Plea Hearing held on 8/27/96 before Judge Wilkie D. Ferguson Jr. as to Joseph Friedman; Court Reporter Name or Tape #: Paul Haferling (dr) [Entry date 09/03/96] |
| 8/27/96 | 230 | NOTICE OF SENTENCING DATE as to Joseph Friedman resetting Sentencing for 9:00 1/10/97 before Judge Wilkie D. Ferguson Jr. (dr) [Entry date 09/03/96] |
| 8/27/96 | 231 | Plea Agreement as to Joseph Friedman (dr) [Entry date 09/03/96] |
| 8/27/96 | 232 | WAIVER OF INDICTMENT by Angel Castro (dr) [Entry date 09/03/96] |
| 8/27/96 | - - | Change of Plea Hearing as to Angel Castro  held (dr) [Entry date 09/03/96] |
| 8/27/96 | - - | PLEA entered by Angel Castro. Court accepts plea. GUILTY: Angel Castro (7) count(s) 1ss (dr) [Entry date 09/03/96] |
| 8/27/96 | 233 | Minute of Change of Plea Hearing held on 8/27/96 before Judge Wilkie D. Ferguson Jr. as to Angel Castro: Defendant entered plea of guilty as to count 1. Court Reporter Name or Tape #: Paul Haferling (dr) [Entry date 09/03/96] |
| 8/27/96 | 234 | Plea Agreement as to Angel Castro (dr) [Entry date 09/03/96] |
| 8/27/96 | 235 | NOTICE OF SENTENCING DATE as to Angel Castro: setting Sentencing for 9:00 1/10/97 for Angel Castro before Judge Wilkie D. Ferguson Jr. (dr) [Entry date 09/03/96] |
| 8/30/96 | 236 | MOTION by Michael Mandelblatt to Travel (cp) [Entry date 09/10/96] |
| 8/30/96 | 237 | MOTION with Memorandum in Support by Michael Mandelblatt to discharge counsel and proceed pro se and for appointment of stand-by counsel/co-counsel (cp) [Entry date 09/10/96] |

roceedings include all events.                                                    APPEA
1:95cr367-ALL USA v. Hammer, et al          Vol. 2 Cont.     CLOSED

| 9/4/96 | 238 | NOTICE OF HEARING as to Michael Mandelblatt Setting hearing before Judge Wilkie D. Ferguson Jr. set for 9:30 9/10/96 for Mitchell A. Hammer for [237-1] motion to discharge counsel and proceed pro se, set for 9:30 9/10/96 for Mitchell A. Hammer for [237-2] motion for appointment of stand-by counsel/co-counsel (signed by Judge Wilkie D. Ferguson on 9/3/96) CCAP (dr) [Entry date 09/12/96] |
|---|---|---|
| 9/4/96 | 239 | Notice of compliance: by Michael Mandelblatt with Brady and Rule 16 (dr) [Entry date 09/12/96] |
| 9/4/96 | 239 | MOTION by USA as to Michael Mandelblatt for clarification of [207-1] order (dr) [Entry date 09/12/96] |
| 9/9/96 | 240 | RESPONSE by USA as to Michael Mandelblatt re [195-1] motion to dismiss counts 49-54 of indictment (dr) [Entry date 09/16/96] |
| 9/12/96 | 241 | SUGGESTION OF DEATH of Michael Mandelblatt (dr) [Entry date 09/17/96] |
| 9/12/96 | - - | Change of Plea Hearing as to Mitchell A. Hammer held (dr) [Entry date 09/17/96] |
| 9/12/96 | - - | PLEA entered by Mitchell A. Hammer . Court accepts plea. GUILTY: Mitchell A. Hammer (1) count(s) 1s, 71s, 83s (dr) [Entry date 09/17/96] |
| ./12/96 | 242 | Minute of Change of Plea Hearing held on 9/12/96 before Judge Wilkie D. Ferguson Jr. as to Mitchell A. Hammer; Defendant entered plea of guilty as to counts 1, 71 and 83. Court Reporter Name or Tape #: Paul Haferling (dr) [Entry date 09/17/96] |
| 9/12/96 | 243 | Plea Agreement as to Mitchell A. Hammer (dr) [Entry date 09/17/96] |
| 9/12/96 | 244 | NOTICE OF SENTENCING DATE as to Mitchell A. Hammer: setting Sentencing for 9:00 1/17/97 for Mitchell A. Hammer before Judge Wilkie D. Ferguson Jr. (dr) [Entry date 09/17/96] |
| 9/13/96 | 245 | NOTICE of change of residential address of defendant by Mitchell A. Hammer (dr) [Entry date 09/17/96] |
| 9/16/96 | - - | Change of Plea Hearing as to Pasquale Luca held (dr) [Entry date 09/19/96] |
| 9/16/96 | - - | PLEA entered by Pasquale Luca . Court accepts plea. GUILTY: Pasquale Luca (10) count(s) 83s (dr) [Entry date 09/19/96] |

'roceedings include all events.                                                    APPEA
1:95cr367-ALL USA v. Hammer, et al          Vol. 2 Cont.          CLOSED

9/16/96   246   Minute of Change of Plea Hearing held on 9/16/96 before
                Judge Wilkie D. Ferguson Jr. as to Pasquale Luca. Defendant
                entered plea of guilty as to count 83. Court Reporter Name
                or Tape #: Paul Haferling (dr) [Entry date 09/19/96]

9/16/96   247   Plea Agreement as to Pasquale Luca (dr)
                [Entry date 09/19/96]

9/16/96   248   NOTICE OF SENTENCING DATE as to Pasquale Luca: setting
                Sentencing for 9:00 1/17/97 for Pasquale Luca before Judge
                Wilkie D. Ferguson Jr. (dr) [Entry date 09/19/96]

9/23/96   249   Proposed Jury Instructions by Carl Solomon (sl)
                [Entry date 09/30/96]

9/23/96   250   Witness list by Carl Solomon (sl) [Entry date 09/30/96]

9/24/96   251   Minute of jury selection for trial held on 9/24/96 before
                Judge Wilkie D. Ferguson Jr. as to Carl Solomon; Court
                Reporter: Haferling (lk) [Entry date 10/01/96]

9/24/96   --    Voir dire begun as to Carl Solomon (3) count(s) 1s, 2s-33s,
                34s-48s, 49s-54s Terminated motions: (dr)
                [Entry date 10/18/96]

'/24/96   --    Jury trial as to Carl Solomon  held (dr)
                [Entry date 10/18/96]

=/25/96   --    Jury trial as to Carl Solomon  held (dr)
                [Entry date 10/18/96]

9/26/96   252   SUPPLEMENT by Michael Mandelblatt to: [241-1] suggestion of
                death (dr) [Entry date 10/03/96]

9/26/96   --    Jury trial as to Carl Solomon  held (dr)
                [Entry date 10/18/96]

9/30/96   --    Jury trial as to Carl Solomon  held (dr)
                [Entry date 10/18/96]

10/1/96   --    Jury trial as to Carl Solomon  held (dr)
                [Entry date 10/18/96]

10/2/96   --    Jury trial as to Carl Solomon  held (dr)
                [Entry date 10/18/96]

10/3/96   --    Jury trial as to Carl Solomon  held (dr)
                [Entry date 10/18/96]

10/7/96   --    Jury trial as to Carl Solomon  held (dr)
                [Entry date 10/18/96]

'roceedings include all events.                                                    APPEA.
1:95cr367-ALL USA v. Hammer, et al           Vol. 2 Cont.      CLOSED

10/8/96  254    Minute of Day 1 of Jury Trial held on 9/24/96  before Judge
                Wilkie D. Ferguson Jr. as to Carl Solomon. Jury Selection.
                Court Reporter Name or Tape #: Paul Haferling (dr)
                [Entry date 10/18/96]

10/8/96  255    REDACTED INDICTMENT used at trial by Carl Solomon (dr)
                [Entry date 10/18/96]

10/8/96  256    Minute of Day 2 of Jury Trial held on 9/25/96 before Judge
                Wilkie D. Ferguson Jr. as to Carl Solomon. Continued Jury
                selection. Court Reporter Name or Tape #: Paul Haferling (dr)
                [Entry date 10/18/96]

10/8/96  257    Minute of Day 3 of Jury Trial held on 9/26/96 before Judge
                Wilkie D. Ferguson Jr. as to Carl Solomon. Jury selection
                completed - Jury empaneled - Opening statements. Court
                Reporter Name or Tape #: Paul Haferling (dr)
                [Entry date 10/18/96]

10/8/96  258    Minute of Day 4 of Jury Trial held on 9/30/96 before Judge
                Wilkie D. Ferguson Jr. as to Carl Solomon. Case continued
                to 10/1/96. Court Reporter Name or Tape #: Paul Haferling
                (dr) [Entry date 10/18/96]

10/8/96  259    Minute of Day 5 of Jury Trial held on 10/1/96 before Judge
                Wilkie D. Ferguson Jr. as to Carl Solomon. Case continued
                to 10/2/96. Court Reporter Name or Tape #: Paul Haferling
                (dr) [Entry date 10/18/96]

10/8/96  260    Minute of Day 6 of Jury Trial held on 10/2/96  before Judge
                Wilkie D. Ferguson Jr. as to Carl Solomon. Case continued
                to 10/3/93. Court Reporter Name or Tape #: Paul Haferling
                (dr) [Entry date 10/18/96]

10/8/96  261    Minute of Day 7 of Jury Trial held on 10/3/96 before Judge
                Wilkie D. Ferguson Jr. as to Carl Solomon. Case continued
                to 10/7/96. Court Reporter Name or Tape #: Paul Haferling
                (dr) [Entry date 10/18/96]

10/8/96  262    Minute of Day 8 of Jury Trial held on 10/7/96 before Judge
                Wilkie D. Ferguson Jr.  as to Carl Solomon. Testimony
                completed. Case continued to 10/8/96. Court Reporter Name
                or Tape #: Paul Haferling (dr) [Intry date 10/18/96]

10/8/96  - -    Jury trial as to Carl Solomon  held (dr)
                [Entry date 10/18/96]

10/8/96  263    Minute of Day 9 of Jury Trial held on 10/8/96 before Judge
                Wilkie D. Ferguson Jr. as to Carl Solomon: Closing
                arguments. Case continued to 10/9/96 for completion of
                closing arguments. Court Reporter Name or Tape #: Paul
                Haferling (dr) [Entry date 10/18/96]

10/9/96  264    MOTION by Steven Merrill to Travel (dr)

'roceedings include all events.                                                  APPEA
1:95cr367-ALL USA v. Hammer, et al                                               CLOSED

                              [Entry date 10/18/96]        Vol. 2 Cont.

10/9/96   --     Jury trial as to Carl Solomon  held (dr)
                 [Entry date 10/18/96]

10/9/96   265    Minute of Day 10 of Jury Trial held on 10/9/96 before Judge
                 Wilkie D. Ferguson Jr. as to Carl Solomon; Closing
                 arguments completed. Court intructs jury. Court Reporter
                 Name or Tape #: Paul Haferling (dr) [Entry date 10/18/96]

10/9/96   266    Requested Special Jury Instructions by Carl Solomon (dr)
                 [Entry date 10/18/96]

10/9/96   267    Court's Jury instructions as to Carl Solomon (dr)
                 [Entry date 10/18/96]

10/10/96  268    ORDER as to Steven Merrill granting [264-1] motion to
                 Travel (Signed by Magistrate Peter R. Palermo on 10/10/96)
                 CCAP※ (dr) [Entry date 10/18/96]

10/10/96  --     Jury trial as to Carl Solomon  held (dr)
                 [Entry date 10/18/96]

10/10/96  269    Minute of Day 11 of Jury Trial held on 10/10/96 before
                 Judge Wilkie D. Ferguson Jr. as to Carl Solomon; Jury
                 deliberating - Received not from jury: "Hung Jury", Court
                 sends them back to deliberate. Court Reporter Name or Tape
                 #: Paul Haferling (dr) [Entry date 10/18/96]

10/11/96  270    Jury notes and Court's answers as to Carl Solomon (dr)
                 [Entry date 10/24/96]

10/11/96  --     Jury trial as to Carl Solomon  held (dr)
                 [Entry date 10/24/96]

10/11/96  271    Minute of Day 12 of Jury Trial held on 10/11/96 before
                 Judge Wilkie D. Ferguson Jr. as to Carl Solomon: Declaring
                 Mistrial as to counts 1s,2s-33s,34s-48s, 49s-54s, setting
                 calendar call for 2:00 before Judge Wilkie D. Ferguson Jr.
                 Court Reporter Name or Tape #: Paul Haferling (dr)
                 [Entry date 10/24/96]

10/28/96  272    ORDER Granting defendant's motio.. to temporarily return and
                 renew passport as to Angel Castro ( Signed by Magistrate
                 Ted E. Bandstra on 10/24/96) CCAP※ (cp)
                 [Entry date 11/08/96]

11/20/96  --     Change of Plea Hearing as to Carl Solomon  held (dr)
                 [Entry date 12/04/96]

11/20/96  274    Minute of Change of Plea Hearing held on 11/20/96 before
                 Judge Wilkie D. Ferguson Jr. as to Carl Solomon; GUILTY:
                 Carl Solomon (3) count(s) 34s  Court Reporter Name or Tape
                 #: Paul Haferling (dr) [Entry date 12/04/96]

11/20/96  276    NOTICE OF SENTENCING DATE as to Carl Solomon: setting
                 Sentencing for 11:00 1/31/97 for Carl Solomon before Judge
                 Wilkie D. Ferguson Jr. (dr) [Entry date 12/04/96]

11/25/96  273    OBJECTION by Esther Ramos to Presentence Investigation
                 Report (dr) [Entry date 11/27/96]

12/4/96   277    ORDER FOR DISMISSAL as to Michael Mandelblatt dismissing
                 indictment due to death of defendant (Signed by Judge
                 Wilkie D. Ferguson Jr. on 11/26/96) CCAP¾ (dr)
                 [Entry date 12/10/96]

12/4/96   --     DISMISSAL of Count(s) on Government Motion as to Michael
                 Mandelblatt  Terminated motions: [237-1] motion to
                 discharge counsel and proceed pro se as to Michael
                 Mandelblatt (2), [237-2] motion for appointment of stand-by
                 counsel/co-counsel as to Michael Mandelblatt (2), [236-1]
                 motion to Travel as to Michael Mandelblatt (2), [239-1]
                 motion for clarification of [207-1] order as to Michael
                 Mandelblatt (2), [195-1] motion to dismiss counts 49-54 of
                 indictment as to Michael Mandelblatt (2), [194-1] motion to
                 dismiss counts 2-33 of indictment on multiplicity grounds
                 as to Michael Mandelblatt (2), [193-1] motion to dismiss
                 counts 1 and counts 55-82 of indictment on grounds of
                 duplicity as to Michael Mandelblatt (2), [188-1] motion to
                 modify conditions of release as to Michael Mandelblatt (2)
                 Counts Dismissed: Michael Mandelblatt (2) count(s) 1, 1s,
                 2-33, 2s-33s, 34-48, 34s-48s, 49-54, 49s-54s, 55-69,
                 55s-69s, 70-82, 70s-82s, 85, 85s (dr) [Entry date 12/10/96]

12/6/96   278    OBJECTION by Joseph Letzelter to Presentence Investigation
                 Report (dr) [Entry date 12/11/96]

12/11/96  279    SENTENCING MEMORANDUM by Joseph Letzelter (dr)
                 [Entry date 12/16/96]

12/12/96  280    SENTENCING MEMORANDUM by Esther Ramos (dr)
                 [Entry date 12/16/96]

12/16/96  --     Sentencing  held  Joseph Letzelter (4) count(s) 1ss, 2ss (dt)
                 [Entry date 01/02/97]

12/16/96  --     Sentencing  held  Esther Ramos (8) count(s) 83s (dt)
                 [Entry date 01/02/97]

12/31/96  281    Minute of sentencing held on 12/16/96  before Judge Wilkie
                 D. Ferguson Jr.  as to Joseph Letzelter ;  Court Reporter
                 Name or Tape #: Paul Haferling (dt) [Entry date 01/02/97]

roceedings ·include all events.                                                    APPEA:
1:95cr367-ALL USA v. Hammer, et al          \Vol. 2 Cont.    CLOSED

12/31/96 282    JUDGMENT as to Joseph Letzelter (4) Counts 1ss, 2ss:
                Probation 48 months to run concurrent, $100.00 special
                assessment, and $100,000 restitution. Counts
                1,1s,2-33,2s-33s,34-48,34s-48s,49-54: Dismissed (Signed by
                Judge Wilkie D. Ferguson Jr. on 12/18/96) CCAP (dt)
                [Entry date 01/02/97] [Edit date 01/31/97]

12/31/96 283    Minute of sentencing held on 12/16/96  before Judge Wilkie
                D. Ferguson Jr.  as to Esther Ramos ;  Court Reporter Name
                or Tape #: Paul Haferling (dt) [Entry date 01/02/97]

12/31/96 284    JUDGMENT as to  Esther Ramos (8) count(s) 83s.  Probation 2
                years as to count 83 of superseding indictment , Esther
                Ramos (8) count(s) 1, 1s , 83 -84 , 84s .  Dismissed
                Assessed $50.00 Fine amount of $5,000.00 ( Signed by Judge
                Wilkie D. Ferguson Jr. on 12/18/96)  CCAP (dt)
                [Entry date 01/02/97]

1/8/97   285    SENTENCING MEMORANDUM by Joseph Friedman (dr)
                [Entry date 01/13/97]

1/9/97   286    MOTION by Steven Merrill to continue sentencing due to
                conflict (dr) [Entry date 01/14/97]

1/9/97   287    MOTION by Mitchell A. Hammer to continue sentencing (dr)
                [Entry date 01/14/97]

10/97    288    Minute of sentencing held on 1/10/97 before Judge Wilkie D.
                Ferguson Jr. as to Joseph Friedman. Court Reporter Name:
                Paul Haferling (dr) [Entry date 01/14/97]

1/10/97  289    Minute of sentencing held on 1/10/97 before Judge Wilkie D.
                Ferguson Jr. as to Angel Castro. Court Reporter Name:  Paul
                Haferling (dr) [Entry date 01/14/97]

1/10/97  --     Sentencing held Angel Castro (7) count(s) 1ss (dr)
                [Entry date 01/16/97]

1/10/97  --     Sentencing held Joseph Friedman (9) count(s) 1ss (dr)
                [Entry date 01/16/97]

1/13/97  290    JUDGMENT as to Angel Castro (7) Count 1ss: 3 years
                probation, $20,000 restitution, and $50.00 special
                assessment. Counts 1,1s,2-33,2s-33s,34-48,34s-48s,49-54:
                Dismissed (Signed by Judge Wilkie D. Ferguson Jr. on
                1/13/97) CCAP/M (dr) [Entry date 01/16/97]

1/13/97  291    MOTION by Joseph Friedman for permission to travel (dr)
                [Entry date 01/16/97]

1/13/97  292    JUDGMENT as to Joseph Friedman (9) Count 1ss: 3 years
                probation, $5,000 fine, $25,000 restitution, and $50.00
                special assessment. Counts 1,1s,55-69,55s-69s: Dismissed
                (Signed by Judge Wilkie D. Ferguson Jr. on 1/13/97) CCAP/M

roceedings include all events.                                              APPEA
1:95cr367-ALL USA v. Hammer, et al                            CLOSED

           (dr) [Entry date 01/16/97]   Vol. 2  cont.

1/14/97  293   ORDER as to Joseph Friedman  granting [291-1] motion for
               permission to travel (Signed by Magistrate Ted E. Bandstra
               on 1/14/97) CCAP※ (dr) [Entry date 01/16/97]

1/15/97  295   NOTICE of filing letters in support of mitigation by Steven
               Merrill (dr) [Entry date 01/22/97]

1/16/97  294   MOTION by Joseph Friedman to set travel conditions while
               on probation (dr) [Entry date 01/22/97]

1/28/97  296   NOTICE of Appearance for Carl Solomon by Attorney Barry
               Michael Wax (dr) [Entry date 01/31/97]

1/28/97  297   MOTION by Carl Solomon to substitute Barry M. Wax as
               Attorney (dr) [Entry date 01/31/97]

1/28/97  298   MOTION by Carl Solomon to continue sentencing date (dr)
               [Entry date 01/31/97]

1/28/97  299   MOTION by Carl Solomon to extend time to file objections
               to the presentence investigation report (dr)
               [Entry date 01/31/97]

/28/97  300   MOTION by Mitchell A. Hammer for Neal R. Sonnett to
               withdraw as attorney and to continue sentencing (dr)
               [Entry date 01/31/97]

1/28/97  301   OBJECTION by Mitchell A. Hammer to Presentence
               Investigation Report (dr) [Entry date 01/31/97]

1/28/97  301   SENTENCING MEMORANDUM by Mitchell A. Hammer (dr)
               [Entry date 01/31/97]

1/28/97  301   NOTICE of request for downward departure by Mitchell A.
               Hammer (dr) [Entry date 01/31/97]

1/29/97  --    Sentencing  held  Steven Merrill (5) count(s) 1ss (dt)
               [Entry date 02/04/97]

1/29/97  --    Sentencing  held  Pasquale Luca (10) count(s) 83s (dt)
               [Entry date 02/04/97]

1/30/97  306   ORDER as to Joseph Friedman  granting [294-1] motion to set
               travel conditions while on probation (Signed by Magistrate
               Ted E. Bandstra on 1/29/97) CCAP※ (dr) [Entry date 02/05/97]

1/31/97  302   JUDGMENT as to  Steven Merrill (5) count(s) 1ss.  Probation
               3 years , Steven Merrill (5) count(s) 1, 1s , 2 -33 , 2s
               -33s , 34 -48 , 34s -48s , 49 -54 .  Dismissed  ( Signed by
               Judge Wilkie D. Ferguson Jr. on 1/31/97)  CCAP (dt)
               [Entry date 02/04/97]

'roceedings include all events.                                      APPE.
1:95cr367-ALL USA v. Hammer, et al                  \o\. 2 Cont. CLOSED

1/31/97  303  Minute of sentencing held on 1/29/97 before Judge Wilkie
              D. Ferguson Jr. as to Pasquale Luca ; Court Reporter Name
              or Tape #: Paul Haferling (dt) [Entry date 02/04/97]

1/31/97  304  JUDGMENT as to  Pasquale Luca (10) count(s) 83s.  Probation
              2 years , Pasquale Luca (10) count(s) 1, 1s , 70 -82 , 70s
              -82s , 83 -84 , 84s .  Dismissed  Assessed $50.00 ( Signed
              by Judge Wilkie D. Ferguson Jr. on 1/31/97)  CCAP (dt)
              [Entry date 02/04/97]

2/3/97   305  RESPONSE and notice of consent by Carl Solomon to [297-1]
              motion to substitute Barry M. Wax as Attorney (kp)
              [Entry date 02/05/97]

2/10/97  306  ORDER as to Mitchell A. Hammer, Carl Solomon [300-1] motion
              for Neal R. Sonnett to withdraw as attorney as to Mitchell
              A. Hammer (1), granting [300-2] motion to continue
              sentencing as to Mitchell A. Hammer (1), granting [298-1]
              motion to continue sentencing date as to Carl Solomon (3),
              [297-1] motion to substitute Barry M. Wax as Attorney as to
              Carl Solomon (3)  RESET Sentencing for 8:30 2/28/97 for
              Mitchell A. Hammer, for Carl Solomon  before Judge Wilkie
              D. Ferguson Jr. ( Signed by Judge Wilkie D. Ferguson Jr.
              on 2/10/97) CCAP※ (kp) [Entry date 02/11/97]

2/10/97  307  ORDER referring Motion(s) to Magistrate Stephen T. Brown
              as to Mitchell A. Hammer, Carl Solomon : [300-1] motion for
              Neal R. Sonnett to withdraw as attorney as to Mitchell A.
              Hammer (1), [297-1] motion to substitute Barry M. Wax as
              Attorney as to Carl Solomon (3)  ( Signed by Judge Wilkie
              D. Ferguson Jr. on 2/10/97)  CCAP (kp) [Entry date 02/11/97]

2/11/97  308  Judgment Returned Executed as to Pasquale Luca . No further
              action required US Marshal. (kp) [Entry date 02/13/97]

2/11/97  309  Judgment Returned Executed as to Steven Merrill. No further
              action required by US Marshal. (kp) [Entry date 02/13/97]

2/11/97  310  Judgment Returned Executed as to Joseph Letzelter . No
              further action required by US Marshal. (kp)
              [Entry date 02/13/97]

2/11/97  311  Judgment Returned Executed as tc Esther Ramos. No further
              action required by US Marshal. (kp) [Entry date 02/13/97]

2/11/97  313  Judgment Returned Executed as to Angel Castro. No further
              action required by Us Marshal. (kp) [Entry date 02/13/97]

proceedings. include all events.                                                              APPEA
1:95cr367-ALL USA v. Hammer, et al        Vol. 2 Cont.        CLOSED

2/11/97  314   NOTICE of Hearing as to Mitchell A. Hammer, Carl Solomon :
               Motion hearing  before Magistrate Stephen T. Brown set for
               11:00 2/18/97 for Mitchell A. Hammer, for Carl Solomon for
               [300-1] motion for Neal R. Sonnett to withdraw as attorney,
               set for 11:00 2/18/97 for Mitchell A. Hammer, for Carl
               Solomon for [297-1] motion to substitute Barry M. Wax as
               Attorney (kp) [Entry date 02/19/97]

2/13/97  312   Judgment Returned Executed as to Joseph Friedman. No
               further action required by US Marshal (kp)
               [Entry date 02/13/97]

2/14/97  315   NOTICE of  attorney unavailability from 3/5/97-3/6/97 and
               3/21/97-3/31/97 by Carl Solomon (kp) [Entry date 02/20/97]

2/18/97  316   OBJECTION by Carl Solomon  to Presentence Investigation
               Report (kp) [Entry date 02/20/97]

2/18/97  318   NOTICE of filing of 1992 Income Tax Return by Carl Solomon
               (kp) [Entry date 02/21/97]

2/18/97  319   Minute of Motion to withdraw as ciunsel and motion to
               substitute counsel held on 2/18/97 before Magistrate
               Stephen T. Brown  as to Mitchell A. Hammer, Carl Solomon ;
               Court grants both motions. Barry Wax to to substitute for
               Jim McMaster as to deft solomon. Srebnick substituted in
               place of Sonnet as to deft Hammer. Court Reporter Name or
               Tape #: 97D-10-1551,2171 (kp) [Entry date 02/25/97]

2/19/97  317   MOTION by Mitchell A. Hammer to continue sentencing (kp)
               [Entry date 02/20/97]

2/19/97  322   ORDER as to Mitchell A. Hammer substituting Attorney
               terminated attorney Neal Russell Sonnett for Mitchell A.
               Hammer Added Scott Alan Srebnick ( Signed by Magistrate
               Stephen T. Brown on 2/18/97) CCAP※ (kp)
               [Entry date 02/27/97]

2/21/97  321   MOTION by Carl Solomon to continue sentencing date (kp)
               [Entry date 02/25/97]

2/24/97  320   ORDER as to Mitchell A. Hammer, Carl Solomon  denying
               [317-1] motion to continue senterving as to Mitchell A.
               Hammer (1), denying [287-1] motion to continue sentencing
               as to Mitchell A. Hammer (1). Sentencing in this matter
               will remian as scheduled for 2/28/97 at 8;30 ( Signed by
               Judge Wilkie D. Ferguson Jr. on 2/24/97) CCAP※ (kp)
               [Entry date 02/25/97]

2/25/97  323   SUPPLEMENTAL request by Mitchell A. Hammer for downward
               departure (kp) [Entry date 02/27/97]

2/25/97  324   NOTICE of statement of responsibility by Mitchell A. Hammer
               (kp) [Entry date 02/27/97]

Docket as of October 6, 1997 2:34 pm                    Page 53

roceedings include all events.                                    APPEA
⊥:95cr367-ALL USA v. Hammer, et al          Vol. 2 Cont.    CLOSED

2/27/97  (325)    RESPONSE by USA as to Mitchell A. Hammer re [323-1] motion
                  for downward departure (mh) [Entry date 03/03/97]

2/27/97  326      RESPONSE by USA as to Carl Solomon in opposition to [316-1]
                  objection to PSI (mh) [Entry date 03/03/97]

2/28/97  327      Minute of Sentencing held on 2/28/97 before Judge Wilkie D.
                  Ferguson Jr. as to Carl Solomon; Court Reporter Name: Paul
                  Haferling (mh) [Entry date 03/03/97]

2/28/97  (328)    Minute of Sentencing held on 2/28/97 before Judge Wilkie D.
                  Ferguson Jr. as to Mitchell A. Hammer; Court Reporter Name:
                  Paul Haferling (mh) [Entry date 03/03/97]

2/28/97  (329)    RESPONSE by USA as to Mitchell A. Hammer re [323-1] motion
                  for downward departure (mh) [Entry date 03/03/97]

2/28/97  - -      Sentencing held for Carl Solomon (3) as to Count 34s (mh)
                  [Entry date 03/03/97]

2/28/97  330      JUDGMENT as to Carl Solomon (3); Counts 1, 1s, 2-33, 2s-33s
                  34-48, 35s-48s, 49-54. DISMISSED: Count 34s, $50 special
                  assessment, 21 BOP, 3 years supervised release (Signed by
                  Judge Wilkie Ferguson Jr. on 2/28/97) CCAP/M (mh)
                  [Entry date 03/03/97]

⁻/28/97  - -      Sentencing held for Mitchell A. Hammer (1) as to Counts 1s,
                  71s, 83s (mh) [Entry date 03/03/97]

2/28/97  (331)    JUDGEMENT as to Mitchell Hammer (1): Counts 2-33s, 34-48,
                  34s-48s, 49-54, 55-69. DISMISSED: Counts 1s, 71s, and 83s,
                  $150 special assessment, 60 months BOP as to Counts 1 and
                  83, 108 months as to Count 71 to run currently, 3 years
                  supervised release to run concurrently (Signed by Judge
                  Wilkie D. Ferguson Jr. on 2/28/97) CCAP/M (mh)
                  [Entry date 03/03/97]

3/7/97   (332)    NOTICE OF APPEAL by Mitchell A. Hammer re: [331-1] judgment
                  order .  EOD Date: 3/3/97; Mitchell A. Hammer (1) count(s)
                  71s, 83s;  Filing Fee: $ 105.00 Receipt #: 511087; Copies
                  to USCA, AUSA, USM, USPO and Counsel of Record. (gf)
                  [Entry date 03/07/97]          End Vol. 2

3/7/97   - -      Certified copies of Notice of Appeal, Docket and Order
                  under appeal to USCA: as to Mitchell A. Hammer [332-1]
                  appeal (gf) [Entry date 03/07/97]

3/13/97  - -      NOTICE of Receipt of Transmittal Letter from USCA as to
                  Mitchell A. Hammer  Re: [332-1] appeal  USCA Number:
                  97-4350 (gf) [Entry date 03/14/97]

3/26/97  333    ORDER as to Heidi Frazier dismissing Indictment (See DE
                #190) ( Signed by Judge Wilkie D. Ferguson Jr. on 3/26/97)
                CCAP※ (kp) [Entry date 03/31/97]

3/26/97  --     DISMISSAL of Count(s) on Court or Defendant Motion as to
                Heidi Frazier   Terminated motions: [323-1] motion for
                downward departure as to Mitchell A. Hammer (1), [300-1]
                motion for Neal R. Sonnett to withdraw as attorney as to
                Mitchell A. Hammer (1), [299-1] motion to extend time to
                file objections to the presentence investigation report as
                to Carl Solomon (3), [297-1] motion to substitute Barry M.
                Wax as Attorney as to Carl Solomon (3), [286-1] motion to
                continue sentencing due to conflict as to Steven Merrill
                (5), [218-1] motion to compel Government to produce summary
                of any expert opinion as to Pasquale Luca (10), [219-1]
                motion to Adopt Motion of Other Defendant [198-1] motion
                for limited individual voir dire, [192-1] motion for
                discovery, [192-2] motion for production of information
                disclosable under Brady, [193-1] motion to dismiss counts 1
                and counts 55-82 of indictment on grounds of duplicity as
                to Pasquale Luca (10), [213-1] motion to join or adopt
                certain motions of filed by Defendant Mandelblatt: [198-1]
                motion for limited individual voir dire, [192-1] motion for
                discovery, [192-2] motion for production of information
                disclosable under Brady, [193-1] motion to dismiss counts 1
                and counts 55-82 of indictment on grounds of duplicity,
                [194-1] motion to dismiss counts 2-33 of indictment on
                multiplicity grounds, [195-1] motion to dismiss counts
                49-54 of indictment as to Carl Solomon (3)   Counts
                Dismissed: Heidi Frazier (6) count(s) 1, 1s, 2-33, 2s-33s,
                34-48, 34s-48s, 49-54, 49s-54s, 55-69, 55s-69s, 70-82,
                70s-82s (kp) [Entry date 03/31/97]

4/2/97   334    AGREED MOTION by Joseph Friedman to Travel (kp)
                [Entry date 04/03/97]

4/3/97   335    ORDER as to Joseph Friedman  granting [334-1] motion to
                Travel as to Joseph Friedman (9) ( Signed by Magistrate Ted
                E. Bandstra on 4/2/97) CCAP※ (kp) [Entry date 04/09/97]

5/5/97   336    AGREED MOTION by Pasquale Luca  for Modification of post
                conviction bond (kp) [Entry date 05/06/97]

5/6/97   337    ORDER as to Pasquale Luca  granting [336-1] motion  for
                Modification of post conviction bond as to Pasquale Luca
                (10) ( Signed by Judge Wilkie D. Ferguson Jr. on 5/6/97)
                CCAP※ (kp) [Entry date 05/08/97]

5/16/97  338    MOTION by Carl Solomon  extension  of voluntary surrender
                date (kp) [Entry date 05/20/97]

5/21/97  339    AGREED MOTION by Joseph Friedman for permission to Travel
                (kp) [Entry date 05/22/97]

5/27/97   340   ORDER as to Joseph Friedman  granting [339-1] motion for
                permission to Travel as to Joseph Friedman (9) ( Signed by
                Magistrate Ted E. Bandstra on 5/16/97) CCAP※ (kp)
                [Entry date 05/29/97]

6/9/97    341   MOTION by Joseph Letzelter for permission to Travel (kp)
                [Entry date 06/10/97]

7/8/97    342   TRANSCRIPT filed in case as to Mitchell A. Hammer  before
                Wilkie D. Ferguson, Jr.  for dates of 2/28/97  in re
                Hearing of Sentencing.  Volume # 1  Pages 53 (kp)
                [Entry date 07/08/97]

7/8/97    343   TRANSCRIPT filed in case as to Pasquale Luca  before Wilkie
                D. Ferguson, Jr.  for dates of 1/29/97  in re Sentencing.
                Volume # 1  Pages 6 (kp) [Entry date 07/08/97]

7/16/97   344   Judgment Returned Executed as to Mitchell A. Hammer on
                6/30/97 at BOP, FCI Miami (kp) [Entry date 07/21/97]

9/3/97    346   ORDER as to Joseph Friedman  granting [345-1] motion for
                permission to Travel as to Joseph Friedman (9) ( Signed by
                Magistrate Ted E. Bandstra on 9/3/97) CCAP※ (kp)
                [Entry date 09/08/97]

9/4/97    345   AGREED MOTION by Joseph Friedman for permission to Travel
                (kp) [Entry date 09/08/97]

/11/97    347   PETITION and ORDER for probation action as to Joseph
                Friedman. Court allows probation to be non-reporting  (
                signed by: Judge Wilkie D. Ferguson Jr. on 9/11/97) (kp)
                [Entry date 09/15/97]

9/30/97   348   Judgment Returned Executed as to Carl Solomon on 9/12/97 at
                Edlin AFB, Florida (dp) [Entry date 10/06/97]

10/6/97   --    Certificate of readiness transmitted to USCA as to Mitchell
                A. Hammer  re: [332-1] appeal  by Mitchell A. Hammer  USCA
                # 97-4350 (gf) [Entry date 10/06/97]

IN THE MATTER OF
UNITED STATES V. MITCHELL HAMMER, ET. AL.
Case No. 95-367-CR-Ferguson

EXHIBITS "B" through "L"

Mitchell Hammer
Reg. No. 48828-004
Federal Prison Camp-Miami
P.O. Box 779800
Miami, Fl.    33177

**EXHIBIT "B"**

Certificate of Trial Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO. _95-0367-CR-FERGUSON(S)

v.

MITCHELL HAMMER,                    CERTIFICATE OF TRIAL ATTORNEY
MICHAEL MANDELBLATT, et al.

I do hereby certify:

1.   I have carefully considered the allegations of the
indictment, the number of defendants, the number of probable
witnesses and the legal complexities of the Indictment/Information
attached hereto.

2.   I am aware that the information supplied on this
statement will be relied upon by the Judges of this Court in
setting their calendars and scheduling criminal trials under the
mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   This case will take _50_ days for the parties to try.

4.   Please check appropriate category and type of offense
listed below:

        (Check only one)                    (Check only one)

I      0 to  5 days    _____        Petty      _____
II     6 to 10 days    _____        Minor      _____
III   11 to 20 days    _____        Misdem.    _____
IV    21 to 60 days    __X__        Felony     __X__
V     61 days and over _____

5.   Has this case been previously filed in this District
Court? _Yes_ (Yes or No)  If yes:

Judge: _Ferguson___   Case No. __95-0367-CR-Ferguson____
(Attach copy of dispositive order)

Has a complaint been filed in this matter? _No_ (Yes or No)
If yes:

Magistrate Case No. _____!_____

Related Miscellaneous numbers: _____

6.   This case originated in the U.S. Attorney's office prior
to August 16, 1985 __No___ (Yes or No).

                                   _Steven R. Petri_

                                   STEVEN R. PETRI
                                   ASSISTANT UNITED STATES ATTORNEY
                                   Court No. A5500048

**EXHIBIT "C"**

Judgment, pp. 1,3

AO-245 (Rev. 4/90)

# UNITED STATES DISTRICT COURT
## Southern District of Florida

UNITED STATES OF AMERICA

v.

MITCHELL HAMMER
Register No. 48828-004
Defendant.

Case Number: 95-367-CR-FERGUSON

Adrienne Rabinowitz, Assistant U.S. Attorney
Stephen Petri, Assistant U.S. Attorney

## JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After November 1, 1987)

The defendant, MITCHELL HAMMER, was represented by Scott Srebnick.

On motion of the United States the court has dismissed all remaining counts.

The defendant pleaded guilty to count(s) 1, 71 and 83. Accordingly, the defendant is adjudged guilty of such count(s), involving the following offense(s):

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 USC 371 | Conspiracy to Commit Bank Fraud Securities Fraud, Money Laundering, and Making False Statements in a Bankruptcy Proceeding | 5/93 | 1 |
| 18 USC 1956 | Money Laundering | 6/26/92 | 71 |
| 18 USC 152 | Making False Statements in a Bankruptcy Proceeding | 5/18/93 | 83 |

As pronounced on **February 28, 1997**, the defendant is sentenced as provided in pages 2 through 4 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant shall pay to the United States a special assessment of $150.00, for count(s) 1, 71 and 83 of the indictment, which shall be due immediately.

It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid.

Signed this the 28th day of _____February_____, 1997.

WILKIE D. FERGUSON, JR.
UNITED STATES DISTRICT JUDGE

Defendant's SSAN: 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
Defendant's Date of Birth: 6/19/52
Defendant's address: 3576 Coral Springs Drive, Coral Springs, Florida 33065

Judgment—Page 2 of 4

Defendant: MITCHELL HAMMER
Case Number: 95-367-CR-FERGUSON

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of SIXTY (60) MONTHS AS TO COUNTS 1 and 83, ONE HUNDRED and EIGHT (108) MONTHS AS TO COUNT 71, TO RUN CONCURRENTLY.

The Court makes the following recommendations to the Bureau of Prisons: 1. DEFENDANT TO RECEIVE CREDIT FOR TIME SERVED AS APPLICABLE BY STATUTE. 2 DEFENDANT TO BE DESIGNATED TO A MINIMUM SECURITY FACILITY, FEDERAL PRISON CAMP, MIAMI.

The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons MONDAY, JUNE 30, 1997.

### RETURN

I have executed this Judgment as follows:

_____
_____

Defendant delivered on _____ to _____
at _____, with a certified copy of this Judgment.

_____
United States Marshal

By _____
Deputy Marshal

......ant: MITCHELL HAMMER
Case Number: 95-367-CR-FERGUSON

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of THREE (3) YEARS AS TO COUNTS 1, 71 AND 83 OF THE INDICTMENT, TO RUN CONCURRENT.

While on supervised release, the defendant shall not commit another federal, state, or local crime; shall not illegally possess a controlled substance; shall comply with the standard conditions that have been adopted by this court (set forth below); and shall comply with the following additional conditions:

1. If ordered to the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

2. If this judgment imposes a fine, special assessment, costs, or restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine, assessments, costs, and restitution that remain unpaid at the commencement of the term of supervised release.

3. The defendant shall not own or possess a firearm or destructive device.

4. The defendant shall not engage in any business that offers securities, investments or business opportunities to the public. The defendant is further prohibited from engaging in telemarketing, direct mail or national advertising campaigns for business purposes.

5. The defendant shall be prohibited from incurring new credit charges or opening additional lines of credit without approval of the probation officer.

6. The defendant shall be required to provide full financial disclosure to the probatoin officer as requested.

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on supervised release pursuant to this Judgment:

1) The defendant shall not leave the judicial district without the permission of the court or probation officer.
2) The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month.
3) The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.
4) The defendant shall support his or her dependents and meet other family responsibilities.
5) The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.
6) The defendant shall notify the probation officer within seventy-two hours of any change in residence or employment.
7) The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute or administer any narcotic or other controlled substance, or any paraphernalia related to such substances.
8) The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.
9) The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer.
10) The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer.
11) The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.
12) The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court.
13) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

....... MITCHELL HAMMER
Case Number: 95-367-CR-FERGUSON

## RESTITUTION AND FORFEITURE

## RESTITUTION

The defendant shall make restitution in the amount of $250,000.00 to the following persons on a pro rata basis:

## NAME OF PAYEE

Bank of America
(Continental Bank)
231 South Lasalle Street
Chicago, IL 60697
Attention: Edward Hall

Mollie Shapiro
North Park Retirement Center
2480 North Park Road
Hollywood, FL 33021

Frederic Vechery
2740 N.W. 106th Avenue
Coral Springs, FL

Albert F. Margus
621 S.W. Maypop Court
Boca Raton, FL

Harvey Gaffen
3049 Maple Leaf Drive
Glenview, IL 60025

Vincent O. Vila
104 Warley Circle
Cary, NC 27513

Solomon Brown
8285 Sentinse Chase Drive
Roswell, GA 30076

Andrew Restivo
599 N.W. 10th Court
Boca Raton, FL

Fred Pelletier
9200 Park Boulevard, #302
Seminole, FL

Charles B. Ganz
Ganz Capital Management, Inc.
2875 N.W. 191st Street, PH 1
North Miami Beach, FL 33180

Nicholas Maounis
River Road International
99 River Road
Cos Cob, CT 06807

Alan Winters
Kingdom Capital Management, Inc.
152 West 57th Street
New York, NY 10019

EXHIBIT "D"

Letzelter Change of Plea Hearing, p. 14

CASE # ___95- CR -367- WDF



# "Do Not Scan or Copy This Transcript."

DE # ___353___

*UNITED STATES DISTRICT COURT*
*SOUTHERN DISTRICT OF FLORIDA*
*MIAMI DIVISION*

**THE UNITED STATES OF AMERICA,**

                         Case 95-367-Cr-WDF

          Plaintiff,

    vs.                    **MIAMI,** *FLORIDA*
                              JULY 26, 1996

**JOSEPH LETZELTER,**

          Defendant.

---

**TRANSCRIPT OF CHANGE OF PLEA HEARING**
**BEFORE THE HONORABLE WILKIE D. FERGUSON, JR.,**
**UNITED STATES DISTRICT JUDGE**

APPEARANCES:

FOR THE GOVERNMENT:

                    **STEVEN R. PETRI and**
                    **ADRIENNE RABINOWITZ, A.U.S.A.s**
                    99 N.E. 4th Street
                    Miami, FL   33132 - 305/961-9419

FOR THE DEFENDANT:

                    **DONALD SPAIN and**
                    **MARK JACOBS, ESQS.**

REPORTED BY:

                    **BARBARA MEDINA, RPR-CP**
                    *Official Federal Court Reporter*
                    Federal Justice Building, Ste. 1067
                    99 Northeast 4th Street
                    Miami, FL   33132 - 305/358-4642

353

# NOT

# SCANNED

**PLEASE REFER TO COURT FILE**

EXHIBIT "E"

Letzelter Sentencing Transcript, p. 20

CASE # 95-cR-367-WDF



# "Do Not Scan
# or Copy This
# Transcript."

DE # _____

# NOT

# SCANNED

## PLEASE REFER TO COURT FILE

EXHIBIT "F"

Letzelter Plea Agreement

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA            CASE NO.

v.                                  **PLEA AGREEMENT**

JOSEPH LETZELTER
_____/

The Office of the United States Attorney for the Southern District of Florida (hereinafter referred to as the "United States") and JOSEPH LETZELTER (hereinafter referred to as the "defendant") enter into the following agreement:

1.   The defendant agrees to plead guilty to two felony counts relating to his employment at Sheffield Industries, Inc., in an indictment which charges the defendant with conspiracy and money laundering offenses. Specifically, the defendant agrees to plead guilty to a charge of conspiring to commit bank fraud, in violation of Title 18, United States Code, Section 1344; and securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a); all in violation of Title 18, United States Code, Section 371. The defendant also agrees to plead guilty to engaging in money laundering transactions, in violation of Title 18, United States Code, Section 1957.

2.   The defendant agrees and understands that the relevant amount of actual, probable or intended loss resulting from the bank fraud and securities fraud in this case for sentencing purposes, pursuant to Section 2F1.1 and Section 1B1.3 of the Federal Sentencing Guidelines and Policy Statements, exceeds $20 million. The defendant also agrees and understands that the value of the

funds in the money laundering transactions in this case for sentencing purposes, pursuant to Section 2S1.1 and Section 1B1.3 of the Federal Sentencing Guidelines and Policy Statements, exceeds $4.1 million.

3. With respect to the conspiracy to commit bank fraud and securities fraud only, the defendant agrees and understands that as a factual basis:

a. the conspiracy involved more than minimal planning and, therefore, his sentencing guideline level should be increased by two (2) levels pursuant to Section 2F1.1(b)(2) of the Federal Sentencing Guidelines and Policy Statements;

b. he should also receive a two-level upward adjustment in his sentencing guideline level pursuant to Section 3B1.3 of the Federal Sentencing Guidelines and Policy Statements for his use of a special skill as an accountant in committing this offense; and-

c. he should also receive a two-level upward adjustment in his sentencing guideline level pursuant to Section 3C1.1 of the Federal Sentencing Guidelines and Policy Statements based upon obstruction of justice.

4. The United States agrees that it will not oppose the defendant's request that the sentencing court reduce by three (3) levels the offense level applicable to the defendant's offense, based upon the defendant's recognition and affirmative acceptance of personal responsibility, pursuant to Section 3E1.1 of the Federal Sentencing Guidelines and Policy Statements. This agreement by the United States is conditioned upon the defendant

2

making a full, accurate and complete disclosure to the probation office of the circumstances surrounding the defendant's relevant conduct.

5.     The United States agrees that it will not oppose the defendant's request that the court impose a sentence at the lower end of the guidelines range applicable to the defendant.   The United States reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the defendant and his background.

6.     The United States agrees that it will not recommend an upward departure from the defendant's sentence pursuant to Section 5K2.0 of the Federal Sentencing Guidelines and Policy Statements. The defendant further understands and agrees that the court may depart upward from the sentencing guidelines range despite any recommendation to the contrary by the United States, and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed if the court chooses not to follow any recommendation or request.

7.     The defendant agrees that he shall cooperate fully with the United States, the Federal Bureau of Investigation, the Internal Revenue Service, and any other federal, state, or local law enforcement or regulatory agency as the United States may require.   As used in this agreement, the terms "cooperate" and "cooperation" require the defendant to:

3

a.   respond truthfully and completely to any and all questions or inquiries that may be put to him, whether in interviews, before a grand jury or at any trial or other court proceeding;

b.   attend all meetings, grand jury sessions, trials and other proceedings at which his presence is requested, or compelled by subpoena or court order;

c.   produce voluntarily any and all documents, records, or other tangible evidence relating to the matters about which he is questioned.

8.   Should it be determined by the United States that the defendant has intentionally given false or misleading testimony or information, including falsely implicating any person or entity, or has otherwise violated this agreement, such as by seeking to withdraw his plea of guilty, then the defendant is subject to prosecution for all federal criminal violations known to the United States, including but not limited to perjury, obstruction of justice and making a false statement.

9.   The United States reserves the right to evaluate the extent, nature and quality of the defendant's cooperation and to advise the court of such at the time of sentencing. If in the sole judgment of the United States, the defendant's cooperation is of such significance to the investigation and prosecution of another person so as to warrant the court's departure from the sentence required by the guidelines, the United States may make a motion pursuant to Title 18, United States Code, Section 3553(e) and

4

Section 5K1.1 of the Sentencing Guidelines and Policy Statements reflecting that the defendant has provided substantial assistance. The defendant acknowledges and agrees, however, that nothing in this agreement may be construed to require the United States to file such a motion. Furthermore, the defendant acknowledges and agrees that the court is under no obligation to grant this motion pursuant to Title 18, United States Code, Section 3553(e) and Section 5K1.1 of the Sentencing Guidelines and Policy Statements, should the United States decide to file such a motion.

10. The defendant understands and agrees that the court may impose any sentence authorized by law and that the defendant may not withdraw his plea solely as a result of the sentence imposed. The defendant also understands and agrees that the court may impose a statutory maximum term of imprisonment, a period of supervised release, a fine and restitution as follows:

a. conspiracy to commit bank fraud and securities fraud, in violation of Title 18, United States Code, Section 371 - five (5) years of imprisonment, 3 years of supervised release, $10,000 fine and restitution; and

b. money laundering, in violation of Title 18, United States Code, Section 1957 - ten (10) years of imprisonment, 3 years of supervised release, $250,000 fine or twice the amount of the criminally derived property involved in the money laundering transactions, whichever is greater, and restitution.

11. The defendant understands and agrees that, in addition to any sentence imposed under paragraph 10 of this agreement, a

5

special assessment in the amount of $100 will be imposed on the defendant.

12. The defendant is aware that the sentence will be imposed in conformity with the **Federal Sentencing Guidelines and Policy Statements.** The defendant is also aware that a sentence imposed under the guidelines does not provide for parole. Knowing these facts, the defendant agrees that the court has jurisdiction and authority to impose any sentence within the statutory maximum set for his offenses.

13. The defendant is aware that the sentence has not yet been determined by the court. The defendant is also aware that any estimate of the probable sentencing range that he may receive from his counsel, the United States or the probation office, is a prediction, not a promise, and is not binding on the United States, the probation office or the court.

14. This agreement is limited to the United States Attorney's Office for the Southern District of Florida and, as such, does not and cannot bind other federal, state, regulatory or local prosecuting authorities. The defendant waives any claim of Double Jeopardy based upon this agreement, to the extent that it could be asserted in any civil or regulatory proceeding which may be brought against the defendant by the United States or any agency thereof.

6

15.  This is the entire agreement and understanding between the United States and the defendant. There are no other agreements or understandings between the parties.

Respectfully submitted,

KENDALL COFFEY
UNITED STATES ATTORNEY

DATE: _11/10 94_    By: _Steven R. Petri_

STEVEN R. PETRI
ASSISTANT UNITED STATES ATTORNEY
COURT NO. A5500048

DATE: _11/10/94_    By: _Eloisa M. Delgado_

ELOISA M. DELGADO
ASSISTANT UNITED STATES ATTORNEY
FLORIDA BAR NO. 099768

DATE: _11/10/94_

_DONALD F. SPAIN_
ATTORNEY FOR DEFENDANT

Date: _11-10 -94_

_Joseph Letzelter_
JOSEPH LETZELTER
DEFENDANT

7

EXHIBIT "G"

Letter from Hammer to Seitel, 5/26/98

Mitchell Hammer-#48828-004
F.P.C. Miami
P.O. 979137
Miami, Fl.   33197
May 26, 1998

Mr. Ian Seitel
110 S.E. Sixth Street
Suite 1650
Ft. Lauderdale, Fl.   33301

Dear Ian,

Previously, I wrote to you and expressed concern about the fact that we are not raising the "ineffective assistance of counsel" issue in the direct appeal with the Court of Appeals. Despite the fact that during one of our recent telephone conversations, you told me that you felt that this was an issue that should properly be raised under a §2255.

Though I am not an attorney, nor am I versed in the law as you, just logically, it appears to me that if the ineffective assistance of counsel issue is not raised now on direct appeal, then potentially I have to hurdles to climb over. The first issue should focus on the reasons that you as appellate counsel didn't raise the issue on direct appeal, and secondly the actual ineffective assistance of counsel in the lower court proceedings.

I am very, very concerned about being procedurally barred for not having raised the issue. I ask that you rethink this issue once again, **before** filing the direct appeal, and if my point has merit, perhaps we need to request another extension of time, so that I do not lose the opportunity. Neal Sonnett's performance, or should I say the lack of it, should lead to a more than decent chance to vacate the sentence.

Obviously, this is a critical analysis to me and my family. Thanks for looking at the issue once again.

Sincerely,

*C. Her*

Mitchell Hammer

EXHIBIT "H"

Letter from Hammer to Neal Sonnett, re: Status, 8/24/95

Mitchell Hammer
1501 Lantana Ct.
Ft. Lauderdale. Fl. 33327
(305)-389-5902

August 24, 1995

*Sent Via Telecopy(305)358-1233*
Mr. Neal Sonnett
2 S. Biscayne Blvd.
26th Floor
Miami, Fl.

Dear Neal:

I hope that this note finds you doing well. It is approaching three months since the indictment and I am wondering what if anything is going on. I am somewhat surprised that I have not heard anything from you at all. I keep hearing brief updates from Mike Mandelblatt and miscellaneous tidbits from others.

To date, I have heard that there are at least four people who have signed plea agreements. I have heard indirectly what the deal is expected to be for at least one of these arrangements.

I have also heard that there were meetings with the prosecution regarding the discovery information. Further. Mike had mentioned to me that there was going to be a hearing regarding whether or not the prosecution or the defendants were to bear the cost of duplicating the "100's of 1000's of documents".

I am wondering whether there is any other activity or motions in process. Do all of the defendants have attorneys? How soon will the trial da`e b` set? Do you have any better idea as to how far out this date might be?

EXHIBIT "I"

Letter to Sonnett from AUSA Petri, 7/24/95



**U.S. Department of Justice**

*United States Attorney*
*Southern District of Florida*

*99 N.E. 4 Street, Suite 800*
*Miami, Florida 33132-2111*

July 24, 1995

Neal R. Sonnett, Esq.                    David Tucker, Esq.
One Biscayne Tower                       Douglas Center
2 South Biscayne Blvd.                   2600 Douglas Road
Suite 600                                Suite 1108
Miami, FL 33131                          Coral Gables, FL 33134

Michael S. Pasano, Esq.                  Shereen J. Charlick, AFPD
Zuckerman, Spaeder, Taylor & Evans       150 W. Flagler Street
201 S. Biscayne Blvd.                    Suite 1700
Suite 900                                Miami, FL 33130
Miami, FL 33131

William L. Richey, Esq.
200 S. Biscayne Blvd.
Miami, FL 33131

        Re:  Sheffield Industries

Gentlemen & Madam:

        Attached are copies of two bids we received concerning the
copying and batestamping of the 174 boxes of documents currently in
the government's possession. As you can see, the quoted prices are
extremely high.

        By the end of September, I hope to have the number of boxes
cut down to the range of ten or twenty in number. At that point,
it would be much more feasible to discuss copying and batestamping
these records. In the meantime, you are all free to begin
reviewing any of the 174 boxes by making an appointment with me so
that I can arrange to have an agent present to provide access to
the records.

I look forward to seeing you at the status conference on the 28th of this month at 10:30 a.m.

Sincerely,

KENDALL COFFEY
UNITED STATES ATTORNEY

By:  Steven B. Petri
Steven R. Petri
Assistant United States Attorney

SRP/mb
Enclosures

MAILING ADDRESS:
P.O. Box 331067
Miami, FL 33233-1067

**INVOICE**



EIN 65-0285170

# BLACK'S
## PHOTOCOPY SERVICE, INC.

19 W. FLAGLER STREET, LOBBY SUITE/MIAMI, FL 33130/(305) 374-7826

CUST # *Marleen Feldman*
*U.S. Atty OFFICE*
*99 N.E. 3rd Ave., 4th floor*

DATE: 7-14-95
P.O. #:
CONTACT:
ORDER #:
TELEPHONE 536-4030

JOB TITLE    *108 Boxes of exhibits.*

| ITEM - CODE | QTY. | DESCRIPTION | UNITS | PRICE | TOTAL |
|---|---|---|---|---|---|
| 043. | | 406,000 COPIES @ .10ea | | | 40,600.00 |
| 001 | | 406,000 Bates Stamping | | | 16,240 |
| | | WITH NO. appox. 4 month | | | |
| | | w/o No appox 3month | | | |
| | | ALL PERFORATED Docs. must be allow | | | |
| | | to tear apart For Copying. | | | |

**TERMS –NET 30 DAYS** Past due accounts are
subject to a service charge of 1½% per month
plus reasonable attorney's fee and court costs if
necessary for collection.

Received by: _____ Date _____ Check No _____

TERMS:

SUBTOTAL:  $56,800.00

TAX:
SUBTOTAL.
FREIGHT.
TOTAL

AMOUNT DUE:

PLEASURE TO SERVE YOU



Photocopying • Digital Printing • Document Imaging • Management Services

July 18, 1995

Marlene Feldman
United States Attorney's Office
99 N.E. 4 Street
Miami, Florida 33131

Dear Mrs. Feldman,

Thank you for the opportunity to allow my company to bid on the U.S. V.
Mitchell Hammer case.

After looking into all 167 boxes and accessing this document production,
the boxes fall into one of five categories from a grade of A-E,( please see
attached Service Fees for the definitions).

Over 55% of this project falls into the D and E grades and the remainder
for the exception of 4 boxes fall into the C and D grades.

Please note although my estimate of 512,000 documents does not
equate to 512,000 copies it reflects the number of documents contained in the
167 boxes. To be cost effective, documents less than 8.5 x 11 will be copied
several to a page which will bring down this number considerably based on the
number of checks contained in several boxes.

Please note since this production involves bates numbering I will
personally keep track of the bates numbering sequence and updates. This
service will be provided at no charge.

Please note that the two quotes are predicated on either the document
production going through a page for page check through our quality control
specialist and the other with an industry standard check that does not involve a
page for page check against the original.

Once again thank you for your time and consideration. Please feel free to
call me any time if you, Mr. Petri or Ms. Delgado have any questions.

Sincerely,

Cesar O. Castillo

EXHIBIT "J"

Memo from Hammer to Sonnett, re: Mandelblatt's death, 9/8/96

Memo To:     Neal Sonnett
     From:   Mitch Hammer
Date:         Sunday, September 8, 1996

## PLEASE NOTE THAT THERE IS AN IMPORTANT CORRECTION AT THE END OF PARAGRAPH ONE WHEN COMPARED TO THE FAX SENT TO YOUR HOME LAST NIGHT!

Neal, this is the third draft of this memo. Since the news of Michael Mandelblatt's suicide, I have continued to think and rethink our plight. I have asked myself whether or not there was anything that could have prevented Mike's death. As you know, he and I were best friends for the last 12 years. We shared thoughts and feelings with each other that we didn't even share with our families. I loved Michael Mandelblatt as much as anyone could love any person. Michael was one of the finest human beings that ever was on the face of this earth. He touched many, many people, young and old, always giving of himself and made life better for those whom he embraced. It is pathetic that his brilliance and love has been wasted. He was always doing for others even at his own expense. I feel deeply that his death is just another example of that, and **NOT** (this word was omitted in the original fax to you) some act of emotional imbalance. He was very, very analytical and had reasons for everything that he did and said in his life.

In this regard, I would like to ask you to arrange for me to have the opportunity to meet with and speak directly to Mr. Petri. I would like to convey some of Mike's thought process and the reasons leading to his death directly to Mr. Petri. I would like to look at Mr. Petri's eyes when I convey that which I feel I must. Please let me know if this is possible in the next few days. I will make myself available at any time that is convenient for Mr. Petri, before, during or after office hours.

The singular core issue regarding Mike's giving up, was due to his financial situation coupled with what he deeply felt was the government's extreme position and relative proposed penalty for that which occurred. Mike said to me at least one hundred times during the last couple of years, that he just did not know how to bridge the financial dilemmas of an extended incarceration period, and did not want to subject his family to the financial and emotional trauma associated therewith. Further, he told me that if the government's most recent plea agreement was accepted that he would be spending half of that which he estimated to be the remainder of his life in prison. The combination of these two factors led to his decision.

My situation is actually worse than that of Mike's. As you and Mr. Petri both are aware, on July 10, the IRS seized our personal property. My family still has not recovered from this traumatic event. The IRS recovered a net of US$12,000 against a $1,500,000 debt. We have no income and are desperately awaiting our first unemployment checks. We tried to obtain emergency food stamps, but were told that we were not eligible because we owned automobiles that have a value in excess of $6,500, despite the fact that there was negative equity in both. Last week, I voluntarily turned in my car to Capital Bank, being unable to make the payments. We are working diligently to re-establish an income stream, but nothing is in sight.

So, when I think about the government's position of a nine year plea agreement, I struggle terribly. Even if Harriet is able to secure a position, based upon her qualifications should will max out at a $400 per week level before taxes. It is virtually impossible to sustain a family of three (assuming that I am incarcerated) based on this income. Even if there was a stroke of luck that allowed her to earn more, or if we received some assistance from some currently unknown source, the financial dilemmas of surviving for a period of nine years or thereabouts, is incongruous.

I am willing to "accept responsibility" and plea as I have been from the very beginning, but nine years, for that which was done is ridiculous, despite the guidelines that exist. The money laundering issue is definitely the complicating one when calculating or "running the numbers". The so-called money laundering was an attempt to put an end and fix the problems that existed at the company relative to pre-billing. The idea was Mike's and Joe Letzelter's. Had we left well enough alone, we would be facing the fraud charges and not money laundering ones, all of which we lead to a very different end result relative to the point system.

In order for me to plea, first of all, I would like to know the plea agreements that every other person has agreed to. To date, Steve Merrill's is the only one that you have shared with me. I agree that I should receive a greater penalty than the others, but it should be proportionate. I think that the ranking of penalties should be the worst for Joe Letzelter as he should have been ranked by the government as #3 of the most culpable defendants in the case other than Mike and me.

Joe Letzelter was at the core of the fraud and the money laundering. He was a vital part of the "brain trust" with Mike. Yes, I was Chairman of the company, and expect that I will be penalized more than the others, even though we operated the company more in a committee fashion. Letzelter and Mike were inseparable, and in fact, Letzelter thought through the details of that which was done and corroborated with Mike. Mike, thereafter, would come to me, to TELL me what he and Letzelter were doing in the financial area as I did not interfere with their decisions.

Unlike my other two drafts, I am going to get it short here. I am willing to ask you to negotiate a plea on my behalf, providing that it does not exceed five and a half years or ten percent more than that which Letzelter receives, which ever is less. If the government's position remains the same, despite their "freaking out" over Mike's death, I want the benefit of reevaluating after your meeting tomorrow. As I mentioned above, knowing Mike like I did, I am sure that part of his thought process was to send a message to Mr. Petri that all of this is really much more than "running numbers". It is about families and life. If I can't make sense of a plea agreement relative to my family surviving through the incarceration period, I most probably want to go to trial, particularly in light of Mike's death.

Though I don't want to use this memo as the time to share my thoughts regarding the substance of our meeting last week, but I do want to tell you that it was very uncomfortable for me. I have always been forthright with you. I believe in my heart that the issue is money, just as it was for Mike Pasano. You are entitled to have whatever feelings you do, but the ones regarding the computer are totally off base..... TOTALLY!!!!

Lastly, I want you to know, that it is my intention to dedicate my life to communicating Mike's thoughts and feelings about this entire process. I want the world to know what has happened here. I want to try to help others to avoid reaching the same conclusion and taking the same actions.

P.S. Also, so that you are aware, the memo that Mike Pasano drafted and filed with the court relative to Mandelblatt's representing himself, were NOT Mike Mandelblatt's request. Mandelblatt and Pasano discussed the possibility of Mandelblatt representing himself, but DID NOT authorize Pasano to file this motion. Further, Mandelblatt DID NOT read or see this motion prior to its being filed. When I called him after our meeting last week and told him about it, he said that "it didn't matter"........ But the bottom line, is that Pasano inappropriately filed this motion......

EXHIBIT "K"

Memo to Neal Sonnett, re:  IRS Seizure on July 10, 1996

*Private & Confidential—Attorney Client Privilege*

Memo To:    Neal Sonnett
       From:  Mitch Hammer
       Date:  July 25, 1996
       Summary:  IRS Seizure on July 10, 1996


At approximately 11:30 AM on Wednesday, July 10, 1996, Mrs. Janet Fojo, an Internal Revenue Officer from the Plantation office of IRS, along with approximately four other people from IRS, arrived at our home at 1501 Lantana Court, Ft. Lauderdale, together with two or three officers from the Broward Sherriff's Office. At the time, I was showering. Harriet answered the front door. The police advised that they were here with IRS because of a court approved seizure notice. Harriet asked if they could all wait a moment so that she could tell me to get out of the shower and come to the front door, and also to tell our daughter, Rachel, who was home sick with 103 degree temperature. The request was ignored and they all just barreled through the front door. The police saw me in the shower as Harriet came in to tell me.

Once I came out of the shower, the police told me why they and IRS agents were present. The police officers said that they were not going to remain providing we promised that there would be no trouble. We assured them that we would not make any problems. The officers left.

Mrs. Fojo, who was the lead IRS agent, asked Harriet and me if we had $335,000 to satisfy the amounts owed in order to prevent this action. We advised her that we did not have such funds. I asked her if there was anything that could be done to avoid the action that she was about to take. She answered by saying, "Today is not a day for negotiating". She then asked if Harriet and I intended to be present for the taking of the inventory. We confirmed that we would.

Just as the process began, I called Gary Rosen, an attorney at Becker & Poliakoff, who in turn had a bankruptcy attorney from their office call me back. After speaking with him, I then approached Mrs. Fojo and asked her if Harriet and I went downtown to the Bankruptcy court to file, would she stop the process of the seizure. She said that if we left to file for bankruptcy that she would call the moving company and get ten more men to move faster to seize everything.

As the process began, she had Harriet remove family pictures from picture frames and began to inventory our property. The process was not a very organized one. Inventory was being taken in several parts of the home at the same time. In addition to the trauma, it was very difficult to keep up with that which was happening so as to be certain that everything was properly inventory. We now know that there are several items that were not detailed on the final lists furnished to us. Shortly after the process began, the movers arrived with two trucks and approximately five or six men.

After the process continued for approximately 1 ½ hours, I asked Mrs. Fojo if she intended to remove the three computers in the work study. She said that she intended to do so. I then told her that there was a tremendous amount of information (files) that were personal to me as well as my son, David. One of the machines is a home made machine by David. The other two machines, one an IBM Model 90 and a Packard Bell were used for business. The IBM Model 90 I have used from the early stages of Sheffield, while the Packard Bell has been used primarily since Sheffield, be it during the start up of my efforts to do import/export business and/or during my employment at Daniel Mink Watch Corp.

I made very, very clear to Mrs. Fojo that these files were critical to us, and further that one of the machines had files that pertained to the criminal case. I told her that the quantity of the files were so great that I needed my son's help to copy them to his tape drive, as I do not know how to do this.

David is employed during his summer school vacation. Mrs. Fojo advised me to go and pick up David from his job if I needed his assistance. I asked once more if I could keep the machines over night and finish the copying process, but again Mrs. Fojo said that she would not permit this. So, I left the house to pick up David at approximately 12:40PM and returned back at approximately at 1:40PM with David. Upon our return, Mrs. Fojo advised us that Mr. Britt, one of the Internal Revenue agents was very knowledgeable about computers and was going to sit in the work study to insure that David and I would not do anything to "damage the equipment". The work study is a room that is ten feet by ten feet approximately. Desks were positioned in U-shaped configuration around the parimeter of the room. Mr. Britt sat on a chair in the open part of the U, so as to be able to monitor activity on all three machines simultaneously.

David began with his machine and attempted to use his tape drive to back up the information on his machine. He was not able to get the tape drive working. He then decided to transfer files to his Internet site. Based upon the original number of files that he wanted to transfer it would have taken nearly 2 hours to accomplish this. It was now after 2 PM. David reduced the number of files he was going to transfer to his internet site, and started this process. The reduced number of files was going to take about 40 minutes.

Once this procedure was underway, David and Mr. Britt engaged in continuous discussions about how David constructed his machine, the types of accessories connected to it and equipment and software discussions in general. Being nowhere as knowledgeable, I did not understand everything they were discussing. Further, I was going through the directories on the other two machines to scope out the number of files and their respective sizes, so that we could estimate the length of time needed to copy these files. Then, David, Mr. Britt and I calculated that it would take between 9 and 10 hours to copy the critical files from the IBM Model 90 and the Packard Bell. Within moments of doing this calculation, the moving people were already coming into the room and reaching over the top of us to remove pictures from the walls. This was

uncomfortable. We asked the moving people when they were planning to remove the equipment in the room. The response was that they were ready to begin doing so.

I then turned to Mr. Britt and asked him what should we do. I told him multiple times that the files were critical to me. He told us to just do our best. Then I told him that I was very concerned about the movers taking the machines and leaving the files on them. I told him that I did not want anyone having access to the information. He told me to "erase the data". He said "I don't care, go ahead and erase it." I asked him multiple times whether or not he was sure that was what he wanted me to do. He confirmed it.

It was now approximately 2:30PM when we began to erase the information. We began this process with the Packard Bell. The way we erased the data, was by using Norton Utilities Version 8.0, and a command known as "WipeInfo". More specifically, within WipeInfo. Following the completion of this, we then did a command called Format/u. Immediately following the completion of this, we began to disconnect the Packard Bell, because the moving men were ready to begin taking the equipment from the room. While all of this was under way, we began a similar procedure with the IBM Model 90.

You called shortly thereafter. When I told you what was occurring, you asked me to pass the phone to Mrs. Fojo. Following your discussion with Mrs. Fojo, she then made a couple of other telephone calls. I left her and went back to begin disconnecting the equipment. David had a hornet's nest of wires in the work study. I began to place one piece of equipment in the hallway on the floor at a time as we disconnected the equipment. First one of the printer's, the Epson 8000 to be specific, and then the monitor for the Packard Bell, and then the Packard Bell CPU. During all of this Mrs. Fojo was making her calls, while Mr. Britt continued to remain with us in the room.

Somewhere around 5PM, Mrs. Fojo came into the room and asked me what files had I erased. I told her that there were nearly thousands of files that were erased and that there was no possible way for me to detail the files to her. She pressed at me several times. Then she asked me why we did that, and I told her that we were following Mr. Britt's instructions. Mr. Britt was present, as was David during Mrs. Fojo's questioning. Mr. Britt confirmed that he told us to erase the data.

Mrs. Fojo and Mr. Britt walked out of the room and went over to the laundry room about 15 feet away to talk in private. Minutes later, they returned and told us that they had decided that we could keep all of the computer equipment, some of the desks, one of three chairs, but no lighting. She told us that she spoke with council to the IRS. She said that the IRS did want to interfere with the criminal case. I told her that the data was gone and that she might as well take the machines. She ignored the comments and left the room. Mr. Britt then helped to carry the equipment that I had placed in the hallway, back into the room. The Epson 8000 printer was already packed in a shipping carton, so we pulled that carton back into the room.

You then called me back at 5:30 PM. I took the call in the work study. Mr. Britt and Mrs. Fojo were not in the room at that time. After you and I spoke, one of the movers came into the room to remove David's electronics, lighting, some of the desks and drawers and two of the chairs. We finally completed the emptying of the room by about 6:15 PM.

By the way, after they took that which they wanted, I took pictures of the room and the condition in which it was left. In addition, I had a separate study on the other side of the house, which had a large work desk and many of my files in my desk and free standing drawers. They emptied all of my papers out and made a massive pile on the floor by the entrance to the walk in closet in that room. I also have pictures of the papers and the condition in which they left this room as well. A total mess! I still don't have everything reorganized.

Currently, the only machine that David and I are using is David's machine. All of the other equipment is idle.

EXHIBIT "L"

Memo to Scott Srebnick, "Events Leading to Plea Agreement", 2/17/97

Date:        **February 17, 1997**
Memo To:     **Scott A. Srebnick**
Memo From:   **Mitch Hammer**
Subject:     **Events leading to Plea Agreement**

1-A foreclosure proceeding on our $1,300,000 home in Weston, pursuant to which we lost our equity of approximately $400,000, culminated in October 1994, when we vacated the property, and relocated to a rental property in Weston.

2-Neal Sonnett was retained as counsel mid to late 1993. There was no engagement letter, but there was an understanding relative to fees: (1) $50,000 for "pre-indictment" work and $150,000 for trial work. Neal was advised of our financial situation at the time of engagement, with the clear indication that the "trial fees" would have to come from the sale of our home. Unfortunately, we were not able to sell it prior to Coral Gables Federal foreclosing on the property because of our inability to pay the mortgage. The possibility of paying Neal would evolve from new income or borrowed funds, both of which were difficult at best. Throughout the process, Neal was appraised of my finances, and the low probability of being able to pay.

2-The date of the indictment was June 1, 1995. I voluntarily surrendered to the U.S. Marshall.

3-Despite what I believe was two attempts, Neal was unable to reach any accord with the U.S. Attorney's office relative to my cooperation with the government, in an effort to reach a palatable plea agreement, other than their proposed nine (9) year arrangement, which was proffered prior to the indictment.

3-Trial date was set for September 17, 1996.

4-Neal and I spoke early July. He told me that "we would have to do something" upon his return on **July 8. If funds were not available to pay him, he would have to move to withdraw.** I told him I understood.

5-On July 10, 1996, the IRS seized all of our personal property. A copy of the memo in which I summarized the events of this traumatic day are attached.

6-Meanwhile, Neal and I had not met and to the best of my knowledge there was little or no preparation done for trial. I was never asked to meet and/or review the 100,000 documents involved in the case. I received little or no correspondence from Neal throughout the process. My conclusion was and still is that due to the lack of payment, he was not able to allocate his time to properly prepare.

7-On July 25, I prepared a memo for Neal Sonnett to summarize the IRS seizure activity and the relevant destruction of computer files for the criminal case. Note that this information was compiled by Michael Mandelblatt and me together. Michael Mandelblatt and I met with Neal Sonnett and Michael Pisano days later at Pisano's office. Our request was the Neal file a motion to continue the trial date, so that Mandelblatt and I could attempt to reconfigure all of the data, which we told Neal and Pisano was most likely an impossible task. We discussed the possibility of the case being terminated because of the government's interference. Neal left the meeting and said he had to think about it. Pisano advised Mandelblatt and me after Neal left, that Neal should be the one to file the motion.

7-On August 10, 1996, my family moved into a small townhouse in Coral Springs (our present residence), and borrowed funds from family members to accomplish this. We rented furniture to have the basics, also with borrowed funds.

8-On August 15, 1996, the IRS held an auction of our personal property. My wife, children and I attended the auction. Family members purchased some of the items at the sale. This was a very difficult day for all of us.

9- A month passed from our late July, 1996 meeting. My wife and I met with Neal at his office at the end of August or very early September. Despite significant effort from Mandelblatt and me, Neal advised that he "didn't believe" us and refused to file a motion. Further, he said that "our relationship had deteriorated to a point that he felt that he had to attempt to withdraw from the case"... He assured me and my wife that it had nothing to do with payment. He just said that "credibility had broken down". Despite this explanation, he said that if I decided to plea, he could find it in his heart and conscience to represent me through the plea process. This seemed to be a terrible contradiction to me, but I had little choice.

10-Michael Mandelblatt and I spoke nearly every day, comparing notes, thoughts, and concerns. We were running out of time for trial or any hope of continuance. Then early September, I would guess on or about September 3, Michael Pisano filed a motion to withdraw and stated that Mandelblatt was going to represent himself. This was totally untrue. I confirmed this with Mandelblatt, the day of my meeting with Neal, as described in paragraph 9 above, at which Neal gave me a copy of the motion filed by Pisano, and Neal said to me that we should follow the same course.

11-On September 5, Mandelblatt killed himself.

12-I was called by Michael Mandelblatt's son, Rick, on Friday afternoon at 4PM, September 6, 1996. I was emotionalized distraught. When I spoke to Neal that afternoon, because he called moments after Rick called me, was had emotionally "cracked". Neal heard me on the phone in very bad shape, as did Rick Mandelblatt.

13-To make matters worse, I asked Neal to contact the U.S. attorneys and request permission for me to travel to Philadelphia where Mandelblatt had prearranged his funeral on Sunday, September 8. I personally called my pretrial services officer, then Kathleen Shannon Hunt to request permission. She, too, heard the devastation in my voice. Permission to travel was granted. Neal Sonnett offered to purchase a ticket for me to travel, which was very much appreciated, as I didn't have the funds to do so.

14-Then Rick Mandelblatt called me back and asked that I not travel to Philadelphia and that I remain in Florida with my family. He told me that his family was out of control, shocked by Michael's suicide, and at the moment the blame was on me, and that he thought despite our being best friends for nearly 15 years, that his family was be best, if I didn't travel. The thought that the family blamed me was a very deep heart to me.

15-I had asked Neal to request a meeting for me to convey some of Mandelblatt's thoughts with the U.S. Attorney's office. They denied the request and said that it would not be appropriate.

16-Later that afternoon, Neal called me back to advise me that the U.S. Attorney's office conveyed their sympathy and regrets to me. Everyone expressed their concern for me and my stability. Neal asked me if I thought I needed counseling. Further, Neal conveyed that the U.S. Attorney's office suggested that Neal and I meet with them early the following week (remembering that the trial was slated for September 17). Neal indicated that the U.S. attorney's office wanted to "work out something reasonable" in light of the situation. I agreed to meet.

17-We finally meet on September 11 late in the day at approximately 6 PM at the U.S. Attorney's office. Petrie and Rabinowitz began the meeting by telling me that they were very sorrow about Mandelblatt. That comment alone sent me emotionally spinning.

18-The plea agreement which was put for earlier that day was for the same nine (9) deal that was proffered two years or so earlier. They didn't budge an inch. As I choked and read the final draft at the U.S. attorney's office, I concluded that I had no options, and emotionally I couldn't pull myself together to fight any more. So I surrendered to the process and just signed the agreement. In a strange way, the plea agreement feels like a less drastic form of suicide than that which Mandelblatt committed.

But the conclusion, because of Neal's lack of preparation, my inability to pay, my emotional state, and Mandelblatt's death and the family initial reaction were devastating to the point of just giving up.

IN THE MATTER OF
UNITED STATES V. MITCHELL HAMMER, ET. AL.
Case No. 95-367-CR-Ferguson

EXHIBITS "M" through "X"

Mitchell Hammer
Reg. No. 48828-004
Federal Prison Camp-Miami
P.O. Box 779800
Miami, Fl.    33177

EXHIBIT "M"

Motion to Continue Sentencing, 2/18/97

SCOTT A. SREBNICK
**** ****** *** ****
*****, ******* *****

**** *** ****
************* ****** **** ***

**FAX MESSAGE**

TO: _Mitchell Hammer, Esq._                FAX NO: _954-255-1770_

FIRM _____

FROM   SCOTT A. SREBNICK, ESQ             DATE _2-18-97_

OPERATOR _____                      TIME _6.20 P.M_

NUMBER OF PAGES (including Cover Page): _6_

THE INFORMATION CONTAINED IN THIS FAX MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS NAMED ABOVE. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION, AND AS SUCH, IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR AN AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU HAVE RECEIVED THIS DOCUMENT IN ERROR, AND THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US BY MAIL. THANK YOU.

COMMENTS: _Copy of motion to be filed by FEDEX overnight._

_____

_____

_____

_____

---

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 95-367-CR-FERGUSON

UNITED STATES OF AMERICA

vs.

MITCHELL HAMMER          :     **DEFENDANT HAMMER'S MOTION**
                               **FOR CONTINUANCE OF SENTENCING**

Defendant MITCHELL HAMMER, through undersigned counsel, respectfully moves this Honorable Court for an Order continuing his sentencing hearing, currently scheduled for February 28, 1997, at 8.30 a.m. As grounds and good cause for this motion, defendant Hammer states:

1.    On May 25, 1995, defendant Hammer was indicted on charges including bank fraud, securities fraud, money laundering, and conspiracy to commit same.

2.    On September 12, 1996, four days before the scheduled trial date and less than one week after the suicide of his best friend, codefendant Michael Mandelblatt, defendant Hammer entered a plea of guilty to several charges pursuant to a plea agreement signed on September 11, 1996.

3.    During the time leading up to the entry of the plea and at the time of the plea, the relationship between defendant Hammer and his counsel, Neal Sonnett, Esq., had deteriorated significantly.

4.    Ultimately, the deterioration in the relationship led to Mr. Sonnett's motion to withdraw as counsel of record on January 28, 1997, one day before the scheduled

1

sentencing date.[1]  In that motion, Mr. Sonnett asserted in good faith that the administration of justice would be frustrated if he were to represent defendant Hammer at sentencing. This Court removed the sentencing hearing from the calendar.

5.     By Order dated February 10, 1997, this Court referred Mr. Sonnett's motion to withdraw to United States Magistrate Judge Stephen T. Brown, who scheduled a hearing for February 18, 1997, at 11:00 a.m. This Court also rescheduled the sentencing hearing for February 28, 1997, at 8:30 a.m.

6.     On February 11, 1997, defendant Hammer met with undersigned counsel for the first time to discuss the possibility of representing defendant Hammer in this case. Undersigned counsel met with defendant Hammer for the second time on February 17, 1997, at which time undersigned counsel agreed to represent defendant Hammer in this case.

7.     On February 18, 1997, after questioning defendant Hammer and counsel, Magistrate Judge Brown approved the substitution of counsel. Thus, undersigned counsel has substituted for Mr. Sonnett as counsel of record for defendant Hammer.

8.     Undersigned counsel is mindful that the Court has already twice continued the sentencing proceeding in this case. However, in light of the relationship between Mr. Sonnett and defendant Hammer, it would have been imprudent for Mr. Sonnett to represent defendant Hammer at sentencing.

9.     Undersigned counsel respectfully submits that he is currently not prepared

---

[1] The sentencing date had originally been scheduled for January 17, 1997, but was continued on motion of defendant Hammer.

2

to effectively represent defendant Hammer at sentencing, if the sentencing hearing is held on February 28, 1997. Undersigned respectfully submits that, given the seriousness of this case, the potential deprivation of liberty which defendant Hammer faces, the volume of evidence and discovery, and complexity of the issues relevant to sentencing (including whether the amounts stipulated to in the plea agreement overrepresent the nature of the offense), no counsel entering an appearance at this stage could be adequately prepared for sentencing on that date.

10.    Undersigned counsel, as an officer of the Court, further represents that he has serious concerns about whether he can provide defendant Hammer with the effective assistance of counsel to which defendant Hammer is entitled under the Sixth Amendment without exploring issues related to the voluntariness of defendant Hammer's plea on September 12, 1996. The factors which raise such serious concerns include, but are not limited to, the death of Michael Mandelblatt and the strained relationship between defendant Hammer and his counsel before and at the time the plea was entered. Mandelblatt was defendant Hammer's best friend and the most knowledgeable person with regard to the affairs of Sheffield Industries. Mandelblatt's death, including the manner in which he died and its timing, coupled with the wide communication gap between defendant Hammer and his trial counsel only four days before the scheduled trial date, left defendant Hammer in a state of utter desperation and hopelessness.

11.    In this regard, undersigned has acted expeditiously by requesting that Court Reporter Paul Haferling transcribe the change-of-plea hearing, and by beginning the process of obtaining information from individuals familiar with defendant Hammer's

3

mental state, both now and at the time of the plea.

12.    Accordingly, defendant Hammer respectfully requests a minimum 21 day continuance of the currently-scheduled sentencing hearing, so that undersigned counsel can explore these issues and, at the same time, prepare for sentencing.

13.    Undersigned counsel respectfully notifies the Court that he will be getting married on March 29, 1997, and will be unavailable from March 27, 1997, through and including April 10, 1997, to attend to wedding preparations and to enjoy his honeymoon.

14.    Pursuant to Local Rule 7.6 and 28 U.S.C. 1746, undersigned counsel declares that the foregoing is true and correct to the best of my knowledge and belief.

15.    Undersigned counsel has conferred with AUSA Steven Petri, co-counsel for the government, who advises that the government opposes a continuance of the sentencing date.

WHEREFORE Defendant Mitchell Hammer respectfully requests a continuance of the sentencing hearing. Defendant Hammer requests such other and further relief that to the Court may seem just and proper under the circumstances.

Respectfully submitted,

SCOTT A. SREBNICK, ESQ.
FL BAR NO. 872910
1899 South Bayshore Drive
Miami, Florida 33133
(305) 285-9019
Fax (305) 285-1761

By: _____

Scott A. Srebnick

4

EXHIBIT "N"

Order for Entry in Premises to Effect Levy, 7/10/96

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

THE UNITED STATES OF AMERICA, )
                              )
              Petitioner,     )    Case No. 96-4740-BSS
                              )
        , v.                  )
                              )
MITCHELL A. &                 )
HARRIET J. HAMMER,            )
                              )
              Respondents.    )    ORDER FOR ENTRY ON
                                   PREMISES TO EFFECT LEVY

        The United States, having filed an application requesting

authorization for Revenue Officer J. Fojo and/or other designated

employees of the Internal Revenue Service, to enter the premises

located at 1501 Lantana Court, Fort Lauderdale, Florida 33326, in

order to search and seize property of Mitchell A. & Harriet J.

Hammer ("Taxpayers") in satisfaction, in whole or in part, of

unpaid federal taxes, together with the affidavit of Revenue

Officer J. Fojo in support of the application; and the Court

finding, on the basis of the affidavit, that there is probable

cause to believe that property or rights to property, belonging

to the taxpayers which are subject to levy by the United States,

pursuant to Section 6331 of the Internal Revenue Code of 1986, as

amended, are located on or within the premises described, it is

        ORDERED that Revenue Officer J. Fojo and/or other designated

employees of the Internal Revenue Service are authorized to enter

the premises described and to make such search as is necessary in order to levy and seize, pursuant to 26 U.S.C. Section 6331.   In making this search and seizure, however, such revenue officer and/or other designated employees of the Internal Revenue Service are directed to enter the premises during regular daytime hours and within ten (10) days of this order.   The officer executing this Order shall make a return to the Court.

SO ORDERED, this _____ day of _____ , 1996.

_____

UNITED STATES MAGISTRATE JUDGE

2

EXHIBIT "O"

Presentence Report ("PSR") ¶91, p. 19

PROPERTY OF U.S. COURTS.
SUBMITTED FOR OFFICIAL USE OF
U.S. PAROLE COMMISSION AND
FEDERAL BUREAU OF PRISONS. TO BE
RETURNED AFTER SUCH USE, OR UPON REQUEST.
DISCLOSURE AUTHORIZED UNLESS
COMPLY WITH 18 USC 4208(b)(2).

PACTS #42366

Non-Guideline ☐

**UNITED STATES DISTRICT COURT**
**FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**

| UNITED STATES OF AMERICA | ) | PRESENTENCE INVESTIGATION REPORT |
|---|---|---|
| | ) | |
| vs. | ) | Docket No. 95-367-CR-Ferguson(s) |
| | ) | Defendant No. 01 |
| | ) | Guideline Manual: 1995 |
| Mitchell Hammer | ) | |

**Prepared for:** The Honorable Wilkie D. Ferguson, Jr.
U.S. District Judge

**Prepared by:** Michael Berg/dh
U.S. Probation Officer
299 E. Broward Blvd., Room 409
Ft. Lauderdale, FL 33301-1168
(954) 356-7059

**Assistant U. S. Attorney**
Steven R. Petri
Adreinne Rabinowitz
99 N.E. 4th Street
Miami, Florida 33132
(305) 536-4026

**Defense Counsel**
Neal R. Sonnett
One Biscayne Tower, #2600
Two South Biscayne Blvd.
Miami, Florida 33131-1802
(305) 358-2000

**Sentence Date:** January 17, 1997 @ 9:00 a.m.

**Offense:** **Eighty-Five Count Superseding Indictment:**
**Count One:** Conspiracy to Commit Bank Fraud, Securities
Fraud, Money Laundering, and Making False Statements in a
Bankruptcy Proceeding, 18 U.S.C. § 371. A class "D" felony.

**Count Seventy-One:** Money Laundering, 18 U.S.C. §
1956(a)(1)(A)(i) and (B)(i). A class "D" felony.

**Count Eighty-Three:** Making False Statements in a Bankruptcy
Proceeding, 18 U.S.C. § 152. A class "D" felony.

**Penalty:** **Count One:** 0 to 5 years imprisonment, $54,200,896
fine, and a $50 assessment.

**Count Seventy-One:** 0 to 20 years imprisonment,
$7,960,127.86 fine, and a $50 assessment.

**Count Eighty-Three:** 0 to 5 years imprisonment,
$250,000 fine, and a $50 assessment.

1

89. On July 10, 1996, in Case No. 96-4740-BSS, United States Magistrate Barry Seltzer issued an Order for Entry on Premises to Effect Levy. The order was issued upon an application by the Internal Revenue Service to·search and seize all of the property of the defendant and his wife due to unpaid federal taxes. According to the defendant and his wife, agents emptied their home of all personal belongings except for clothing and bedding. The seized assets were auctioned on August 15, 1996.

90. Records reflect that in September 1996, Bank of America repossessed the defendant's 1993 Cadillac. That same month, Capital Bank repossessed the defendant's 1993 Lexus. The defendant continues to owe $20,000 on the Lexus. Since September 1996, the defendant has had the occasional use of his sister-in-law's automobile.

91. The defendant and his wife owe the Internal Revenue Service more than $1,000,000. Family members currently help them make ends meet. The defendant faces an extensive period of incarceration and his wife's employment history is minimal, at best. Given the defendant's current financial condition, it does not appear he has the ability to pay a fine. However, the court may wish to order restitution payable to the victims in this case.

**PART D.    SENTENCING OPTIONS**

**Custody**

92. **Statutory Provisions:** The term of imprisonment is 0 to 5 years as to each of Counts One and Eighty-Three and 0 to 20 years as to Count Seventy-One.

93. **Guideline Provisions:** Based on a total offense level of 36 and a criminal history category of I, the guideline imprisonment range is 188 to 235 months.

**Supervised Release**

94. **Statutory Provisions:** There is no requirement for a term of supervised release.

95. **Guideline Provisions:** For Class "C" and "D" felonies, the term of supervised release is 2 to 3 years pursuant to § 5D1.2(a)(2).

**Probation**

96. **Statutory Provisions:** The defendant is eligible for probation for an authorized term of not less than one year nor more than five years under 18 U.S.C. § 3561(c)(1). The Court must impose at least one of the following as a condition of probation: A fine, an order of restitution, or community service, unless the court finds on the record that

19

EXHIBIT "P"

Presentence Report ("PSR"), ¶37

as an organizer and leader of a criminal activity that involved five or more participants. He benefited the most through the schemes charged in the indictment by paying himself at least 1.3 million dollars in salary and bonuses between January 1990 and May 1993, when he was forced to resign. According to the government, he was extensively involved in the bank fraud, it was his idea to take Sheffield public with the fictitious ARs, and it was his idea to commit both of the money laundering schemes. He is regarded as the most culpable defendant charged in the indictment.

35. **Michael Mandelblatt** was the chief financial officer and was on the board of directors of Sheffield. He also had an ownership interest in the company. Mandelblatt committed suicide on September 5, 1996. The cause of death was plastic bag asphyxia.

36. **Carl Solomon** was the vice president of sales and was on the board of directors of Sheffield. He was present at the July 1991 meeting when the board of directors voted to take Sheffield public with the fictitious ARs. He also volunteered at the September 1991 meeting to convince Emanuel Williams of CRW and Dennis Conklin of Sheer Delight to provide false confirmations to cover up Sheffield's inflated ARs.

37. **Joseph Letzelter** was a certified public accountant and the controller of Sheffield. He was extensively involved in the various schemes charged in the indictment and is regarded as highly culpable. Letzelter directed numerous Sheffield employees, including Esther Ramos, Myra Bacallao, Nancy Nieves and Heidi Frazier of the accounts receivables department, Suzanne Morese of payroll and commissions, and Angel Castro, Sheffield's computer programmer, in furtherance of the schemes. According to the government, Letzelter instructed Angel Castro to destroy Sheffield's computer records to cover up the fraud. He also helped type fake work logs in another attempt to cover up the fraud.

38. **Steven Merrill** was an employee at Sheffield who, at times, held various positions, including purchasing agent, export development manager, and shipping manager. According to the government, his involvement was limited to the money laundering scheme with Joseph Friedman and Art View. Merrill created the false Art View invoices and was involved in the exchange of checks with Friedman.

39. **Heidi Frazier** was an employee who was promoted to assistant controller of Sheffield. She died of a brain aneurism on March 25, 1996.

40. **Angel Castro** was the manager of data programming at Sheffield. According to the government, he used his special skill to devise a computer program to manipulate the ARs and create false invoices, all under the instruction of Joseph Letzelter.

11

**EXHIBIT "Q"**

Retainer Agreement
2/21/97

## RETAINER AGREEMENT

I, MITCHELL HAMMER, the undersigned client, do hereby retain the law firm of SCOTT A. SREBNICK, ESQ. (hereinafter "the law firm") to represent me in connection with the charges filed in the indictment styled <u>United States v. Mitchell Hammer</u>, Case No. 95-367-Cr-Ferguson in the Southern District of Florida. This representation includes the anticipated filing of a motion to withdraw my plea, an evidentiary hearing on said motion (if ordered by the Court), and a sentencing hearing (if the motion to withdraw is denied by the Court).

As compensation and consideration for the law firm's services in connection with the motion to withdraw the plea and sentencing, I agree to pay the law firm $25,000.00, which is deemed earned and payable upon the execution and acceptance of the agreement, with only the following exceptions: the law firm agrees to refund $5,000.00 if either the Court denies the motion to withdraw the plea without an evidentiary hearing or if I decide not to seek to withdraw the plea (and I proceed to sentencing with the law firm as my counsel). The law firm acknowledges receipt of a cashier's check in the amount of $25,000.00 payable to Scott A. Srebnick Operating Account.

I also agree to pay the law firm $150,000.00, to be placed in the law firm's trust account, $25,000.00 of which is to be deposited immediately (prior to entry of a notice of appearance), and the remaining $125,000.00 to be paid on or before the following dates in the following installments:

| March 21, 1997: | $50,000.00 |
| April 21, 1997: | $50,000.00 |
| May 21, 1997: | $25,000.00 |

The law firm acknowledges receipt of a cashier's check in the amount of $25,000.00 payable to Scott A. Srebnick Trust Account. The funds in the trust account will be available in the event that the law firm is retained to represent me at trial or on appeal. In the event the motion to withdraw is granted, yet the case is subsequently resolved without a trial, the law firm will bill against the funds in trust at an hourly rate of $250.00 per hour. The law firm will also bill against the trust account for any costs expended in connection with the representation. Unexpended costs remaining at the conclusion of the representation will be refunded.

I agree and understand that the fee agreed on herein does <u>not</u> include services for an appeal of the conviction or sentence if such should become necessary.

I agree and understand that the law firm will assume the responsibility for representing me in this case. I agree and understand that the law firm will use its best efforts and professional skill to obtain the most favorable result possible. The law firm does not make any promises or guarantees that such a result can or will be achieved

Retainer Agreement
February 21, 1997
Page -Two-

I understand that one possible strategy for seeking to withdraw a plea is to challenge the competency of representation provided by the attorney who negotiated the plea agreement and advised me to enter the guilty plea. I understand that the law firm has deemed it to be in my best interest not to attack the competency of representation provided by my prior attorney, Neal R. Sonnett, Esq., as a ground for moving to withdraw my plea. I understand that the law firm has concluded that attacking Mr. Sonnett's representation as being violative of the Sixth Amendment would not be a successful strategy and would, in all likelihood, prejudice any other claims raised in a motion to withdraw. The law firm has explained the risks and possible benefits of such a strategy, and I agree with the law firm's assessment of that strategy.

I also agree and understand that there are certain risks associated with seeking to withdraw my plea agreement. For example, the district court may conclude that I have not accepted responsibility for my offense and deny me the three (3) level reduction under the Guidelines as stipulated in my plea agreement. I understand that if my plea agreement is withdrawn and I am subsequently convicted, the government would not be bound by any stipulations contained in the agreement and could seek all available enhancements under the Guidelines.

This agreement constitutes the entire understanding between the parties.

Dated at Miami, Florida, this 21ˢᵗ day of February, 1997.

_____
MITCHELL HAMMER

Employment is hereby accepted on the terms stated above.

SCOTT A. SREBNICK, ESQ.
1899 South Bayshore Drive
Miami, Florida 33133
(305) 285-9019

_____
SCOTT A. SREBNICK

EXHIBIT "R"

Sentencing Transcript for Joseph Letzelter, pp. 16-17

CASE # _95 - cr - 367 -WDF_



# "Do Not Scan or Copy This Transcript."

DE # _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,  )
                           )
          Plaintiff,       )  Case No. 95-367-Cr-WDF
                           )
vs                         )  Fort Lauderdale, Florida
                           )  December 16, 1996
JOSEPH LETZELTER,          )
                           )
          Defendant.       )
------------------------------)

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE WILKIE D. FERGUSON, JR.

APPEARANCES:

FOR THE GOVERNMENT:          ADRIENNE RABINOWITZ,
AUSA

FOR THE DEFENDANT:           DONALD SPAIN, ESQ.

COURT REPORTER:              PAUL HAFERLING

# NOT

# SCANNED

## PLEASE REFER TO COURT FILE

EXHIBIT "S"

Sentencing Transcript for Mitchell Hammer, p. 48

CASE # 95-cR-367-WDF



# "Do Not Scan
# or Copy This
# Transcript."

DE # 342

EXHIBIT "T"

Sentencing Transcript for Mitchell Hammer, p. 50

# NOT

# SCANNED

**PLEASE REFER TO COURT FILE**

EXHIBIT "U"

<u>U.S.A. v. Brandino</u> Case Docket, pp. 6, 26, 47-49

```
intent to conceal, disguise          United States
and conduct a financial              (2s - 4s)
transaction involving property
believed to be the proceeds of
specified unlawful activity
```

Docket as of March 31, 2000 9:23 pm          Page 5

Proceedings include all events.                              MAG    AEV
1:95cr626-ALL USA v. Brandino, et al

(2s - 4s)

```
18:1956-6802.F CONTROLLED SUB-        dismissed on the motion of the
IMPORTATION/EXPORTATION               United States
(3 - 4)                               (3 - 4)

26:7206A.F FRAUD AND FALSE            dismissed on the motion of the
STATEMENTS                            United States
(6s - 17s)                            (6s - 17s)

18:982.F CRIMINAL FORFEITURE          dismissed on the motion of the
(18s)                                 United States
                                      (18s)
```

Offense Level (disposition): 4

Complaints:

    NONE

=======================

Docket as of March 31, 2000 9:23 pm          Page 6

Proceedings include all events.                              MAG    AEV
1:95cr626-ALL USA v. Brandino, et al

Case Assigned to:  Judge Kenneth L. Ryskamp
Case Referred to:  Magistrate Barry L. Garber

```
LINDA HARRIS BRANDINO (2) ,          Neal Russell Sonnett
DOB: 2/11/47 Prisoner:# 44232-         [term 09/19/97]
004 710 Harbor Dr., Key              FTS 358-1233
Biscayne , FL  NEW ADDRESS:          305-358-2000
Commodore Club West, 155 Ocean       [COR LD NTC ret]
Lane Drive Apt# 208, Key             Neal R. Sonnett
Biscayne, FL. 33149, PH# 305-        2 S Biscayne Boulevard
361-6114                             Suite 2600
    defendant                        Miami, FL 33131-1802
    [term 09/19/97]                  305-358-2000
```

| 8/31/95 | 68 | NOTICE of return of service unexecuted on Merhan Soltani (as) [Entry date 09/06/95] |
|---|---|---|
| 9/6/95 | 69 | Rule 40 Documents as to Donald Kent Neary received from Western District of North Carolina (as) [Entry date 09/06/95] |
| 9/8/95 | 70 | ARRAIGNMENT INFORMATION SHEET for Stefano Brandino (1) counts 1, 3-4 (as) [Entry date 09/14/95] |
| 9/8/95 | -- | Arraignment as to Stefano Brandino held (as) [Entry date 09/14/95] |
| 9/8/95 | -- | PLEA entered by Stefano Brandino. Court accepts plea. NOT GUILTY: Stefano Brandino (1) counts 1, 3-4 (as) [Entry date 09/14/95] |
| 9/8/95 | 71 | ARRAIGNMENT INFORMATION SHEET for Linda Harris Brandino (2) counts 1, 3-4 (as) [Entry date 09/14/95] |
| 9/8/95 | -- | Arraignment as to Linda Harris Brandino held (as) [Entry date 09/14/95] |
| 9/8/95 | -- | PLEA entered by Linda Harris Brandino. Court accepts plea. NOT GUILTY: Linda Harris Brandino (2) counts 1, 3-4 (as) [Entry date 09/14/95] |
| 9/8/95 | 72 | STANDING DISCOVERY ORDER as to Stefano Brandino, Linda Harris Brandino Motion filing deadline set for 10/7/95 (Signed by Magistrate Linnea R. Johnson on 9/8/95) CCAP (as) [Entry date 09/14/95] |
| 9/8/95 | 81 | NOTICE of filing original bond of conservator by Marika Tolz as to Stefano Brandino, Linda Harris Brandino, Donald Kent Neary, Mariano Fasano, Jose Ignacio Posada (dg) [Entry date 09/20/95] |
| 9/11/95 | 73 | MOTION by Jose Ignacio Posada to reduce Bond, and for Evidentiary Hearing based on new evidence (as) [Entry date 09/14/95] |
| 9/11/95 | 74 | NOTICE of Appearance for Stefano Brandino by Attorney Albert Joseph Krieger (as) [Entry date 09/14/95] |
| 9/12/95 | 75 | NOTICE of Appearance for Linda Harris Brandino by Attorney Neal Russell Sonnett (as) [Entry date 09/14/95] |
| 9/14/95 | 76 | RETURN OF SERVICE as to Stefano Brandino, Linda Harris Brandino, Donald Kent Neary, Mariano Fasano, Jose Ignacio Posada executed on 9/5/95 Re: Lis pendens as to Bellini's Restaurant (cg) [Entry date 09/18/95] |

Docket as of March 31, 2000 9:23 pm                    Page 26

Proceedings include all events.                                   MAG     AEV
1:95cr626-ALL USA v. Brandino, et al

| 9/14/95 | 77 | ORDER as to Jose Ignacio Posada denying [73-1] motion to |

5/3/96    296    SUPERSEDING INDICTMENT as to Stefano Brandino (1) count(s)
1s, 2s-4s, 5s, 6s-17s, 18s, Linda Harris Brandino (2)
count(s) 1s, 2s-4s, 5s, 6s-9s, 18s, Mariano Fasano (4)
count(s) 1s, 18s (Criminal Category 4) (sg)
[Entry date 05/08/96]

5/3/96    299    MOTION by Jose Ignacio Posada to hold Sentencing in Miami
(sg) [Entry date 05/08/96]

5/6/96    297    AGREED MOTION by Linda Harris Brandino for substitution of
Bond Collateral for Linda Harris Brandino (sg)
[Entry date 05/08/96]

5/7/96    300    STANDING DISCOVERY ORDER as to Stefano Brandino, Linda
Harris Brandino Motion filing deadline set for 6/5/96 for
Stefano Brandino, for Linda Harris Brandino ( Signed by Ch.
Magistrate Judge William C. Turnoff on 5/7/96) TAPE #96G
CCAP (kw) [Entry date 05/13/96]

5/7/96    301    ARRAIGNMENT INFORMATION SHEET for Stefano Brandino (1)
count(s) 1s, 2s-4s, 5s, 6s-17s, 18s (kw)
[Entry date 05/13/96]

5/7/96    --    PLEA entered by Stefano Brandino . Court accepts plea. NOT
GUILTY: Stefano Brandino (1) count(s) 1s, 2s-4s, 5s,
6s-17s, 18s (kw) [Entry date 05/13/96]

5/7/96    302    ARRAIGNMENT INFORMATION SHEET for Linda Harris Brandino (2)
count(s) 1s, 2s-4s, 5s, 6s-9s, 18s (kw)
[Entry date 05/13/96]

5/7/96    --    PLEA entered by Linda Harris Brandino . Court accepts plea.
NOT GUILTY: Linda Harris Brandino (2) count(s) 1s, 2s-4s,
5s, 6s-9s, 18s (kw) [Entry date 05/13/96]

5/8/96    303    NOTICE of 404(b) intent to offer evidence by USA as to
Stefano Brandino, Linda Harris Brandino, Donald Kent Neary,
Mariano Fasano, Jose Ignacio Posada (kw)
[Entry date 05/13/96]

5/9/96    304    NOTICE of appeal from Magistrate Vitunac's order on 5/2/96
denying joint motion to compel discovery by Stefano
Brandino, Linda Harris Brandino (kw) [Entry date 05/13/96]

5/9/96    305    MOTION by Stefano Brandino, Linda Harris Brandino to
continue trial (kw) [Entry date 05/13/96]

5/10/96    306    MOTION by Jose Ignacio Posada to substitute Attorney Lane
S. Abraham, P.A. for Mario S. Cano (kw)

Docket as of March 31, 2000 9:23 pm        Page 47

Proceedings include all events.                MAG    AEV
1:95cr626-ALL USA v. Brandino, et al

         [Entry date 05/13/96]

5/10/96    307    MOTION by Jose Ignacio Posada to continue sentencing (kw)

[Entry date 05/13/96]

5/14/96  308   MOTION by Stefano Brandino for disbursement of funds (kw)
               [Entry date 05/14/96]

5/15/96  309   ORDER as to Stefano Brandino granting [308-1] motion for
               disbursement of funds as to Stefano Brandino (1) ( Signed
               by Magistrate Ann E. Vitunac on 5/15/96) CCAP (kw)
               [Entry date 05/17/96]

5/15/96  310   ORDER as to Jose Ignacio Posada granting [307-1] motion to
               continue sentencing ;granting [299-1] motion to hold
               Sentencing in Miami reset Sentencing for. 1:30 6/21/96 in
               Miami before Judge Kenneth L. Ryskamp ( Signed by Judge
               Kenneth L. Ryskamp on 5/15/96) CCAP (kw)
               [Entry date 05/17/96]

5/15/96  311   SUPPLEMENTAL RESPONSE to Standing Discovery Order by USA as
               to Stefano Brandino, Linda Harris Brandino, Donald Kent
               Neary, Mariano Fasano, Jose Ignacio Posada (kw)
               [Entry date 05/17/96]

5/23/96  312   MOTION by Jose Ignacio Posada transfer defendant to
               FDC/Miami (kw) [Entry date 05/24/96]

5/30/96  --    MOTION in open court by Donald Kent Neary to Travel (sg)
               [Entry date 05/31/96]

5/30/96  313   ORDER as to Donald Kent Neary granting [0-0] oral motion to
               allow unlimited Travel. Defendant shall notify his Pretrial
               Service Officer of his trip (Signed by Judge Kenneth L.
               Ryskamp on 5/30/96) CCAP (sg) [Entry date 05/31/96]

5/30/96  314   ORDER as to Stefano Brandino, Linda Harris Brandino
               granting [305-1] motion to continue trial as to Stefano
               Brandino (1), Linda Harris Brandino (2), reset Jury trial
               for 9:00 am on 10/15/96 before Judge Kenneth L. Ryskamp,
               reset calendar call for 1:15 pm on 10/9/96 before Judge
               Kenneth L. Ryskamp and to Continue in Interest of
               Justice (Signed by Judge Kenneth L. Ryskamp 5/30/96) CCAP
               (sg) [Entry date 05/31/96]

6/3/96   315   SUPPLEMENT by Jose Ignacio Posada  to: [295-1] objections
               to PSI Report (sg) [Entry date 06/04/96]

6/4/96   316   STIPULATION regarding certain property of Stefano Brandino
               subject to Restraining Orders (Bellini's, Inc. and related
               real property) by Stefano Brandino, Vincent DiRosa, USA (sg)
               [Entry date 06/05/96]

Docket as of March 31, 2000 9:23 pm          Page 48

Proceedings include all events.                         MAG    AEV
1:95cr626-ALL USA v. Brandino, et al

6/4/96   317   ORDER as to USA and Defendant Stefano Brandino granting
               [316-1] notice for entry of an Order approving sale of
               property (Bellini's) and Modifying Protective Order and Lis

Pendens (Signed by Judge Kenneth L. Ryskamp on 6/4/96)
CCAP (sg) [Entry date 06/05/96]

6/5/96    318    NOTICE of vacation of Counsel for Defendants' Stefano
                 Brandino, Linda Harris Brandino, Donald Kent Neary, Mariano
                 Fasano, Jose Ignacio Posada from 6/11/96 through 6/25/96 (sg)
                 [Entry date 06/06/96]

6/6/96    319    NOTICE of absence from jurisdiction by attorney for Marika
                 Tolz, from 7/2/96 through 7/9/96 (sg) [Entry date 06/07/96]

6/6/96    320    MOTION by Donald Kent Neary to continue Sentence (sg)
                 [Entry date 06/07/96]

6/19/96   321    UNOPPOSED MOTION by Stefano Brandino for release of funds
                 to pay expenses for 6/96 (sg) [Entry date 06/21/96]

6/21/96   329    Minute of Sentencing held on 6/21/96 before Judge Kenneth
                 L. Ryskamp as to Jose Ignacio Posada; Court Reporter Name:
                 Rick Greenspan (sg) [Entry date 07/18/96]

6/21/96   --     Sentencing  held  Jose Ignacio Posada (5) count(s) 1 (sg)
                 [Entry date 07/18/96]

6/24/96   322    ORDER as to Stefano Brandino granting [321-1] motion for
                 release of funds to pay expenses for 6/96 (Signed by
                 Magistrate Ann E. Vitunac on 6/24/96) CCAP (sg)
                 [Entry date 06/26/96]

6/28/96   323    ORDER as to Donald Kent Neary denying [320-1] motion to
                 continue Sentencing (Signed by Judge Kenneth L. Ryskamp on
                 6/27/96) CCAP (sg) [Entry date 07/02/96]

7/1/96    324    NOTICE of Hearing as to Stefano Brandino, Linda Harris
                 Brandino:, Motion hearing before Magistrate Ann E. Vitunac
                 set for 10:00 am on 9/6/96 for Stefano Brandino, for Harris
                 Brandino for [221-1] motion to suppress all evidence seized
                 during execution of warrants (sg) [Entry date 07/02/96]

7/3/96    325    NOTICE of filing CONTINENTAL INSURANCE COMPANY BOND# BNS
                 1496876/CONTINENTAL CASUALTY COMPANY BOND NO# 141668439
                 ASSUMPTION OF LIABILITY CERTIFICATE FOR THE AMOUNT OF
                 $200,000 (THE ORIGINAL WILL BE ATTACHED TO D/E# 81 (the
                 original bond, please refer to letter attached for further
                 explanation) (sg) [Entry date 07/08/96]

7/5/96    331    Minute of Sentencing held on 7/5/96 before Judge Kenneth L.
                 Ryskamp as to Donald Kent Neary; Court Reporter Name: Rick
                 Greenspan (sg) [Entry date 07/18/96]

7/5/96    --     Sentencing  held  Donald Kent Neary (3) count(s) 1 (sg)

Docket as of March 31, 2000 9:23 pm          Page 49

Proceedings include all events.                        MAG     AEV
1:95cr626-ALL USA v. Brandino, et al

              [Entry date 07/18/96]

EXHIBIT "V"

Comparison of Money Laundering Charges, Chart

Comparison of Money Laundering Charges & Results
By Defendant

| Defendant Name | Case(1) Docket Page # (Tab#3) | Date (2) | Counts | Indictment | | | Information | | Plea | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Statute (3) | Result | Date | Statute | Result | Date Signed | Date Entered |
| Mitchell Hammer | 1-2 | 9/21/95 | 55-82 | 18USC§1956 (a)(1)(A)(i) & B(1) | Plea | N/A | N/A | N/A | 9/11/96 | 9/12/96 |
| Joseph Letzelter | 8-9 | Same | Same | Same | Dismissed | 10/11/95 7/25/96 | 18USC§1957 | Plea | 11/10/94(5) | 7/26/96 |
| Heidi Frazier | 13 | Same | Same | Same | Dismissed | 6/05/95 | 18USC§1957 | Plea | 2/14/95 | 10/2/96(4 |
| Michael Mandelblatt | 5 | Same | Same | Same | Dismissed (4) | N/A | N/A | N/A | N/A | N/A |
| Steven Merrill | 10-11 | Same | 55-69 | Same | Dismissed | 8/23/96 | 18USC§1957 | Plea | 10/26/95 | 8/27/96 |
| Joseph Friedman | 17 | Same | 55-69 | Same | Dismissed | 8/23/96 | N/A | N/A | 6/27/95 | 8/27/96 |
| Pasquale Luca | 18-19 | Same | 70-82 | Same | Dismissed | N/A | N/A | N/A | 9/16/96 | 9/16/96 |

Footnotes:
1-Information is derived from Case Docket dated October 6, 1997 under Tab 3 in Document Binder
2-September 21, 1995 was the date of the Superseding Indictment; the original Indictment was 5/25/95
3-Penalty Sheets under Tab 2 in Document Binder was supplemental source of information for this table
4-Dismissal was based on Government's filing of suggestion of death
5-Superceding Information/Waiver of Indictment dated 7/26/96, document#203

EXHIBIT "W"

Letter from AUSA Petri to Sonnett re: Plea Agreements
for Letzelter, Frasier, Merrill and Friedman
6/15/95



**U.S. Department of Justice**

*United States Attorney*
*Southern District of Florida*

*99 N.E. 4 Street, Suite 800*
*Miami, Florida 33132-2111*

June 15, 1995

Neal R. Sonnett, Esq.
One Biscayne Tower
2 South Biscayne Blvd.
Suite 600
Miami, Florida  33131

    Re:  Sheffield Industries

Dear Neal:

    Enclosed with the government's initial discovery response are
the following:

    1.   Plea agreements executed by defendants Letzelter, Ramos,
         Friedman, Frazier and Castro; and

    2.   Immunity letters pertaining to Robert Lundgren, Ed
         Solomon and Susan Martorelli.

    If you have any questions concerning this information, please
do not hesitate to call me.  Also, please note that the grand jury
transcript attached to the response contains <u>Brady</u> information on
your client.

                        Sincerely,

                        KENDALL COFFEY
                        UNITED STATES ATTORNEY

                   By:  *Steven R. Petri*
                        Steven R. Petri
                        Assistant United States Attorney

SRP/mb
Enclosures

*P.S.  Our discovery meeting is set for*
*6.29.75 at 2:00.*

**EXHIBIT "X"**

Frasier Plea Agreement, 2/14/95

SRP:mb

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA    CASE NO. _____

v.                          **PLEA AGREEMENT**

HEIDI FRASIER
_____/

The Office of the United States Attorney for the Southern
District of Florida (hereinafter referred to as the "United
States") and HEIDI FRASIER (hereinafter referred to as the
"defendant") enter into the following agreement:

1.    The defendant agrees to plead guilty to two felony counts
relating to her employment at Sheffield Industries Inc., in an
indictment which charges the defendant with conspiracy and money
laundering offenses.  Specifically, the defendant agrees to plead
guilty to a charge of conspiring to commit bank fraud, in violation
of Title 18, United States Code, Section 1344; and securities
fraud, in violation of Title 15, United States Code, Sections
78j(b) and 78ff(a); all in violation of Title 18, United States
Code, Section 371.  The defendant also agrees to plead guilty to
engaging in money laundering transactions, in violation of Title
18, United States Code, Section 1957.

2.    · The defendant agrees and understands that the relevant
amount of actual, probable or intended loss resulting from the bank

pursuant to Title 18, United States Code, Section 3553(e) and
Section 5K1.1 of the Sentencing Guidelines and Policy Statements
reflecting that the defendant has provided substantial assistance.
The defendant acknowledges and agrees, however, that nothing in
this agreement may be construed to require the United States to
file such a motion. Furthermore, the defendant acknowledges and
agrees that the Court is under no obligation to grant this motion
pursuant to Title 18, United' States Code, Section 3553(e) and
Section 5K1.1 of the Sentencing Guidelines and Policy Statements,
should the United States decide to file such a motion.

11.   The defendant understands and agrees that the Court may
impose any sentence authorized by law and that the defendant may
not withdraw her plea solely as a result of the sentence imposed.
The defendant also understands and agrees that the court may impose
a statutory maximum term of imprisonment, a period of supervised
release, a fine and restitution as follows:

a.   conspiracy to commit bank fraud and securities
fraud, in violation of Title 18, United States Code, Section 371 -
five (5) years of imprisonment, 3 years of supervised release,
$250,000 fine and restitution; and

b.   money laundering, in violation of Title 18, United
States Code, Section 1957 - ten years of imprisonment, 3 years of
supervised release, $250,000 fine or twice the amount of the
criminally derived property involved in the money laundering
transactions, whichever is greater, and restitution.

5

12. The defendant understands and agrees that, in addition to any sentence imposed under paragraph 11 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant.

13. The defendant is aware that the sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the probable sentencing range that she may receive from her counsel, the United States or the probation office, is a prediction, not a promise, and is not binding on the United States, the probation office or the court.

14. The defendant is aware that the sentence will be imposed in conformity with the <u>Federal Sentencing Guidelines and Policy Statements</u>. The defendant is also aware that a sentence imposed under the guidelines does not provide for parole. Knowing these facts, the defendant agrees that the court has jurisdiction and authority to impose any sentence within the statutory maximum set for her offenses.

15. This agreement is limited to the United States Attorney's Office for the Southern District of Florida and, as such, does not and cannot bind other federal, state, regulatory or local prosecuting authorities. The defendant waives any claim of Double Jeopardy based upon this agreement, to the extent that it could be asserted in any civil or regulatory proceeding which may be brought against the defendant by the United States or an agency thereof.

6

16.   This is the entire agreement and understanding between the United States and the defendant.   There are no other agreements or understandings between the parties.

Respectfully submitted,

KENDALL COFFEY
UNITED STATES ATTORNEY

DATE:   $2 \cdot 14 \cdot 95$       By:   _____
                                    STEVEN R. PETRI
                                    ASSISTANT UNITED STATES ATTORNEY
                                    COURT NO. A5500048

DATE:   $2/14/95$.       By:   _____
                               ELOISA M. DELGADO
                               ASSISTANT UNITED STATES ATTORNEY
                               FLORIDA BAR NO. 099768

DATE:   $2/14/95$       _____
                        JOHN MAY, ESQ.
                        ATTORNEY FOR DEFENANT

DATE:   $2/14/95$       _____
                        HEIDI FRASIER
                        DEFENDANT

7